**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| STANDARD IRON WORKS, on behalf of itself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 08-cv-5214 |
| v. ) ) ) | Hon. James B. Zagel |
| ARCELORMITTAL; ARCELOR MITTAL USA, INC.; UNITED STATES STEEL CORPORATION; NUCOR CORPORATION; GERDAU AMERISTEEL CORPORATION; STEEL DYNAMICS, INC.; AK STEEL HOLDING CORPORATION; SSAB SWEDISH STEEL CORPORATION; COMMERCIAL METALS, INC., ) ) ) ) ) ) ) ) ) ) | Hon. Jeffrey Cole |
| Defendants. ) ) | |

**DEFENDANTS' STATUS REPORT FOR MAY 10, 2010
STATUS HEARING AND MEMORANDUM IN SUPPORT OF
DEFENDANTS' PROPOSED PROTECTIVE ORDER LANGUAGE**

Defendants respectfully submit this report to update the Court regarding the progress of discovery and to address the contested issues in the proposed protective order jointly submitted by the parties.

**A.      Discovery**

Since the March 22, 2010 status hearing, the parties have continued to make substantial progress on discovery. Defendants are unaware of any pending disputes regarding the status of discovery or the parties' responses.

1.  U. S. Steel

As discussed at the last status hearing, U. S. Steel was one of the two defendants randomly selected for email and deposition discovery during the initial phase. Counsel for U. S. Steel and plaintiffs met in person or by phone on several occasions beginning April 1 and continuing through the last week, as a result of which the following progress has been made on document production:

- Counsel for U. S. Steel and plaintiffs entered into a Confidentiality Agreement to facilitate progress on document production in advance of the entry of a Protective Order.

- On April 15, U. S. Steel provided plaintiffs with copies of a broad sampling of reports and other materials setting forth plant-by-plant and product-by-product production information on a weekly, monthly and annual basis; plant and product line profitability; annual and quarterly updated business plans; material marketplace developments and updates; operations reports; and stock analyst reports. U. S. Steel also produced a "data dictionary" showing the fields of information regarding sales transactions that may be retrieved from U. S. Steel transactional databases.

- On April 16, U. S. Steel produced product manuals in electronic form.

- On April 21, U. S. Steel produced a set of sample customer contracts.

- On May 4, U. S. Steel produced a list of import trade cases in which it has been involved.

Plaintiffs acknowledged on April 23 the comprehensive scope of the samples produced by U. S. Steel, and, following that meeting, U. S. Steel commenced the collection of the full sets of reports covering the period 2004-2008 requested by plaintiffs from their review of the samples. Production of those reports is expected to begin shortly after the entry of a permanent Protective Order. With respect to the production of documents from the custodial files of the ten senior executives identified by plaintiffs, U. S. Steel has to date identified over 500,000 e-mails of these executives that will need to be reviewed for responsiveness to plaintiffs' document requests and is still working to determine the scope of documents other than e-mails maintained by these custodians. U. S. Steel is developing a keyword search protocol to assist in the review

of electronic documents and anticipates receiving from plaintiffs names of competitor executives to include among the key words.

      2.      <u>Gerdau</u>

Gerdau was the other defendant randomly selected for email and deposition discovery. On April 6, a discovery meet-and-confer was held between Gerdau and plaintiffs at Gerdau's counsel's office in Chicago. Among other items, the parties discussed: (1) the final list of key senior management custodians; (2) the scope of and procedure for the search of the key custodians' files; (3) Gerdau's discovery obligations, beyond the senior management discovery, under the Court's directions at previous status hearings; and (4) the process for extraction and production of data discovery. Gerdau has gathered over one million electronic documents from the key custodians. On May 6, Gerdau produced a list of proposed key words, which will be negotiated with plaintiffs and used to narrow the number of documents to be reviewed for responsiveness.

On April 23, Gerdau produced over 4,000 pages of documents to plaintiffs under the Agreed Interim Protective Order. This production included several monthly financial reports distributed to senior officials that provide extensive detail about Gerdau's sales and production on a mill and product-level. The production also included several other categories of documents requested by plaintiffs, including reports on market conditions, six-quarter budget forecasts, presentations prepared for the board of directors, document retention policies, antitrust compliance manuals, a list of Department of Commerce and International Trade Commission proceedings in which Gerdau has participated, and a dictionary of terms for Gerdau's database so that Gerdau and plaintiffs' counsel can agree on the data fields to be produced. Gerdau's production of documents will continue on a rolling basis.

3. The Six Non-Selected Defendants

Pursuant to the Court's direction at previous status hearings, the other six defendants are making rolling productions of the "categories of discovery that the parties were in agreement on." Tr. (1/28/10) at 33; *see also* Tr. (3/22/10) at 36-37.[1]

For example, the two largest defendants, Nucor and ArcelorMittal, both made productions the same day the Court entered an Interim Protective Order. Nucor has produced over 7,600 pages of high-level documents going to key class certification issues. These documents include, among other things, monthly reports on steel markets and demand, reports containing capacity utilization statistics, and financial statements. Similarly, after a production slated for this week, ArcelorMittal will have produced approximately 4,200 pages of documents, including, among other things, organizational charts, annual plans, monthly forecasts and actual performance reports, and quarterly business area reviews. ArcelorMittal and plaintiffs have also met and conferred regarding identification of the relevant production, inventory, and sales transaction data fields, and are working transparently and cooperatively to maximize the efficiency of this technical discovery. SSAB made a production of sample contracts, periodic reports, board and senior management materials, and other documents on April 29, and anticipates making an additional production of documents in the next few weeks. The other defendants likewise are in the process of gathering, reviewing, and producing documents to plaintiffs. Several of the defendants that have produced sample materials in expectation of further dialogue with the plaintiffs have not yet heard from them.

---

[1] The "categories of discovery that the plaintiffs were in agreement in" were the eleven categories of production and transactional data and other information relevant to class certification issues, set forth in Defendants' proposed Case Management Order No. 2, filed July 30, 2009 (dkt. no. 182, Ex. A). In addition, some defendants have agreed to produce certain additional categories of materials requested by plaintiffs.

4

4. <u>Defendants' Discovery of Plaintiffs</u>

Defendants have also served interrogatories and document requests on plaintiffs. Plaintiffs have served written responses and objections and indicated that they would produce documents shortly. The parties are in the process of meeting and conferring regarding plaintiffs' objections to defendants' discovery requests.

**B.** **<u>Protective Order</u>**

There is currently an Interim Protective Order in effect as to all defendants except U.S. Steel, governing the disclosure and use of confidential information in this litigation (dkt. no. 228). On May 3, 2010, all parties filed a joint motion for entry of a permanent protective order (dkt. no. 230). The parties were able to agree on most of the terms of the permanent protective order. The proposed order jointly submitted by the parties contains the agreed-upon language as well as competing proposals in paragraphs 8, 10, and 11 for the few issues on which the parties could not agree. This proposed order was the result of negotiations not only between defendants and plaintiffs, but also among the competitor defendants themselves. The protections in the order are crucial in limiting what outside counsel for a competitor defendant can show his or her client without notice to the producing defendant. This, as much as the concern about disclosure to plaintiffs, lies behind the proposed restrictions on disclosure.

There are two differences between the parties. The first dispute is over what individuals, other than a producing party's own employees, may be shown that party's Protected Material, either as deposition witnesses (as governed by paragraph 8), or outside the deposition context (as governed by paragraphs 10 and 11). The second dispute is whether a non-party deposition witness who refuses to acknowledge and be bound by the Protective Order should nevertheless be permitted to see Protected Material. Set forth below are defendants' positions on these issues.

1. <u>Disclosure of Protected Material</u>

   a. Depositions (¶ 8(b))

"Highly Confidential" Material is the higher of two tiers of confidentiality under the proposed Protective Order, with disclosure generally limited to the Court, outside counsel, and experts.[2] In depositions, the parties agree that Highly Confidential Material may be shown to witnesses who are current employees of the producing party, as well as all authors, addressees, or recipients of the document. However, plaintiffs take the position that Highly Confidential Material should also be disclosable, without any advance notice to the producing company, to any witness who is "referenced or discussed" (or whose conduct is referenced or discussed) in the Highly Confidential Material, as well as "sources" of the information, former employees, and witnesses who are "likely to have had knowledge of the Highly Confidential Material." *See* Proposed Protective Order at ¶ 8(b) (Plaintiffs' Proposal).

Plaintiffs' proposed additional categories are too broad and create an unnecessary risk that the parties' most competitively sensitive information could be disclosed to those who might use them to the producing company's disadvantage in the marketplace. The fact that one company's document "references or discusses" an individual outside the company does not make it appropriate to disclose the document to that individual -- quite the opposite. It would be normal for an internal company email or memo to discuss actions taken by executives of a competitor or customer and then strategize about how to react in the marketplace. Plaintiffs can of course examine that executive about his or her own actions. But it is difficult to see why they

---

[2] "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to outside attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *10 (E.D. La. Apr. 5, 2004) (internal quotation marks omitted).

6

would need to show that witness another company's competitively sensitive commentary on those actions, when the witness had not authored, received, or seen the document. The witness would be a stranger to the document.

This is the very type of disclosure -- to a competitor or customer who is positioned to use the information to the commercial disadvantage of the producing party -- that protective orders are supposed to guard against. Further, because only the parties' outside counsel of record may view Highly Confidential Material of other companies (*see* Proposed Protective Order ¶ 11(a)), plaintiffs' language creates the anomaly that a non-party witness's counsel, and a party's in-house counsel, would have to leave the room while their own client was being deposed on such material.

Similarly, disclosure to anyone "likely to have had knowledge of the Highly Confidential Material" is flawed because it provides no objective standard. Plaintiffs could make a unilateral guess that a particular individual from outside the producing party was "likely" to have had such knowledge, and thereby vitiate the safeguards of the Protective Order as they apply to defendants' most sensitive documents, however wrong that guess turns out to be.

Likewise, general permission to show Highly Confidential Material to the producing party's former employees is inappropriate because former employees no longer owe any duty of loyalty to the company and, in fact, may now be working for competitors or customers whose interests are not aligned with the producing party. Defendants have agreed that Highly Confidential Material may be shown to a deposition witness who is an author, addressee, or recipient of the Highly Confidential Material. Thus, a former employee who had involvement with the document can already be examined about it. There is no need for a blanket exception entitling other former employees to see Highly Confidential Material.

Defendants do not dispute that it is appropriate to examine deposition witnesses about Highly Confidential Material in certain instances. But the categories to which the parties have already agreed -- employees of the producing party and authors, addressees, and recipients of the Highly Confidential Material -- should suffice to cover most if not all situations where examination on Highly Confidential Material is appropriate. If plaintiffs ever need to show Highly Confidential Material to someone not already covered, they have ample recourse. They may seek the consent of the producing party or leave of Court to show the document to the witness, *see* Proposed Protective Order ¶ 8(b) (last two sentences), or, if they believe the document does not meet the "highly confidential" standard, they can try to have the designation downgraded, *see id.* ¶ 9. In contrast, if plaintiffs' proposed language is adopted, defendants would have no recourse; they would learn about a competitively harmful disclosure only as it was being made, too late to do anything about it.

        b.      Outside Deposition Context (¶¶ 10(f), 11(e))

For the same reasons, defendants also object to plaintiffs' proposed language in paragraphs 10(f) and 11(e), which respectively address the extent to which Confidential and Highly Confidential Material may be disclosed to persons outside the deposition context. In each instance, defendants have agreed that the material may be shown to "persons whom the [Confidential] [Highly Confidential] Material itself indicates, or the receiving party otherwise has reason to believe, were the author, addressee, or recipient of the document." Plaintiffs propose to add language providing for disclosure as well to a "subject" or "source" of the document. Plaintiffs use these terms broadly to mean anyone mentioned in the document. This proposal is overbroad for the same reasons discussed above. In fact, disclosure under paragraphs 10(f) and 11(e) is potentially even more problematic than in the deposition context because,

8

unlike in a deposition, the producing party would not necessarily even be aware that the disclosure of its Highly Confidential Material was taking or had taken place.

Thus, the Court should adopt defendants' proposed language in paragraphs 8(b), 10(f), and 11(e), without prejudice to plaintiffs' ability to seek leave to disclose particular Highly Confidential documents to other individuals in specific instances as they arise.

2. <u>Witnesses Who Refuse to Agree to the Protective Order</u>

The proposed Protective Order states that before Protected Material is shown to any deposition witness, that individual must first sign an Acknowledgement of Protective Order agreeing to its terms and consenting to be bound, as is standard.[3] However, plaintiffs wish to add an unusual exception that even if a non-party witness refuses to do so, disclosure of Highly Confidential Material to that individual can go forward anyway if the witness is admonished that "he or she is subject to sanctions for violating the terms of this Order." *See* Proposed Protective Order ¶¶ 8(a), 8(b).

Defendants oppose this language. The witness's agreement should be required, not merely aspirational. A witness who refuses to agree to comply with the Protective Order presents, by definition, a high risk of a violation that could have adverse and irreparable consequences for the producing party. Once an unauthorized disclosure of confidential information is made and the information is out, after-the-fact remedies such as sanctions cannot put the cat back in the bag. Moreover, an abstract warning about possible sanctions is not likely

---

[3] "[P]rotective orders typically provide that . . . when disclosing a document marked 'confidential' to a deponent, witness, or expert, the party so disclosing has the individual sign an affidavit that they have read the protective order and agree to abide by it." *Condor v. West Bountiful City*, No. 2:07-cv-924, 2008 WL 4200605, at *4 (D. Utah Sept. 9, 2008); *see also*, *e.g.*, *Voskuil v. Env't Health Center-Dallas,* No. 3:96-cv-0638-L, 1999 WL 393467, at *3 (N.D. Tex. June 11, 1999) (requiring witnesses provided access to protected information to "read this protective order and agree to abide by its terms prior to receiving access to the documents").

9

to deter a willing violator who has effectively announced that he does not consider himself bound, and who, as a non-party, may be outside the personal jurisdiction of this Court.

If plaintiffs' hypothetical intransigent non-party witness ever actually materializes, the parties can attempt to work through the issue cooperatively or seek the Court's guidance in a concrete setting. However, a mere warning is generally not an adequate substitute for the deponent's willing agreement to comply. Therefore, plaintiffs' proposed language creating a blanket exception should be rejected.

For the foregoing reasons, the Court should adopt the jointly proposed Protective Order with defendants' proposed language for the contested provisions.

Respectfully submitted,

Dated: May 6, 2010      By:     /s/ Todd J. Ehlman

Counsel for Nucor Corporation and, for purposes of this memorandum only, on behalf of Defendants

| | |
|---|---|
| Donna E. Patterson | Dan K. Webb |
| David P. Gersch | Thomas J. Frederick |
| ARNOLD & PORTER LLP | Todd J. Ehlman |
| 555 Twelfth Street, N.W. | WINSTON & STRAWN LLP |
| Washington, DC 20004 | 35 West Wacker Drive |
| 202.942.5000 – Telephone | Chicago, IL 60601-9703 |
| 202.942.5999 – Facsimile | 312.558.5600 – Telephone |
| donna.patterson@aporter.com | 312.558.5700 – Facsimile |
| david.gersch@aporter.com | dwebb@winston.com |
| | tfrederi@winston.com |
| | tehlman@winston.com |
| | |
| John B. Wyss | Douglas R. Gunson |
| WILEY REIN LLP | NUCOR CORPORATION |
| 1776 K Street, N.W. | 1915 Rexford Road |
| Washington, DC 20006 | Charlotte, NC 28211 |
| 202.719.7000 – Telephone | 704.366.7000 – Telephone |
| 202.719.7049 – Facsimile | 704.972.1836 – Facsimile |
| jwyss@wileyrein.com | doug.gunson@nucor.com |

*Attorneys for Nucor Corporation*

| | |
|---|---|
| Mark Leddy<br>David I. Gelfand<br>Patricia M. McDermott<br>Heather Johnson<br>CLEARY GOTTLIEB STEEN<br>  & HAMILTON LLP<br>2000 Pennsylvania Avenue, NW<br>Washington, DC  20006<br>202.974.1500 – Telephone<br>202.974.1999 – Facsimile<br>mleddy@cgsh.com<br>dgelfand@cgsh.com | Andrew S. Marovitz<br>Jonathan L. Lewis<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL  60606<br>312.782.0600 – Telephone<br>312.701.7711 – Facsimile<br>amarovitz@mayerbrown.com<br>jlewis@mayerbrown.com |

***Attorneys for ArcelorMittal S.A. and ArcelorMittal USA, Inc.***

| | |
|---|---|
| Jonathan S. Quinn<br>REED SMITH LLP<br>10 S. Wacker Drive<br>Chicago, IL 60606<br>312.207.1000 – Telephone<br>312.207.6400 – Facsimile<br>jquinn@reedsmith.com | Daniel I. Booker<br>Debra H. Dermody<br>REED SMITH LLP<br>435 Sixth Avenue<br>Pittsburgh, PA 15219<br>412.288.3131 – Telephone<br>412.288.3063 – Facsimile<br>dbooker@reedsmith.com<br>ddermody@reedsmith.com |
| Alexander Y. Thomas<br>REED SMITH LLP<br>1301 K Street, N.W.<br>Suite 1100, East Tower<br>Washington, DC 20005-3317<br>202.414.9200 – Telephone<br>202.414.9299 – Facsimile<br>athomas@reedsmith.com | J. Michael Jarboe<br>THE LAW DEPARTMENT OF<br>UNITED STATES STEEL CORPORATION<br>600 Grant Street, Suite 1500<br>Pittsburgh, PA 15219-2880<br>412.433.2880 – Telephone<br>412.433.2811 – Facsimile<br>jmjarboe@uss.com |

***Attorneys for United States Steel Corporation***

                                                Nathan P. Eimer
                                                Andrew G. Klevorn
                                                EIMER STAHL KLEVORN & SOLBERG LLP
                                                224 S. Michigan Avenue, Suite 1100
                                                Chicago, IL 60604
                                                312.660.7600 – Telephone
                                                312.692.1718 – Facsimile
                                                neimer@eimerstahl.com
                                                aklevorn@eimerstahl.com

                             *Attorneys for Gerdau Ameristeel Corporation*

| | |
|---|---|
| Joel G. Chefitz | Robert S. Walters |
| Amanda J. Metts | BARRETT & MCNAGNY LLP |
| MCDERMOTT WILL & EMERY LLP | 215 East Berry Street |
| 227 West Monroe Street, Suite 4400 | Fort Wayne, IN 46802 |
| Chicago, IL 60606 | 260.423.8905 – Telephone |
| 312.372.2000 – Telephone | 260.423.8920 – Facsimile |
| 312.984.7700 – Facsimile | rsw@barrettlaw.com |
| jchefitz@mwe.com | |
| ametts@mwe.com | |

                                              *Attorneys for Steel Dynamics, Inc.*

| | |
|---|---|
| James R. Figliulo | Gregory A. Markel |
| Stephanie D. Jones | CADWALADER, WICKERSHAM & TAFT LLP |
| FIGLIULO & SILVERMAN P.C. | One World Financial Center |
| 10 S. La Salle Street, Suite 3600 | New York, NY 10281 |
| Chicago, IL 60603 | 212.504.6000 – Telephone |
| 312.251.4600 – Telephone | 212.504.6666 – Facsimile |
| 312.251.4610 – Facsimile | greg.markel@cwt.com |
| jfigliulo@fslegal.com | |
| sjones@fslegal.com | |
| | Charles F. Rule |
| | Joseph J. Bial |
| | CADWALADER, WICKERSHAM & TAFT LLP |
| | 1201 F Street, N.W. |
| | Washington, DC 20004 |
| | 202.862.2200 – Telephone |
| | 202.862.2400 – Facsimile |
| | rick.rule@cwt.com |
| | joseph.bial@cwt.com |

                                      *Attorneys for AK Steel Holding Corporation*

                        John W. Treece
                        Scott D. Stein
                        SIDLEY AUSTIN LLP
                        One South Dearborn
                        Chicago, Illinois  60603
                        312.853.7000 – Telephone
                        312.853.7036 – Facsimile
                        jtreece@sidley.com
                        sstein@sidley.com

*Attorneys for SSAB Swedish Steel Corporation*

                        Joseph A. Tate
                        Stephen D. Brown
                        DECHERT LLP
                        Cira Centre
                        2929 Arch Street
                        Philadelphia, PA  19104
                        215.994.2350 – Telephone
                        215.655.2350 – Facsimile
                        joseph.tate@dechert.com
                        stephen.brown@dechert.com

*Attorneys for Commercial Metals Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 6, 2010, I electronically filed the foregoing document **DEFENDANTS' STATUS REPORT FOR MAY 10, 2010 STATUS HEARING AND MEMORANDUM IN SUPPORT OF DEFENDANTS' PROPOSED PROTECTIVE ORDER LANGUAGE** and caused the same to be served electronically via the CM/ECF system upon all counsel of record.

                                                                       __/s/ Todd J. Ehlman_____
                                                                       Todd J. Ehlman
                                                                       WINSTON & STRAWN LLP
                                                                       35 West Wacker Drive
                                                                       Chicago, IL 60601-9703
                                                                       312.558.5600 – Telephone
                                                                       312.558.5700 – Facsimile
                                                                       tehlman@winston.com