# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IN RE:  STEEL ANTITRUST LITIGATION** | Case No. 08-cv-5214 |
| | Hon. James B. Zagel |
| **THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER ACTIONS:** *Standard Iron Works v. ArcelorMittal et al.*, **Case No. 08-cv-5214** *Wilmington Steel Processing Co., Inc. v. ArcelorMittal et al.*, **Case No. 08-cv-5371** *Capow, Inc. d/b/a Eastern States Steel v. ArcelorMittal et al.*, **Case No. 08-cv-5633** *Alco Industries, Inc. v. ArcelorMittal et al.*, **Case No. 08-cv-6197** *Gulf Stream Builders Supply, Inc. v. ArcelorMittal et al.*, **Case No. 10-cv-4236** | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE THE OPINIONS OF DR. JOHN L. SOLOW

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## REDACTED VERSION FOR PUBLIC FILING
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

DR. SOLOW'S OPINIONS...........................................................................................2

LEGAL STANDARDS ...............................................................................................5

ARGUMENT ...............................................................................................................7

I.   DR. SOLOW'S "STRUCTURE" ANALYSIS IS UNRELIABLE....................................7

     A.   Dr. Solow's Methodology for Assessing the Market's "Structure" Is
          Not Reliable ...........................................................................................7

          1.   According to the Economic Literature, Including Dr. Solow's
               Treatise, Relevant Market Definition Is a Necessary Precursor to
               a "Structure, Conduct, and Performance" Analysis.....................................7

          2.   Dr. Solow's "Raw Steel Market" Is Unreliable, Contrived, and
               Unsupported by Proper Analysis .............................................................10

     B.   Dr. Solow's Opinion that "Raw Steel" Is a Homogenous Commodity
          and a "Primary Input" in the Production of Steel Is Unreliable under
          Rule 702 .................................................................................................14

          1.   Dr. Solow's Opinions that "Raw Steel" Is Homogenous and a
               Commodity Do Not Fit the Facts of the Industry and Are
               Unreliable.................................................................................................15

          2.   Dr. Solow's Opinion that "Raw Steel" Is the "Primary Input" in
               the Production of Steel Is Unreliable ........................................................20

     C.   Dr. Solow's Theory of How the Alleged Agreement Had a
          "Widespread" Effect on Prices of All Finished Steel Products Is
          Unreliable.................................................................................................22

II.  THE REMAINDER OF DR. SOLOW'S ANALYSIS, FOCUSED ON
     "CONDUCT" AND "PERFORMANCE," NOT ONLY IS WHOLLY
     UNCONNECTED TO ANY RELEVANT MARKET STRUCTURE BUT
     ALSO IS DEFECTIVE ON ITS OWN TERMS ............................................................26

     A.   Dr. Solow's Interpretation of Documents in Support of His "Conduct
          and Performance" Opinions Is Not Reliable.........................................27

     B.   Dr. Solow's Analysis of Production Data and Average Prices Is
          Unreliable.................................................................................................28

i

1.     Dr. Solow's Opinions Based on Aggregated Production Data Are
       Unreliable under Rule 702 ........................................................................29

2.     Dr. Solow's Opinions Based on His "Visual Check" of
       Aggregated Prices Are Unreliable Under Rule 702 ...................................32

CONCLUSION ................................................................................................................36

## TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s):**

*Am. Honda Motor Co. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) ....................................................................................5, 6

*Brandeis Univ. v. Keebler Co.*,
    Nos. 1:12-cv-01508, 1:12-cv-01509, 1:12-cv-01511, 1:12-cv-01513, 2013 U.S. Dist.
    LEXIS 18948 (N.D. Ill. Jan. 18, 2013)................................................................................21

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
    214 F. Supp. 2d 530 (D. Md. 2002) ....................................................................................13

*Ciomber v. Coop. Plus, Inc.*,
    527 F.3d 635 (7th Cir. 2008) ..............................................................................................26

*Comcast Corp. v. Behrend*,
    133 S. Ct. 24 (June 25, 2012)................................................................................................5

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) .......................................................................................20, 21

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)................................................................................................... passim

*Frymire-Brinati v. KPMG Peat Marwich*,
    2 F.3d 183 (7th Cir. 1993) ....................................................................................................6

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..........................................................................................................6, 19

*Goodwin v. MTD Prods., Inc.*,
    232 F.3d 600 (7th Cir. 2000) ..............................................................................................19

*Hershey v. Pac. Inv. Mgmt. Co.*,
    697 F. Supp. 2d 945 (N.D. Ill. 2010) ..................................................................................28

*In re Fla. Cement & Concrete Antitrust Litig.*,
    No. 09-23187-CIV, 2012 WL 27668 (S.D. Fla. Jan. 3, 2012).............................................35

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)....................................................................................12, 35

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966 (C.D. Cal. 2012) ........................................................................12, 13, 19

iii

*In re Ocean Bank*,
    481 F. Supp. 2d 892 (N.D. Ill. 2007) .......................................................................27

*In re Urethane Antitrust Litig.*,
    MDL No. 1616, No. 04-1616-JWL, 2012 WL 6681783 (D. Kan. Dec. 21, 2012).................13

*Jamsport & Entm't, LLC v. Paradama Prods., Inc.*,
    No. 02 C 2298, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005) .......................................13

*Jones v. Lincoln Elec. Co.*,
    188 F.3d 709 (7th Cir. 1999) ...............................................................................19

*Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*,
    171 F.3d 1065 (6th Cir. 1999) .............................................................................21

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).............................................................................................5

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir. 2009) ...............................................................................12

*Lewis v. CITGO Petro. Corp.*,
    561 F.3d 698 (7th Cir. 2009) .................................................................................5

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ....................................................................6

*Masters v. Hesston Corp.*,
    291 F.3d 985 (7th Cir. 2002) .................................................................................6

*McLaughlin Equip. Co. v. Servaas*,
    No. IP98-0127-C-T/K, 2004 WL 1629603 (S.D. Ind. Feb. 18, 2004)............................12, 13

*MDG Int'l, Inc. v. Austl. Gold, Inc.*,
    No. 1:07-CV-1096-SEB-TAB, 2009 WL 1916728 (S.D. Ind. June 29, 2009).......................29

*Messner v. Northshore Univ. Healthsystem*,
    669 F.3d 802 (7th Cir. 2012) .................................................................................5

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*,
    877 F.2d 1333 (7th Cir. 1989) ................................................................6, 13, 19

*Mintel Int'l Grp., Ltd. v. Neergheen*,
    636 F. Supp. 2d 677 (N.D. Ill. 2009) ..................................................................28

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l., Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008)...........................................................................12

iv

*Obrycka v. City of Chi.*,
792 F. Supp. 2d 1013 (N.D. Ill. 2011) ...................................................................................29

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................................13

*Sheehan v. Daily Racing Form, Inc.*,
104 F.3d 940 (7th Cir. 1997) ..............................................................................................6, 11

*Sommerfield v. City of Chi.*,
254 F.R.D. 317 (N.D. Ill. 2008)........................................................................................27, 29

*Tietsworth v. Sears, Roebuck & Co.*,
No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112 (N.D. Cal. May 4, 2012).........................26

*Tuscaloosa v. Harcros Chems., Inc.*,
158 F.3d 548 (11th Cir. 1998) ...............................................................................................13

*U.S. Horticultural Supply v. Scotts Co.*,
Civ. A. No. 04-5182, 2009 WL 89692 (E.D. Pa. Jan. 13, 2009), *aff'd*, 367 F. App'x
305 (3d Cir. 2010)...................................................................................................................12

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956).................................................................................................................9

*United States v. Lupton*,
620 F.3d 790 (7th Cir. 2010) ..................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
-- U.S. --, 131 S. Ct. 2541 (2011) ............................................................................................5

*Zenith Elecs. Corp. v. WH–TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) ..................................................................................................19

## STATUTES, RULES AND REGULATIONS

Fed. R. Evid. 23(b)(3) ...................................................................................................................3

Fed. R. Evid. 26(a)(2) .................................................................................................................26

Fed. R. Evid. 702 ................................................................................................................. passim

Fed. R. Evid. 702(c).....................................................................................................................35

*Antitrust Law* ¶ 531(a) (3d ed. 2007) .....................................................................................8, 11

<u>**OTHER AUTHORITIES**</u>

David H. Kaye & David A. Freeman, *Reference Guide on Statistics*, *in Reference Manual on Scientific Evidence* 211 (Fed. Judicial Ctr. & Nat'l Res. Council eds., 3d ed. 2011).........33

Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* 249 (3d ed. 2000) ............................................................................................................................8

Frank M. Scherer & David Ross, *Industrial Market Structure and Economic Performance* 4 (3d ed. 1990) ...................................................................................................................8

John H. Johnson & Gregory K. Leonard, *In the Eye of the Beholder: Price Structure as Junk Science in Antitrust Class Certification Proceedings*, ANTITRUST, Summer 2008, at 108.........................................................................................................................35

Michelle M. Burtis & Darwin V. Neher, *Correlation and Regression Analysis in Antitrust Class Certification*, 77 ANTITRUST L.J. 495 (2011)...............................................35

Philip E. Areeda, Herbert Hovenkamp & John L. Solow, *Antitrust Law* (3d ed. 2007)........8, 9, 11

# INTRODUCTION

The Court should exclude the testimony of plaintiffs' proffered expert witness Dr. John L. Solow under Rule 702 of the Federal Rules of Evidence and *Daubert* because it is unreliable and the product of flawed methodologies. Dr. Solow's opinions and conclusions are based on: (i) a methodology that demands the definition of a relevant market, (ii) an analysis that ignores this requirement and instead describes a fictional strawman industry derived from work that is cursory and unsupported by the record or Dr. Solow's own expertise, and (iii) his own interpretation of statements by defendants' executives and his admittedly unscientific visual inspection of graphs.

Dr. Solow conducts his entire "structure, conduct and performance" analysis without ever defining a relevant antitrust market, a necessary first step as recognized by the academic literature and Dr. Solow's own writings on the subject. His description of the steel business is simply wrong. When confronted at deposition with the flaws in his analysis, Dr. Solow concocted new, untested theories of which no trace can be found in his written report, █████ ████████████████████████████████████████████████████████████. Such an analysis fails the Supreme Court's directive that expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Dr. Solow's cursory analysis and unreliable methodologies and opinions have no place in a court of law and should be struck under Rule 702 and *Daubert*.

## DR. SOLOW'S OPINIONS

Plaintiffs allege that "[d]efendants conspired to restrict the production of raw steel, causing artificially higher prices for all steel products made from that primary input."[1]  Plaintiffs seek certification of a class of "[a]ll persons . . . who Purchased Steel Products directly from any of the Defendants . . . at any time between April 1, 2005 and December 31, 2007 (the 'class period') for delivery in the United States."[2]  Counsel for plaintiffs retained Dr. Solow, a professor in the Department of Economics at the University of Iowa, "to analyze economic issues related to class certification."[3]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Dr. Solow's analysis is essential to plaintiffs' argument that proof common to the class is available to prove individual injury (*i.e.*, "antitrust injury" or "causation" as plaintiffs describe it) from the alleged conspiracy -- which involves hundreds of different products, manufactured at different mills by different producers using different

---

[1]    Mem. of Law in Supp. of Direct Purchaser Pls.' Mot. for Class Certification at 1, 22, ECF No. 307 [hereinafter "Pls.' Mem."].

[2]    Direct Purchaser Pls.' Mot. for Class Certification at 2, ECF No. 305.  Plaintiffs' definition of "Steel Products" includes certain "products derived from raw carbon steel . . . , including all carbon steel slabs, plates, sheet and coil products, galvanized and other coated sheet products; billets, blooms, rebar, merchant bar, beams and other structural shapes; and all other steel products derived from raw carbon steel and sold by Defendants except . . . the following product categories:  stainless steel; grain-oriented electrical steel; tin mill products; clad plate (*i.e.*, nickel, stainless or copper clad plate); steel pipe and other tubular products; 'special bar quality' products; wire rod and other wire products; grinding balls; fabricated rebar products; fabricated steel joist, decking, fence posts and other fabricated building products; welded steel blanks; and steel products purchased under toll processing agreements."  *Id.*

[3]    Pls.' Ex. 1, Expert Report of Dr. John L. Solow, May 22, 2012, ¶ 5, ECF No. 308-1.

[4]    ████████████████████████████

2

processes, made for particular end uses, and sold at vastly different prices -- thus satisfying the predominance requirement of Rule 23(b)(3).[5]



As part of Dr. Solow's industry "structure" analysis, he evaluates overall concentration in the industry at the "raw steel" production level. ████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

_____

[5]    *See* Pls.' Mem. at 31-35.

[6]    ████████████████████████████

[7]    ████████

[8]    ████████████

[9]    ████████████████

[10]   ████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

In the "conduct and performance" portions of his report, Dr. Solow evaluates three sources of information: (i) "statements by key industry participants" in defendants' documents; (ii) defendants' "raw steel" production data; and (iii) graphs purporting to reflect defendants' weighted average prices for categories of certain "major steel products" during the alleged class period.[12] ██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ ███████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ ████████████████

███████████████████████████████████████████████

█████████████████████████████████████ ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

---

[11] ████████████

[12] *Id.* ¶¶ 48-59, Exs. 2 & 3.

[13] ████████████

[14] ███████████████

[15] █████████████████

[16] ███████

## LEGAL STANDARDS

When an expert's report or testimony is "critical to class certification," a district court must make a conclusive ruling on any challenge to that expert's qualifications or submissions before it may rule on a motion for class certification. *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 812 (7th Cir. 2012) (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)); *see also Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2553-54 (2011) (expressing doubts regarding district court's conclusion that *Daubert* did not apply to expert testimony at the class certification stage).[17] As plaintiffs themselves state: "[T]he Court must scrutinize the record rigorously, including the parties' expert reports, making any factual findings necessary to determine whether Plaintiffs' common proof is the type on which a reasonable jury could rely." Pls.' Mem. 4 (emphasis in original).

A proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). The Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert* to "technical" and "other specialized" knowledge in addition to scientific knowledge under Rule 702). To determine whether the proponent has met its burden, the Court must undertake an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be

---

[17] The Supreme Court has granted certiorari to address "[w]hether a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 24 (June 25, 2012).

applied to the facts at issue. *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 186-87 (7th Cir. 1993) (quoting *Daubert*, 509 U.S. at 580); *Masters v. Hesston Corp.*, 291 F.3d 985, 991-92 (7th Cir. 2002). The expert's testimony must be sufficiently tied to the facts of the case in order to aid the fact finder. *See Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). The Court must look beyond the expert's ultimate conclusion and analyze the adequacy of its foundation. *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (quoting *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988)).

Expert testimony should be excluded if the expert is not "being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). The court must also consider "whether the testimony relates to 'matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying'; [and] '[w]hether the expert has adequately accounted for obvious alternative explanations.'" *Am. Honda Motor Co. v. Allen*, 600 F.3d at 817 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 800, 818 (N.D. Ill. 2005) (explaining that "[t]he opportunity for vigorous cross examination and the presentation of contrary evidence . . . is not a basis for allowing otherwise

inadmissible testimony to be admitted," and "[a]n expert's opinion full of assertion but empty of reasons has no value and is devoid of persuasiveness and legal significance").

## ARGUMENT

## I.      DR. SOLOW'S "STRUCTURE" ANALYSIS IS UNRELIABLE

Dr. Solow's opinions are based on a "structure, conduct and performance" analysis, which he claims aids in the determination of: (i) whether plaintiffs can prove their conspiracy allegations with proof common to the class, and (ii) whether plaintiffs can use proof common to the class to establish their claim that all class members were impacted by the conspiracy.

The "structure" piece of Dr. Solow's "structure, conduct and performance" analysis is preliminary and incomplete by his own admission, but it is the foundation on which the remainder of his analysis rests. Dr. Solow does not follow the methods his own treatise and other economic literature describe for such an analysis, and instead bases his opinion on █

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ Unless Dr. Solow has the structure element of his methodology right, the court cannot find, as it must, that his methodology and opinions are reliable and that they "fit" the specific facts of this case. *Daubert*, 509 U.S. at 591.

### A.      Dr. Solow's Methodology for Assessing the Market's "Structure" Is Not Reliable

#### 1.      According to the Economic Literature, Including Dr. Solow's Treatise, Relevant Market Definition Is a Necessary Precursor to a "Structure, Conduct, and Performance" Analysis

Dr. Solow's report repeatedly refers to the "market" when calculating market shares, discussing market concentration, and generally reviewing the structural features of the "market,"

yet never once does he define the relevant antitrust market.[18] Dr. Solow's treatise, which he cites

in his report, explains that "[m]arket definition is the initial step in assessing a market's structure.

Structure, in turn, might indicate whether . . . an oligopoly (or cartel) can coordinate prices

effectively."[19] Leading economic and industrial organization textbooks recognize this same

"initial step" in conducting a structure, conduct, and performance study. For instance, Frank M.

Scherer and David Ross explain that "performance" depends on "conduct," which in turn

depends on the "structure of the relevant market."[20] Dennis Carlton and Jeffrey Perloff state, "In

order for industry concentration to be a meaningful predictor of *performance*, the industry must

comprise a *relevant economic market*. Otherwise, concentration in an industry has no

implication for pricing."[21]

Dr. Solow's own treatise cautions that "[c]hoosing an appropriate measure of

concentration is itself controversial and always depends on properly defined markets."[22] It

further instructs, "To define a market is to identify those producers providing customers of a

defendant firm (or firms) with alternative sources for the defendant[s'] product or service."[23]

Dr. Solow's treatise explains that "[a] properly defined market excludes other potential suppliers

(1) whose product is too different (product dimension) or too far away (geographic dimension)

---

[18]   *See* Solow Report ¶¶ 17-47.

[19]   Ex. 14, IIB Phillip E. Areeda, Herbert Hovenkamp & John L. Solow, *Antitrust Law* ¶ 531(a) (3d ed. 2007) (footnote omitted).

[20]   Ex. 16, Frank M. Scherer & David Ross, *Industrial Market Structure and Economic Performance* 4 (3d ed. 1990).

[21]   Ex. 15, Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* 249 (3d ed. 2000) (emphasis added).

[22]   Ex. 14, Areeda, Hovenkamp & Solow, *supra*, ¶ 404(d) (footnote omitted).

[23]   *Id.* ¶ 530(a) (footnote omitted).

and (2) who are not likely to shift promptly to offer defendant[s'] customers a suitably proximate (in both product and geographic terms) alternative."[24] In a properly defined antitrust market, one would expect to observe "uniform prices throughout" the market as a result of "significant substitution in consumption or production."[25] Dr. Solow's treatise contrasts the definition of a "market" for a proper "structure" analysis with common usage of the term "market" such as when used with "[d]ata collections," which "frequently lump together a distribution level ('retailing') or a category of manufacture ('motors and generators') that covers products that do not compete with each other."[26]

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  After properly defining a market using the methods described above, one should calculate "market shares" to determine a firm's or group of firms' relative size in the market.[28]

---

[24]   *Id.* ¶ 530(a) (footnote omitted); *see also United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) ("[N]o more definite rule can be declared than that commodities reasonably interchangeable by consumers for the same purposes make up" a relevant antitrust market.).

[25]   Ex. 14, Areeda, Hovenkamp & Solow, *supra*, ¶ 530(a).

[26]   *Id.* ¶ 530(a) n.5.

[27]   ████████████████████████████████████████████

[28]   Ex. 14, Areeda, Hovenkamp & Solow, *supra*, ¶ 535, at 273.

2.     **Dr. Solow's "Raw Steel Market" Is Unreliable, Contrived, and Unsupported by Proper Analysis**

Dr. Solow did none of the work described above in support of his market "structure" opinion in this case.  His report treats two broad categories of steel products -- flat steel products and long steel products -- as if they are properly defined relevant product markets, without ever conducting the analysis necessary to justify lumping together products made with different ingredients, by different processes, by different defendants, for different customers, with different end uses.  For example, ███████████████████████████

████████████████████████████████████████████████████

█████████████████████████████ ███████████████████████████

██████████████████████████████████████████████

███████████████████████████

Dr. Solow offers no empirical, quantitative, or qualitative work described in his treatise or elsewhere to support his conclusion that "raw steel capacity" in the United States is an appropriate definition of the "market" for the purpose of his "structure" analysis.[31] ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[29] ████████████████████████████

[30] ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

[31]     *See generally* Solow Report ¶¶ 19-21.



Plaintiffs likely will respond that they do not need to prove a relevant antitrust market for their motion or as an element of their case. This is irrelevant because it was Dr. Solow who chose to use a methodology for common proof of impact that by its own terms compels a relevant market determination. Dr. Solow's analysis for this litigation is an indolent departure from the description of the "structure" analysis in his treatise, which describes market definition as the "initial step in assessing a market's structure."[34] Thus, Dr. Solow falls short of the requirement that he be "as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan*, 104 F.3d at 942. An expert proffered to support a motion

---

[32] 

[33]

[34] Ex. 14, Areeda, Hovenkamp & Solow, *supra*, ¶ 531(a).

11

for class certification may not rest on a "cursory" market definition analysis.[35]  Courts have

excluded the testimony of experts who perform cursory or improper relevant market analyses.[36]

Having done no analytical work of his own on the subject, Dr. Solow rests his opinion

that the steel industry is "concentrated" on a handful of documents that he says show "industry

participants themselves recognized market power."[37]  Rule 702, however, allows expert

testimony only in situations where "the expert's scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

Fed. R. Evid. 702.  The Court is just as capable of reading the statements quoted in Dr. Solow's

report and interpreting the legal implications of these statements itself.

Dr. Solow's document interpretation approach to assessing market power has been

rejected as inadequate.  *See U.S. Horticultural Supply v. Scotts Co.*, Civ. A. No. 04-5182, 2009

WL 89692, at *17-23 (E.D. Pa. Jan. 13, 2009), *aff'd*, 367 F. App'x 305 (3d Cir. 2010).  In *U.S.

Horticultural Supply*, Dr. Solow's market definition, offered for the purpose of establishing

---

[35]  *See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 273 (D. Mass. 2008) (criticizing expert for suggesting that "'issues of market definition, shares and power'" can be punted to the merits stage because "[t]hese issues not only involve the merits, but will also have an impact on the definition of the class *itself*" (emphasis in original)); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 492 (N.D. Cal. 2008) (courts are "increasingly skeptical of plaintiffs' experts who offer only generalized and theoretical opinions" (citations omitted) (internal quotation marks omitted)).

[36]  *See, e.g., Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916-18 (6th Cir. 2009) (affirming exclusion of expert opinion where the economist performed his "own version" of a market definition analysis that had not been subjected to peer review, had no standards controlling it, and that was produced solely for the litigation); *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2012 WL 947106, at *8-12 (E.D. Tenn. Mar. 20, 2012) (affirming magistrate's order excluding testimony under *Daubert* where the economist did not consider relevant market realities); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 992-97 (C.D. Cal. 2012) (excluding testimony where economist did not properly use statistical tests, and instead relied on statements by industry participants and other "industry information" in support of his market analysis); *McLaughlin Equip. Co. v. Servaas*, No. IP98-0127-C-T/K, 2004 WL 1629603, at *6-9 (S.D. Ind. Feb. 18, 2004) (granting motion to strike economist's market definition and market power analyses).

[37]  Solow Report ¶¶ 19, 23.

market power, rested on "marketing documents and statements from industry actors." *Id.* at *19. The Court rejected Dr. Solow's analysis because it relied -- just as in the present case -- "entirely on the application of the author's economic assumptions and record evidence that itself fails to provide an analysis of interchangeability." *Id.*[38] Courts have repeatedly excluded "expert" testimony based on similarly unscientific interpretations of documents.[39]

---

[38] *See also id.* at *17-23 (stating that the documents Dr. Solow and plaintiff relied upon did not discuss interchangeability with other products, cross-price elasticity of demand, "[n]or [was] there any suggestion that [the authors of the statements] considered these references to a . . . market to conform to the antitrust definition of a market."); *id.* at *22 ("Filtering . . . documents and statements through the report of an expert does not render them relevant, nor do they make the report itself relevant evidence."); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 989, 993-94 (excluding economist's testimony on the relevant market where he did not appropriately use analytical tests and instead reviewed documents purporting to show "collective perceptions of buyers and sellers and other persons close to the industry" as evidence in support of his opinion); *McLaughlin Equip. Co.*, 2004 WL 1629603, at *6-9 (granting *Daubert* motion holding that economist's reliance on "the complaint, some documents produced in discovery, limited anecdotal deposition testimony . . . , some financial statements and business documents, trade publications, and 'relevant publically available statistical sources'" for a market definition analysis is unreliable under Rule 702).

[39] *See Mid-State Fertilizer Co.*, 877 F.2d at 1340 (affirming exclusion of economist's testimony where expert "examined materials produced in discovery and drew inferences from the record, speaking in legal rather than economic terms"); *Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) ("[An expert's] characterizations of documentary evidence as reflective of collusion, and his characterizations of particular bids as 'signals,' do not [meet the *Daubert* standard], because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance from [an expert]."); *Jamsport & Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *10 (N.D. Ill. Jan. 3, 2005) ("[Plaintiff's expert's] discussion of the question of anticompetitive conduct consists, in large part, of his interpretation of correspondence and other evidence. [Plaintiff] has failed to persuade the Court that this is proper testimony by an expert in economics." (citation omitted)); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (experts may not "testify about lay matters which a jury is capable of understanding and deciding without the expert's help." . . . [E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." (citations and internal quotation marks omitted)); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 539 (D. Md. 2002) ("To the extent that [the expert] relied on market research done by defendants or statements by the defendants regarding their perceptions of competition, market, and the like, there is no indication that these assessments were based on proper research methods."). Plaintiffs may cite in response a recent decision out of Kansas that denied a motion to exclude Dr. Solow's testimony from trial. *In re Urethane Antitrust Litig.*, MDL No. 1616, No. 04-1616-JWL, 2012 WL 6681783, at *2-4 (D. Kan. Dec. 21, 2012). While the court in *Urethane* did not categorically exclude Dr. Solow's testimony for relying on defendants' documents, it emphasized that Dr. Solow's opinion was admissible only to the extent Dr. Solow did "not simply and impermissibly lend an expert imprimatur to plaintiffs' position on disputed facts." *Id.* at *3. Lending an expert imprimatur to plaintiffs' position on disputed facts is precisely what Dr. Solow has attempted to do in this case.

Dr. Solow's reliance on "statements of the defendants" is not scientific "knowledge" grounded "in the methods and procedures of science." *Daubert*, 509 U.S. at 589-90. Accordingly, the Court should exclude Dr. Solow's opinions about market structure under Rule 702 and *Daubert*.

### B. Dr. Solow's Opinion that "Raw Steel" Is a Homogenous Commodity and a "Primary Input" in the Production of Steel Is Unreliable under Rule 702

Not only does Dr. Solow fail to define a relevant market in support of his "structure, conduct, and performance" analysis, but also in opining about the structure of the steel industry, he reaches conclusions concerning the steelmaking process that are without foundation, rendering his opinion unreliable.



Plaintiffs rely on Dr. Solow's opinion, stating that raw steel is "the industry's essential building block -- the basic commodity produced in a steelmaking furnace."[41]

_____

40 ████████████████████████

41 Pls.' Mem. at 33.

42 ████████████████████████████████████

43 ██████████████



Dr. Solow's opinions that "raw steel" is a homogenous commodity and that the production of raw steel is the primary input in the production of all steel products run throughout his report and supply the foundation for his "structure" opinions. ███████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████ As set forth below, however, Dr. Solow's opinions are unreliable.

1.    **Dr. Solow's Opinions that "Raw Steel" Is Homogenous and a Commodity Do Not Fit the Facts of the Industry and Are Unreliable**

_____

44  ████████████

45  ██████████

46  ██████████

47  ███████████

48  ███████████

49  ███████████████████████████████████

Footnote continued on next page



Dr. Solow's failure to research and support his "raw steel" assertions is especially surprising given that they both are the linchpin of plaintiffs' theory and have been contested by defendants throughout this litigation.[51]  At deposition he explained that it was his opinion that

---

Footnote continued from previous page



[50]  ███████████████

[51]  *See, e.g.*, Def. Nucor Corp.'s Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 6, Feb. 19, 2009, ECF No. 149 (arguing that raw steel is not a commodity); Joint Mem. of Defs. Nucor Corp., ArcelorMittal S.A., ArcelorMittal USA, Inc., Steel Dynamics, Inc., AK Steel Holding Corp., SSAB Swedish Steel Corp., and Commercial Metals Co. in Opp'n to Pls.' Mot. to Compel at 19-21, Dec. 7, 2010, ECF No. 267 (arguing that "[p]laintiffs' 'raw steel' theory is at odds with how steel is actually made and sold" and that "raw steel" is not a fungible commodity).

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████ █ ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ █ In summary, Dr. Solow argues

that his foundational theory must be true because he has not seen any evidence to the contrary.

This is not reliable expert testimony.

Both Dr. Solow's initial assumption that raw steel is homogenous and his new belief that

all defendants can make all products are baseless. The very documents Dr. Solow relies on

(i) recognize that individual steel products are highly differentiated and not homogenous, and

(ii) contradict his belief that every defendant producer of long products can make every long

product and every defendant producer of flat products can make every flat product. A primer on

the industry cited by Dr. Solow states clearly that "raw steel" becomes differentiated during the

melting process: ██████████████████████████████████████

██████████████████████████████████ █ The same document

explains, ██████████████████████████████████████████

---

52 ████████████████████

53 ████████████

54 ████████████████████

 Another document cited by Dr. Solow shows a wide range of varying production capabilities among defendants and other U.S. steelmakers.[56]

Dr. Kent Peaslee -- Professor of Metallurgy, the F. Kenneth Iverson Chair of Steelmaking Technologies, and the Associate Chair of the Materials Science and Engineering Department at the Missouri University of Science and Technology, with 35 years of experience in steel manufacturing -- explains that "even limiting the products to those within Plaintiffs' two major categories of steel products – long products or flat products – none of the Defendants were capable of producing all of the possible steel products within either of those two categories during the class period."[59] Dr. Solow's theory that all "long" mills can make any "long" product and all "flat" mills can make



[55] 

[56] 

[57] 

[58] 

[59]  Peaslee Report 4-5.

every "flat" product is incorrect.[60]  Dr. Peaslee also explains that "raw steel," in the form Dr.

Solow identifies as "slabs, billets, or blooms," is highly engineered and differentiated, even at

this semi-finished stage, and is suitable only for specific, intended uses.[61]  A slab used to make a

filing cabinet differs drastically from a slab used to make a fender on a Buick.  And a billet used

to make rebar differs fundamentally from a bloom or blank used to make construction beams,

which differs from a bloom used to make rails.[62]

      Dr. Solow's opinions regarding the homogeneity and commodity nature of "raw steel"

are his personal *ipse dixit*.[63]  His opinion on the matter is beyond the scope of his expertise and it

is not supported by expert research or the documents he cites.[64]  His opinions are based on a

picture of the steel industry that does not fit the reality of how steel is made.  Accordingly, Dr.

---

[60]   *Id.* at 18-24.

[61]   *Id.* at 13-17; 18-24.

[62]   *See id.*

[63]   *See Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (stating that an expert must rely on "reliable principles and methods," and "relying on intuition . . . won't do" (citations omitted)); *Mid-State Fertilizer Co.*, 877 F.2d at 1340; *see also In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 994-95 (excluding testimony where economist's market definition analysis rested on his own characterization of the music artists to be included in the "live rock music" market, because economist had no expertise in categorizing music, and documents he relied upon did not support his opinions).

[64]   *Zenith Elecs. Corp.*, 395 F.3d at 419-20 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." (quoting *Mid-State Fertilizer Co.*, 877 F.2d at 1339)); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) ("[T]he opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.  Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." (emphasis in original) (citations omitted) (internal quotation marks omitted)); *Mid-State Fertilizer*, 877 F.2d at 1339-40; *United States v. Lupton*, 620 F.3d 790, 798-99 (7th Cir. 2010); *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 994-95.

Solow's opinion is unreliable under Rule 702. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (reversing denial of motion to exclude expert testimony where economist's opinion "was not grounded in the economic reality of the [relevant] market").

> **2.     Dr. Solow's Opinion that "Raw Steel" Is the "Primary Input" in the Production of Steel Is Unreliable**

Plaintiffs characterize the essence of Dr. Solow's opinion as saying the "raw steel" stage is a "natural chokepoint" to restrict output "and bolster prices for all finished steel products," thereby showing classwide impact.[65]  The problem is that Dr. Solow has done no work to support his sweeping opinions that ████████████████████████████████████████ ████████████████████████████████ His opinion is based solely on his flawed understanding of how steel is made. ██████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████ It is as if Dr. Solow were to say that "cookie dough," not flour, sugar, or eggs, is the "primary input" into cookies.[69]

---

[65]     Pls.' Mem. at 33.

[66]     ██████████████████████

[67]     *Id.* ¶ 10.

[68]     The documents upon which Dr. Solow relies in his report do not support his conclusion that "raw steel" is the primary input in the steelmaking process. Rather, they show that there are a number of inputs into the making of finished steel products that precede the "raw steel" stage, including iron ore, coking coal, scrap, energy costs, and alloys. *See, e.g.*, ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████. These documents supply no reason that slabs, billets, and blooms -- mere

Footnote continued on next page



An expert's opinion must be grounded in the reality of the market. *Concord Boat*, 207

F.3d at 1056; *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1072 (6th Cir.

1999) (expert's opinion must be based on "a reliable foundation" of facts and data and cannot be

based upon "speculation, conjecture, and possibility"); *Brandeis Univ. v. Keebler Co.*, Nos. 1:12-

cv-01508, 1:12-cv-01509, 1:12-cv-01511, 1:12-cv-01513, 2013 U.S. Dist. LEXIS 18948, at *25-

33 (N.D. Ill. Jan. 18, 2013) (Posner, J., sitting by designation) (excluding testimony where

economist did not have a reliable foundation for factual opinions underlying her analysis).

---

Footnote continued from previous page

intermediate states of steel during an often continuous steelmaking process -- should collectively be
considered an "input," let alone a "primary input," for finished steel products.

[69] ██████████████████████████████████████████████████████████████████
████████████████████████████████

[70] ████████████████████████

Because (i) Dr. Solow cites nothing in his report that supports his opinion that "raw steel" is the primary input into making steel products, (ii) his defense of this position requires a contrived view of the steelmaking process, and (iii) the issue is beyond Dr. Solow's area of expertise, his opinion is unreliable and should be excluded under Rule 702.

### C. Dr. Solow's Theory of How the Alleged Agreement Had a "Widespread" Effect on Prices of All Finished Steel Products Is Unreliable





Because "raw steel" typically has no price in the first place, a decrease in supply does not increase that non-existent price, and does not increase defendants' input costs.





███████████████████████████████████

████████████ This alone requires exclusion of Dr. Solow's opinions. Deficient expert reports cannot be cured with later deposition testimony. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel -- before the deposition -- as to what the expert witness will testify . . . and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." (citations omitted)); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112, at *9 (N.D. Cal. May 4, 2012) (granting motion to exclude expert opinion proffered in support of a motion for class certification where expert raised a particular opinion for the first time during his deposition). Dr. Solow's shifting theories, on an issue of central importance to plaintiffs' case and their class certification motion, only confirm that Dr. Solow's opinions are unreliable and should be excluded from consideration by the Court.

## II. THE REMAINDER OF DR. SOLOW'S ANALYSIS, FOCUSED ON "CONDUCT" AND "PERFORMANCE," NOT ONLY IS WHOLLY UNCONNECTED TO ANY RELEVANT MARKET STRUCTURE BUT ALSO IS DEFECTIVE ON ITS OWN TERMS

The "conduct" and "performance" portions of Dr. Solow's report are unreliable and unscientific because they are not supported, as shown in the previous section, by a proper structure analysis. They are unmoored from the facts that prevail in any relevant market. Apart from this, the remainder of Dr. Solow's report consists of his interpretation of statements by defendants' employees and unscientific and unreliable visual inspections of two graphs purporting to show defendants' aggregated production and average prices. Accordingly, his conduct and performance "analyses" should be struck under Rule 702.

26

## A. Dr. Solow's Interpretation of Documents in Support of His "Conduct and Performance" Opinions Is Not Reliable

Dr. Solow's analysis of the steel industry's "conduct" and "performance" consists largely of his own interpretation of defendants' executives' statements.[83] ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████

Experts, of course, are not helpful if they simply take lay witnesses "at their word."  As discussed above, if Dr. Solow's contribution is simply to interpret the meaning of documents written by defendants' executives, he offers nothing of value under Rule 702.  *See supra* pp. 12-13.  ███████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████  But this is the type of legal opinion masquerading as expert testimony that courts in this District have repeatedly excluded.[85]  Dr. Solow's application of his conclusions to

---

[83] █████████████████████████████████

[84] ██████

[85]  *See, e.g.*, *In re Ocean Bank*, 481 F. Supp. 2d 892, 901-03 (N.D. Ill. 2007) (striking expert testimony purporting to apply legal requirements to facts); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 332-37 (N.D. Ill. 2008) (excluding portions of an expert's proposed testimony that contained legal conclusions);

Footnote continued on next page

27

the purported applicable law is not proper expert testimony under Rule 702 and thus should be excluded.

**B.    Dr. Solow's Analysis of Production Data and Average Prices Is Unreliable**

Dr. Solow relies on several unreliable charts appended to his report, each of which plaintiffs claim supports their motion for class certification.[86]  Dr. Solow's conclusions, however, are tainted by unreliable data and methodologies.



For the reasons explained below, these methodologies and associated opinions should be excluded under Rule 702.

---

Footnote continued from previous page

*Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 683 (N.D. Ill. 2009) ("In this case, that means that the Rule 702 opinion witnesses may attempt to explain the forensic record--for example, what happened to documents that are or were stored on the computer and USB drives at issue in this case--but may not offer opinions on whether any conduct by Defendant in fact constituted spoliation or misappropriation, because testimony of that nature purports to offer a legal conclusion that is reserved for the trier of fact."); *Hershey v. Pac. Inv. Mgmt. Co.*, 697 F. Supp. 2d 945, 951 (N.D. Ill. 2010) ("As to Mr. Rickards' proffered opinions that certain of PIMCO's conduct was 'manipulative,' the Court finds that these are inappropriate legal conclusions, and are thus, inadmissible . . . .  Therefore, while Mr. Rickards is allowed to present and analyze *facts* indicating manipulation, he may not embrace the ultimate issue of whether Defendant's acts were, indeed, manipulative." (emphasis in original)).

[86]    Pls.' Mem. at 7, 34-35, 36-37.

[87]



28

1.   **Dr. Solow's Opinions Based on Aggregated Production Data Are Unreliable under Rule 702**



For the following reasons, Exhibit 2 is not the type of data an expert studying the industry objectively would rely upon.

***First***, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Courts in this District have not hesitated to exclude expert testimony that relies on factual information generated by attorneys.[91]

---

88   ██████████

89   ████████████

90   ██████████████

91   *See Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1025-26 (N.D. Ill. 2011) (excluding testimony where expert uncritically accepted counsel's view of the facts); *Sommerfield*, 254 F.R.D. at 320-21; *see also MDG Int'l, Inc. v. Austl. Gold, Inc.*, No. 1:07-CV-1096-SEB-TAB, 2009 WL 1916728, at *4 (S.D. Ind. June 29, 2009) (striking expert testimony in part because expert failed to "independently verify facts given to him, rather than 'accepting [them] at the word of . . . counsel'" (quoting *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008))).

***Second***, 

---

92

93

94

95

96     *See* Defs.' Joint Mem. of Law in Opp'n to Pls.' Mot. for Class Certification Ex. 1 (Hausman Report), at 46-47; *see also* Ex. 17, at WSD0021172.

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████ Accordingly, Dr. Solow's conclusions based on Exhibit 2 are unscientific and

unreliable under Rule 702.

**Monthly U.S. Steel Industry Production Cycles 1980 - 2010**



*Third*, ████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████



Exhibit 2 and Dr. Solow's related testimony
regarding the "performance" of the industry are unreliable under Rule 702.

      **2.**      **Dr. Solow's Opinions Based on His "Visual Check" of Aggregated Prices Are Unreliable Under Rule 702**

Dr. Solow's analysis is flawed in several respects. ███████████

███████████████████████████████████████████

████████████████████████



This method is patently unscientific and unreliable.  Statistical analyses that cannot be reproduced by others in order to validate the conclusion are not reliable.  *See Daubert*, 509 U.S. at 593 ("Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."); David H. Kaye & David A. Freeman, *Reference Guide on Statistics*, *in Reference Manual on Scientific Evidence* 211, 227 (Fed. Judicial Ctr. & Nat'l Res. Council eds., 3d ed. 2011) ("In statistics, reliability refers to reproducibility of results."). ███████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

101 ███████████████

102 ██████████

103 ████████

104 ██████████

Rule 702(c) requires that expert testimony be "the product of reliable principles and methods." Fed. R. Evid. 702(c); *see also Daubert*, 509 U.S. at 593. Exhibit 3, and Dr. Solow's analysis of it, fails this standard because it cannot be reproduced and tested, ██████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Courts have rejected opinions based on similar inspections of pricing data by economists offered in support of class certification because "pricing moving together" does not support the conclusion that all class members were impacted by the alleged conduct.[108] Economists have criticized as junk science even more sophisticated (and reproducible) price correlation analyses in support of class certification in academic literature.[109] Because his analysis is unscientific and unreliable, the Court should exclude Dr. Solow's opinions regarding the "conduct" and "performance" of the steel industry.

---

[107] ██████████████

[108] *See, e.g.*, *In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23187-CIV, 2012 WL 27668, at *10 (S.D. Fla. Jan. 3, 2012) (rejecting price correlation analysis to demonstrate common impact where "Plaintiffs do not explain how the mere fact that average prices move similarly over time in response to general changes in market conditions necessarily implies those prices will also respond similarly to a price-fixing scheme such as the one alleged here"); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 493 (rejecting "correlation analyses" based on averages rather than on specific "prices paid by individual consumers" and finding that plaintiffs' expert "evaded the very burden that he was supposed to shoulder").

[109] *See* John H. Johnson & Gregory K. Leonard, *In the Eye of the Beholder: Price Structure as Junk Science in Antitrust Class Certification Proceedings*, ANTITRUST, Summer 2008, at 108, 108 (noting that even a statistical analysis of a pricing structure to prove class-wide impact "is not generally accepted among economists, does not appear in the economics literature, and fails to meet the standards of objective economic scientific practice"); Michelle M. Burtis & Darwin V. Neher, *Correlation and Regression Analysis in Antitrust Class Certification*, 77 ANTITRUST L.J. 495, 498 (2011) ("Evidence of correlation alone, without evidence of why prices are correlated, is not instructive for class certification purposes. Without such evidence, reliable inferences cannot be drawn from a single price correlation . . . .").

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant the motion and issue an order excluding the proffered opinion of Dr. John L. Solow.  Defendants respectfully request a hearing on this motion.

Dated:  February 28, 2013        By:    /s/ Todd J. Ehlman

                                                   Counsel for Nucor Corporation and, for purposes of this memorandum only, on behalf of all opposing Defendants

Donna E. Patterson
David P. Gersch
Robert J. Katerberg
Ryan Z. Watts
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC  20004
202.942.5000 – Telephone
202.942.5999 – Facsimile
donna.patterson@aporter.com
david.gersch@aporter.com
ryan.watts@aporter.com
robert.katerberg@aporter.com

John B. Wyss
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC  20006
202.719.7000 – Telephone
202.719.7049 – Facsimile
jwyss@wileyrein.com

Dan K. Webb
Thomas J. Frederick
Todd J. Ehlman
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601-9703
312.558.5600 – Telephone
312.558.5700 – Facsimile
dwebb@winston.com
tfrederick@winston.com
tehlman@winston.com

Douglas R. Gunson
NUCOR CORPORATION
1915 Rexford Road
Charlotte, NC  28211
704.366.7000 – Telephone
704.972.1836 – Facsimile
doug.gunson@nucor.com

***Attorneys for Nucor Corporation***

Mark Leddy
David I. Gelfand
Patricia M. McDermott
CLEARY GOTTLIEB STEEN
  & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC  20006
202.974.1500 – Telephone
202.974.1999 – Facsimile
mleddy@cgsh.com
dgelfand@cgsh.com
pmcdermott@cgsh.com

Andrew S. Marovitz
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
312.782.0600 – Telephone
312.701.7711 – Facsimile
amarovitz@mayerbrown.com

**Attorneys for ArcelorMittal S.A. and ArcelorMittal USA LLC**

Jonathan S. Quinn
NEAL, GERBERG & EISENBERG LLP
Two North La Salle Street, Suite 1700
Chicago, IL  60602
312.269.8000 – Telephone
312.429.3531 – Facsimile
jquinn@ngelaw.com

Daniel I. Booker
Debra H. Dermody
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222
412.288.3131 – Telephone
412.288.3063 – Facsimile
dbooker@reedsmith.com
ddermody@reedsmith.com

Alexander Y. Thomas
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, DC  20005-3317
202.414.9200 – Telephone
202.414.9299 – Facsimile
athomas@reedsmith.com

J. Michael Jarboe
THE LAW DEPARTMENT OF
UNITED STATES STEEL CORPORATION
600 Grant Street, Suite 1500
Pittsburgh, PA  15219-2880
412.433.2880 – Telephone
412.433.2811 – Facsimile
jmjarboe@uss.com

**Attorneys for United States Steel Corporation**

37

Nathan P. Eimer
Scott C. Solberg
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL  60604
312.660.7600 – Telephone
312.692.1718 – Facsimile
neimer@eimerstahl.com
ssolberg@eimerstahl.com
dbirk@eimerstahl.com

### *Attorneys for Gerdau Ameristeel Corporation*

Joel G. Chefitz
Amanda J. Metts
McDERMOTT WILL & EMERY LLP
227 West Monroe Street, Suite 4400
Chicago, IL  60606
312.372.2000 – Telephone
312.984.7700 – Facsimile
jchefitz@mwe.com
ametts@mwe.com

Robert S. Walters
BARRETT & McNAGNY LLP
215 East Berry Street
Fort Wayne, IN  46802
260.423.8905 – Telephone
260.423.8920 – Facsimile
rsw@barrettlaw.com

### *Attorneys for Steel Dynamics, Inc.*

James R. Figliulo
Stephanie D. Jones
FIGLIULO & SILVERMAN P.C.
10 South LaSalle Street, Suite 3600
Chicago, IL  60603
312.251.4600 – Telephone
312.251.4610 – Facsimile
jfigliulo@fslegal.com
sjones@fslegal.com

Gregory A. Markel
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
212.504.6000 – Telephone
212.504.6666 – Facsimile
greg.markel@cwt.com

Charles F. Rule
Joseph J. Bial
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
202.862.2200 – Telephone
202.862.2400 – Facsimile
rick.rule@cwt.com
joseph.bial@cwt.com

### *Attorneys for AK Steel Holding Corporation*

38

John W. Treece
Scott D. Stein
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
312.853.7000 – Telephone
312.853.7036 – Facsimile
jtreece@sidley.com
sstein@sidley.com

*Attorneys for SSAB Swedish Steel Corporation*

Joseph A. Tate
Christine C. Levin
David J. Stanoch
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
215.994.2350 – Telephone
215.655.2350 – Facsimile
joseph.tate@dechert.com
christine.levin@dechert.com
david.stanoch@dechert.com

*Attorneys for Commercial Metals Company*

## CERTIFICATE OF SERVICE

I, Todd J. Ehlman, an attorney, hereby certify that on February 28, 2013, I caused a true and accurate copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE THE OPINIONS OF DR. JOHN L. SOLOW** to be filed via the Court's CM/ECF system, and served via e-mail to all counsel of record.

/s/ Todd J. Ehlman
Todd J. Ehlman
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
312.558.5600 – Telephone
312.558.5700 – Facsimile
tehlman@winston.com

40