**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **IN RE: STEEL ANTITRUST LITIGATION** | **Case No. 08-cv-5214** |
| | **Honorable James B. Zagel** |
| **THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER ACTIONS:** | |
| *Standard Iron Works v. ArcelorMittal, et al.,* **Case No. 08-cv-5214** | |
| *Wilmington Steel Processing Co., Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-5371** | |
| *Capow, Inc. d/b/a Eastern States Steel v. ArcelorMittal, et al.,* **Case No. 08-cv-5633** | |
| *Alco Industries, Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-6197** | |
| *Gulf Stream Builders Supply, Inc. v. ArcelorMital, et al.,* **Case No. 10-cv-4236** | |


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH COMMERCIAL METALS CORPORATION, AK STEEL HOLDING CORPORATION AND GERDAU AMERISTEEL CORPORATION, CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS, AND <u>APPROVAL OF NOTICE, SUMMARY NOTICE AND NOTICE PLAN</u>**

**KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.**
Michael K. Kellogg
Mark C. Hansen
Michael J. Guzman
Steven F. Benz
Christopher J. Walker
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036

**FINE, KAPLAN AND BLACK, R.P.C.**
Roberta D. Liebenberg
Donald L. Perelman
Jeffrey S. Istvan
Matthew Duncan
Adam J. Pessin
One South Broad Street, 23rd Floor
Philadelphia, PA 19107

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**FREED KANNER LONDON & MILLEN LLC**
Michael J. Freed
Steven A. Kanner
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015

*Liaison Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY .................................................................................................. 1

THE SETTLEMENTS .......................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

I.      THE STANDARDS USED TO EVALUATE CLASS SETTLEMENTS
        FAVOR APPROVAL. .............................................................................................. 4

II.     THE SETTLEMENTS ARE FAIR AND REASONABLE .................................... 5

III.    THE SETTLEMENT FUND .................................................................................. 10

IV.     THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED. ........... 11

V.      THE NOTICE AND NOTICE PLAN SHOULD BE APPROVED. ............................ 17

VI.     THE REQUESTED PROCEDURES AND TIMELINE ................................................ 20

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................12, 15, 16

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .....................................9

*Armstrong v. Board of School Directors*,
    616 F.2d 305 (7th Cir. 1980),
    *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)............5, 8, 9

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009)...............................................................................13

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)........................................................................................8

*City of Greenville v. Syngenta Crop Prot.*,
    No. 3:10-cv-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) .............................17

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) .....................................................................................6

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................................19

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
    630 F. Supp. 482 (E.D. Pa. 1985) ..............................................................................9

*Goldsmith v. Tech. Solutions Co.*,
    No. 92-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...................................4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................15, 29

*Hispanics United of DuPage County v. Village of Addison*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ....................................................................4, 5, 9

*In re Aftermarket Filters Antitrust Litig.*,
    No. 08-CV-4883 (N.D. Ill 2012) .......................................................................10, 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010).............................................................................16

ii

*In re Blood Reagents Antitrust Litig.*,
    283 F.R.D. 222 (E.D. Pa. 2012)...........................................................................16

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    No. 94C897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994)......................................15

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ..........................................................................16

*In re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) ................................................................................16

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010)....................................................................8

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999)..........................................................................19

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) .....................................................................7

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002)..................................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ..........................................................................13

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)........................17

*In re Processed Egg Products Antirust Litig.*,
    284 F.R.D. 278 (E.D. Pa. 2012)..............................................................................8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) .....................................................................8

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ................................................................................15

*In re Sulfuric Acid Antitrust Litig.*,
    No. 03-C-4576 (N.D. Ill. June 13, 2007) ..............................................................18

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................................................4

iii

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    244 F.R.D. 469 (N.D. Ill. 2007),
    *aff'd*, 571 F.3d 672 (7th Cir. 2009) ...................................................................12

*Ledford v. City of Highland Park*,
    No. 00-4212, 2000 WL 1053967 (N.D. Ill. July 31, 2000) ..................................5

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2011) ........................................................................15, 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................9

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) .............................................................................10

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005) .......................................................................13

*Paper Sys. Inc. v. Nippon Paper Indus. Co. Ltd.*,
    281 F.3d 629 (7th Cir. 2002) ..............................................................................7

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ..............................................................................9

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ..............................................................................7

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ...........................................................................13

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009).....................................................................13, 14

*Schmidt v. Smith & Wollensky LLC*,
    268 F.R.D. 323 (N.D. Ill. 2010).........................................................................12

*Scholes v. Stone, McGuire & Benjamin*,
    839 F. Supp. 1314 (N.D. Ill. 1993) ....................................................................5

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................8

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011)..............................................................................16

iv

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...................................................................7

*Thillens, Inc. v. Cmty Currency Exch. Ass'n*,
    97 F.R.D. 668 (N.D. Ill. 1983) ..............................................................13

*Wallace v. Chicago Hous. Auth.*,
    224 F.R.D. 420 (N.D. Ill. 2004) .............................................................14

## RULES

Federal Rule of Civil Procedure 23 ...................................................... *passim*

## OTHER AUTHORITIES

3B Moore's Federal Practice ¶ 23.80[4] (2d ed. 1978) ...................................5

3 William B. Rubenstein, Alba Conte & Herbert Newberg, NEWBERG ON CLASS
    ACTIONS, § 8.2 (5th ed. 2013)................................................................17

3 William B. Rubenstein, Alba Conte & Herbert Newberg, NEWBERG ON CLASS
    ACTIONS, § 8.32 (5th ed. 2013)..............................................................17

4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS §11.25 (4th ed. 2002)..............4

7AA C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1781
    (3d ed. 2005) ....................................................................................15

## INTRODUCTION

Plaintiffs have reached Settlements with three of the eight defendants in this litigation, Commercial Metals Corporation ("CMC"), AK Steel Holding Corporation ("AK Steel"), and Gerdau Ameristeel Corporation ("Gerdau") (collectively, "Settling Defendants"), for $3,999,999, $5,800,000 and $6,100,000, respectively. As described below, these Settlements are fair, reasonable and adequate, and they satisfy the standard for preliminary approval.

Plaintiffs respectfully submit this Memorandum of Law in support of their unopposed motion for entry of an order: (i) granting preliminary approval to the proposed Settlements entered into by Plaintiffs, on their own behalf and on behalf of the proposed Settlement Class, and Settling Defendants; (ii) conditionally certifying for settlement purposes the proposed Settlement Class and Plaintiffs as Class Representatives, and appointing Fine, Kaplan and Black, R.P.C. ("FKB") and Kellogg, Huber, Hansen, Todd, Evans and Figel, P.L.L.C., ("KHHTEF") as Co-Lead Class Counsel; (iii) approving the form and manner of giving notice of the proposed Settlements to the Class; and (iv) setting a date for a hearing on final approval of the Settlements (the "Fairness Hearing"), and deadlines for opting out, objecting to and commenting on the Settlements.

## PROCEDURAL HISTORY

On September 12, 2008, Plaintiff Standard Iron Works filed a Class Action Complaint captioned *Standard Iron Works v. ArcelorMittal, et al.*, Case No. 08-C-5214, Dkt. No. 1. That case was then consolidated with several related cases.[1] Plaintiffs allege that Defendants

---

[1] Putative class representatives filed seven direct purchaser class actions in this Court, which have been consolidated in this action: *Standard Iron Works v. ArcelorMittal, et al.*, No. 08

1

unlawfully conspired to restrict the output of steel products in the United States, in violation of the Sherman Act, and that as a result, Plaintiffs and the members of the proposed Class paid more for Steel Products than they otherwise would have.

The Court denied Defendants' motions to dismiss on June 12, 2009. Dkt. No. 170. The parties then proceeded to discovery. Complex antitrust matters such as this often involve protracted discovery, and this case has been no exception. The Court bifurcated discovery both by subject matter and by defendant. The class certification stage of discovery (which included some discovery into the merits) took more than two years to complete, with the parties producing millions of pages of documents, as well as computerized data for more than 30 million transactions involving steel products, filing 12 expert reports or witness declarations, and taking 12 depositions.

On May 24, 2012, Plaintiffs filed their pending motion for Class Certification, Dkt. No. 305, and briefing on that motion was completed in October 2013. A third and final day of hearings on the motion for class certification is scheduled for April 11, 2014.

## THE SETTLEMENTS

The proposed Settlements with CMC, AK Steel and Gerdau were the product of extensive good-faith, arm's-length negotiations. Over a period of months, Class Counsel engaged in discussions with counsel for each of the Settling Defendants. Those discussions culminated in the compromises embodied in the attached Settlement Agreements, Exhs. 1- 3

---

C 5214; *Wilmington Steel Processing Co., Inc. v. ArcelorMittal, et al.*, No. 08 C 5371; *Capow, Inc. v. ArcelorMittal, et al.*, No. 08 C 5633; *MPM Display, Inc. v. ArcelorMittal, et al.*, No. 08 C 5700; *REM Sys., Inc. v. ArcelorMittal, et al.*, No. 08 C 5942; *Alco Indus. Inc. v. ArcelorMittal, et al.*, No. 08 C 06197; and *Gulf Stream Builders Supply, Inc. v. ArcelorMittal, et al.*, No. 10-cv-4236. The *MPM Display* and *REM Systems* cases were voluntarily dismissed.

hereto. The Agreements provide that Settling Defendants will pay the Settlement Class $15.9 million in cash (the "Settlement Amounts"). CMC Settlement Agreement ¶ 8 ("CMC Settlement") ($3,999,999); AK Steel Settlement Agreement ¶ 8 ("AK Steel Settlement") ($5,800,000); Gerdau Settlement Agreement ¶ 8 ("Gerdau Settlement") ($6,100,000). Settling Defendants will deposit most of this sum into escrow accounts within 10 business days after preliminary approval of the Settlements.[2] Once deposited, the Settlement Amounts will be invested in United States Treasury Bills, United States Treasury Notes, or other instruments insured or guaranteed by the full faith and credit of the United States, and any interest earned thereon (together with the Settlement Amounts) will become part of the Settlement Fund. *Id.*

In addition, the Settlements require the Settling Defendants to provide certain forms of cooperation to assist Class Counsel in the continued prosecution of this case against the remaining Defendants. Among the forms of cooperation are the production of documents relating to the merits of the case, authentication of documents to be used at trial, and providing certain witnesses for interviews.

The Settlements bind Settling Defendants, Plaintiffs and all members of the Settlement Class (except for any who timely and properly submit notices of exclusion), which is defined as all persons who Purchased Steel Products directly from any of the defendants in *Standard Iron Works v. ArcelorMittal, et al.*, Case No. 08-C-5214, or their subsidiaries or controlled affiliates, at any time between April 1, 2005 and December 31, 2007 ("the Settlement Class Period") for delivery in the United States. CMC Settlement ¶ 1, AK Steel Settlement ¶ 1, Gerdau Settlement

---

[2] CMC and Gerdau will deposit the full amounts of their respective settlements after preliminary approval; AK Steel will deposit $2.03 million after preliminary approval, and $3.77 million after final approval.

¶ 1.  The terms "Steel Products" and "Purchased" are defined more specifically in Section IV below.  Excluded from the Settlement Class are Defendants, their present and former parents, subsidiaries, affiliates, joint ventures, co-conspirators and government entities.  *Id.*

The Agreements release Settling Defendants (and their past and present, direct and indirect parents, subsidiaries, affiliates, predecessors and successors) from all claims by Plaintiffs and the Settlement Class relating to conduct alleged in this matter.   CMC Settlement ¶ 12, AK Steel Settlement ¶ 12, Gerdau Settlement ¶ 12.  Settling Defendants' sales of Steel Products to members of the Settlement Class, however, remain in the case for purposes of litigation against the remaining defendants.

## ARGUMENT

**I.     THE STANDARDS USED TO EVALUATE CLASS SETTLEMENTS FAVOR PRELIMINARY APPROVAL.**

Settling and quieting litigation promotes the public interest, particularly in the context of class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").  Indeed:

> [F]ederal courts look with great favor upon the voluntary resolution of litigation
> through settlement.  In the class action context in particular, there is an overriding
> public interest in favor of settlement.

*Goldsmith v. Tech. Solutions Co*., No. 92-4374, 1995 WL 17009594, *1 (N.D. Ill. Oct. 10, 1995) (citations and quotation marks omitted); *see also Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("Compromise is particularly appropriate in complex class actions.").

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements. *See* 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS §11.25 at 38 (4th ed.

2002).  At the preliminary approval phase in the class action settlement process, the Court's function is simply "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  The question before the Court is therefore limited to "whether the proposed settlement is within the range of possible approval."  *Id*. (internal quotation marks omitted); *see also Ledford v. City of Highland Park*, No. 00-4212, 2000 WL 1053967, at *2 (N.D. Ill. July 31, 2000).  As described below, a preliminary examination of the criteria for final approval supports the conclusion that the Settlements here meet the standard for preliminary approval.

## II.     THE SETTLEMENTS ARE FAIR AND REASONABLE.

At the fairness hearing, the Court will have the discretion under Rule 23(e) to finally approve the Settlements if the Court finds them to be fair, adequate, and reasonable to the Class. The Seventh Circuit has set forth eight factors for courts to consider in evaluating the fairness of a class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Hispanics United*, 988 F. Supp. at 1149-50; *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314 (N.D. Ill. 1993).  These factors are not to be

5

applied rigidly, nor treated as requirements, nor are they exclusive, but rather they should be treated as guideposts to assist the Court in determining whether to approve the Settlements. As noted above, at this preliminary-approval stage, the Court's task merely is to determine if the Settlements are within the range of possible approval such that the Settlement Class should be notified about them.

In making this determination, and ultimately the final determination of whether the proposed Settlements are fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding "the strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). This evaluation of the costs and benefits of settlement must be tempered, however, by the recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "[t]he essence of settlement is compromise." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, Settling Defendants have made clear that, in the absence of the Settlements, they would vigorously contest all aspects of the case, including class certification, liability and damages. Though Plaintiffs believe their case to be strong, complex litigation such as this is inherently risky and costly, and there is always some chance that Plaintiffs may not be successful. *See In re AT&T*, 270 F.R.D. at 347. Plaintiffs still face the hurdle of class certification (and related *Daubert* motions), including the possibility of appeal under Rule 23(f). After class certification, plaintiffs face the additional hurdles of litigation on the merits, including summary judgment, trial, and likely appeals of a successful verdict and judgment. And even if Plaintiffs were to win at every subsequent stage, continued litigation necessarily would delay recovery to the Class by several years. Settlement eliminates the risk of litigation vis-à-vis

6

Settling Defendants, providing substantial and certain relief to the Settlement Class now. *Id.* ("[A] future victory is not as valuable as a present victory.").

An initial examination of the terms of the Settlements demonstrates that they are fair, reasonable, and adequate. First, these Settlements are the first three in this case alleging a conspiracy among eight defendants. As the first settlements, they are "ice-breaker" settlements that should "increase the likelihood of future settlements." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This increase in likelihood of future settlements provides a tangible benefit to the class.

Second, $15.9 million is a substantial recovery for the approximately 5,500 class members, particularly in light of the fact that the Settling Defendants' sales comprise only about 19% of class sales, and that all of their sales will remain in the case. That is, class members will retain the right to recover full damages from the non-settling defendants – including damages on class period sales made by CMC, AK Steel and Gerdau – under principles of joint and several liability. *See Paper Sys. Inc. v. Nippon Paper Indus. Co. Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002) ("each member of a conspiracy is liable for all damages caused by the conspiracy's entire output"). In this context, the settlements provide a meaningful cash benefit without diminishing the "net expected value of continued litigation" against the remaining defendants. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)).[3]

---

[3] Under *Synfuel* and *Reynolds*, the Court must evaluate the proposed settlement by "quantifying the net expected value of continued litigation to the class." *Synfuel*, 463 F.3d at 653. In a typical case in which the proposed settlement ends the litigation, this analysis turns on the estimated class recovery discounted by the risks of continued litigation. *Id.* (noting that a "ballpark valuation" is usually the best one can do). But the analysis here is different, because

Third, the Settlements will provide an important financial boost to the litigation fund that Class Counsel will use to prosecute the case against the remaining defendants, again conferring benefits on all class members. *See In re Pressure Sensitive Labelstock Antitrust Litig.,* 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).

Fourth, because Class Counsel do not at this time intend to seek attorneys' fees from these Settlements, they raise no issues of fairness to class members. *See In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 304 (E.D. Pa. 2012); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wis. 2010).[4]

Finally, another benefit to the class from the Settlements is that they require Settling Defendants to cooperate with Plaintiffs by producing certain documents; helping to establish the admissibility of their documents at trial; responding to certain future discovery requests; and assisting Plaintiffs to find and interview current and former employees regarding the allegations at issue. This cooperation from Settling Defendants reduces the risks associated with obtaining important, admissible conspiracy evidence for trial against the remaining defendants. "Despite the difficulties they pose to measurement, nonpecuniary benefits ... may support a settlement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993).

---

the case will continue against the largest and most allegedly culpable Defendants, which remain jointly and severally liable for the entire class damage estimate (*i.e.*, approximately $5.7 billion, as estimated in Plaintiffs' class certification submissions). In this context, the settlements do not materially diminish the net expected value of the case, while affording the class the certain benefits of (i) icebreaker settlements, (ii) substantial cash recovery from three relatively small defendants, and (iii) the additional benefits described in more detail below. *See generally Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583-86 (N.D. Ill. 2011).

[4] Class Counsel may, at a later date, seek attorneys' fees from these Settlements. If and when they do, the Settlement Class will receive notice and an opportunity to be heard on the reasonableness of the fee request and, of course, the Court ultimately will determine the reasonableness of any fees requested.

"[T]he stage of the proceedings" is another factor that courts consider in determining the fairness of a settlement. *Armstrong*, 616 F.2d at 314. Plaintiffs and Settling Defendants chose to settle only after the parties had completed extensive discovery. At this stage in the proceedings, there can be no question that Class Counsel have a clear view of the strengths and weaknesses of the Class's claims on which to base an evaluation of the Settlements. Moreover, the Settlements were the result of months of arm's-length negotiations among experienced counsel, creating a presumption that the Settlement terms are fair, adequate, and reasonable. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair.").

Courts also give considerable weight to the opinion of experienced counsel supporting a settlement. *See*, *e.g.*, *Armstrong*, 616 F.2d at 325 (ruling that in determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel").[5] After litigating this case for more than five years, Class Counsel have developed deep familiarity with the factual and legal issues in this action and the risks associated with continued litigation. Based on this experience, Class Counsel believe that these Settlements are fair, reasonable, and adequate in light of the circumstances.

In sum, the proposed Settlements are the product of serious, informed, non-collusive negotiations, after the completion of substantial discovery, and at a stage in the case where there remains substantial risk and a great deal more to be done. Preliminary evaluation of factors considered by courts in this Circuit in granting final approval of class action settlements

---

[5] *See also Hispanics United*, 988 F. Supp. at 1170; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

demonstrates that these Settlements are well "within the range of possible approval." *Armstrong*, 616 F.2d at 310. For this and all of the foregoing reasons, the Settlements warrant the Court's preliminary approval.

## III.    THE SETTLEMENT FUND

Under the terms of the Settlements, monies from the Settlement Fund are to be used, first, to pay for reasonable expenses associated with the costs of giving notice and administering the Settlement Fund.[6] Next, Class Counsel intend to petition the Court for reimbursement out of the Settlement Fund for expenses previously incurred by Class Counsel in litigating this case on behalf of the Class in an amount not to exceed $5,500,000. At a later stage of the litigation (pursuant to additional notice to the Class and perhaps in conjunction with additional settlements from other Defendants), Class Counsel anticipate submitting to the Court a proposed plan of allocation for the rest of the Settlement Fund (i) to class members, (ii) for reimbursement of additional expenses incurred in advancing this litigation, and (iii) for an award of attorneys' fees not to exceed one third of the Settlement Fund. This proposed course of action is consistent with other cases in this District and elsewhere. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. Nos. 881, 939, 1036 (N.D. Ill 2012) (Orders granting preliminary approval of various settlements); *Newby v. Enron Corp.*, 394 F.3d 296, 304 (5th Cir. 2004) (approving $40 million settlement where $15 million was allocated to fund ongoing litigation and distribution of remaining $25 million was deferred "because the administrative costs of the disbursement militate in favor of deferral until the classes settle with other defendants").

---

[6] At present, the proposed Class Administrator estimates that the cost of notice and administration, through final approval, will be approximately $100,000 - $125,000.

## IV.     THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED.

Plaintiffs request that the Court certify, for settlement purposes only, under Federal Rule

of Civil Procedure 23(a) and 23(b)(3), a Settlement Class defined as:

> All persons (excluding Defendants, their present and former
> parents, subsidiaries, affiliates, joint ventures, co-conspirators and
> government entities) who Purchased Steel Products directly from
> any of the defendants in *Standard Iron Works v. ArcelorMittal, et
> al.*, Case No. 08-C-5214, or their subsidiaries or controlled
> affiliates, at any time between April 1, 2005 and December 31,
> 2007 ("the Settlement Class Period") for delivery in the United
> States.
>
> For purposes of the class definition, the terms "Steel Products" and
> "Purchased" are more specifically defined as follows:
>
> "Steel Products" are defined as products derived from raw carbon
> steel and sold directly by any of the Defendants or their
> subsidiaries or controlled affiliates in the United States, including
> all carbon steel slabs, plates, sheet and coil products, galvanized
> and other coated sheet products; billets, blooms, rebar, merchant
> bar, beams and other structural shapes; and all other steel products
> derived from raw carbon steel and sold by Defendants except as
> specifically excluded below.
>
> "Steel Products" specifically exclude the following product
> categories: stainless steel; grain-oriented electrical steel; tin mill
> products; clad plate (i.e., nickel, stainless or copper clad plate);
> steel pipe and other tubular products; "special bar quality"
> products; wire rod and other wire products; grinding balls;
> fabricated rebar products; fabricated steel joist, decking, fence
> posts and other fabricated building products; welded steel blanks;
> and steel products purchased under toll processing agreements.
>
> The term "Purchased" includes all transactions for which pricing
> was negotiated during the class period and delivery was received
> during the class period. The class definition also includes
> transactions for which a sales contract was negotiated before the
> class period but (i) delivery was received during the class period
> and (ii) the actual transaction price under the contract was adjusted
> (or indexed) based on market pricing that prevailed during the
> class period.

11

Plaintiffs also move the Court to appoint, for settlement purposes only, Standard Iron Works, Wilmington Steel Processing Co., Inc., Capow, Inc. d/b/a Eastern States Steel, Alco Industries, Inc., and Gulf Stream Builders Supply, Inc. as Settlement Class Representatives, and to appoint Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC and Fine, Kaplan and Black, R.P.C. as Co-Lead Class Counsel.

When presented with a request to approve a proposed class settlement, a court must also determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class-certification requirements, a court may properly consider that there will be no trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). As demonstrated below, a preliminary inquiry shows that the proposed Settlement Class satisfies Rule 23's requirements for certification of a settlement class.

**Rule 23(a)(1).** The first requirement under Rule 23(a) is that the class is so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied where more than 40 putative class members exist. *See, e.g., Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009); *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) ("a class of more than 40 members is generally believed to be sufficiently numerous") (citation omitted). Defendants' electronic transactional data demonstrate that thousands of separate entities purchased Steel Products during the Settlement Class Period. Therefore, Rule 23's numerosity requirement is met.

**Rule 23(a)(2).** Rule 23(a)'s second requirement is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires that there be at least

one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co., Inc.,* 259 F.R.D. 330, 334 (N.D. Ill. 2009) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, common issues include, *e.g.*, whether Defendants engaged in a conspiracy to manipulate the supply of Steel Products sold in the United States; whether the conspiracy violated Section 1 of the Sherman Act; and whether the conspiracy caused injury to Plaintiffs and other members of the Settlement Class. Given that Plaintiffs need only show one common question of law or fact to establish commonality under the rule, *see Barragan*, 259 F.R.D. at 334, Plaintiffs easily meet the commonality requirement. *See, e.g., Thillens, Inc. v. Cmty Currency Exch. Ass'n of Illinois*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("[t]he overriding common issue of law is to determine the existence of a conspiracy"); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) (same).

**Rule 23(a)(3).** The claims of the class representatives must be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality "is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (noting that typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims.").

Here, the proposed class representatives are the named plaintiffs in the related direct purchaser actions: Standard Iron Works, a steel fabricator; Wilmington Steel Processing Co., Inc., a former steel fabricator; Alco Industries Inc., a manufacturing firm; Capow, Inc. d/b/a Eastern States Steel, a steel distributor; and Gulf Stream Builders Supply, Inc., a former

13

construction industry supplier. Their claims are typical in that they, like all other members of the proposed class, bought Steel Products directly from Defendants during the alleged conspiracy period. Because all Settlement Class members' (direct purchasers') claims arise from the same events (defendants' alleged conspiracy to restrict production and therefore artificially inflate prices) and are based on the same legal theory (alleged violation of federal antitrust law), Plaintiffs' claims are "typical" of the Settlement Class's. *Saltzman*, 257 F.R.D. at 479.

**Rule 23(a)(4).** Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is a two pronged inquiry: (i) the named plaintiffs' interests must coincide with those of the class, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See, e.g.*, *Wallace v. Chicago Hous. Auth.,* 224 F.R.D. 420, 429-30 (N.D. Ill. 2004).

Here, there are no conflicts between the named Plaintiffs and other members of the Settlement Class. Instead, their interests are aligned because they, like all direct purchasers, have been injured by the same alleged conduct – the industry conspiracy to restrict steel output – and they, like all direct purchasers, share a strong interest in establishing Defendants' liability under the antitrust laws and maximizing class-wide damages.

Second, Plaintiffs are represented by experienced and able counsel. *See* Dkt. No. 33 (Plaintiffs' Interim Lead Counsel papers). Plaintiffs and the proposed Class Counsel have already demonstrated vigorous prosecution on behalf of the Class, through their successful litigation of the case past Defendants' motion to dismiss, their vigorous pursuit of extensive discovery, their retention of highly qualified experts, their effective negotiation of the proposed settlements, and most recently their complex and skillful presentation at the class certification

14

hearing. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding "counsel's prosecution of the case sufficiently vigorous to satisfy any Rule 23(a)(4) concerns"). Accordingly, the adequacy requirement is satisfied.

**Rule 23(b)(3).**  Certification of the Settlement Class is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any individual questions that may arise and because a class action is the superior method of adjudicating the claims.  *See* Fed. R. Civ. P. 23(b)(3).  Indeed the predominance requirement "is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814-15 (7th Cir. 2012) (quoting *Amchem*, 521 U.S. at 625).  Thus, "in antitrust cases, Rule 23, when applied rigorously, will frequently lead to certification." *Id.* at 815 (citation omitted).

The key issues in this case are *all* subject to proof using common evidence.  In a Section 1 antitrust case, defendants' liability turns, first and foremost, on whether plaintiffs can prove a conspiracy among defendants to restrain competition.  Plaintiffs will prove this using common proof such as witness testimony, documents, email and phone records, economic evidence, and other evidence relating to Defendants' conduct.  The question of whether Defendants conspired is common to all members of the Settlement Class and will be answered using common evidence.  Because this issue is so central to a Section 1 antitrust case, the existence of a conspiracy "is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite of Rule 23(b)(3)." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (citing 7AA C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1781 at 228 (3d ed. 2005); *see also In re Brand Name*

15

*Prescription Drugs Antitrust Litig.*, No. 94C897, 1994 WL 663590, at *5 (N.D. Ill. Nov. 18, 1994) (holding that proof of a conspiracy was an overriding and predominant question).

Moreover, impact (causation) and class-wide damages are common issues. Plaintiffs will establish impact and damages using several independent categories of common evidence, including: statements and documents from defendants' top management; expert testimony on market structure and common impact; pricing data; and econometric evidence showing that class members did, in fact, pay higher prices as a result of Defendants' supply restriction. *See*, *e.g.*, *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 238-39 (E.D. Pa. 2012) (noting defendants' documents stating that price increases affected all customers "lend support to a finding of predominance"); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656-57 (7th Cir. 2002) (discussing structural conditions that facilitate effective collusion); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153 (3d Cir. 2002) (affirming class certification where pricing for class products "behaved similarly over time"); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 485-486 (W.D. Pa. 1999) (identifying multiple regression analysis as a method of proving impact).

Thus the three key elements in the case – conspiracy, impact, and class-wide damages – are all common to the Settlement Class and all subject to proof using evidence common to the Settlement Class. Accordingly, the class action device would be far superior to any alternative procedure for resolving the factual and legal issues presented here. *See Messner*, 669 F.3d at 814 n.5. This is all the more true where, as here, the Court need not take into consideration whether a potential trial would be manageable because Plaintiffs seek certification for settlement purposes only. *See Amchem*, 521 U.S. at 620; *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298-304 (3d Cir. 2011) (en banc) (approving antitrust class settlement).

16

Because the requirements of Rule 23 are satisfied, Plaintiffs respectfully ask the Court to conditionally certify the proposed Settlement Class.[7]

## V. THE NOTICE AND NOTICE PLAN SHOULD BE APPROVED.

Plaintiffs also request approval of the proposed method for providing notice to the Settlement Class Members, as well as the draft Notice and Summary Notice. Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* 3 William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions, § 8.2 at 239-42 (5th ed. 2013).

Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from court files; and (4) that any class member may appear and be heard at the fairness hearing. *See* Newberg § 8.32; *In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2011 WL 717519, at *5 (E.D. Mich. Feb. 22, 2011) (quoting Newberg passage); *see also City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-cv-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (stating Rule 23(e) notice contents "sufficient" with above elements) (quoting *In re AT&T Mobility,* 270 F.R.D. at 351). For a Rule 23(b)(3) predominance class, the notice must also state that class members have an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B). The form of notice is

---

[7] For a more detailed analysis of the Rule 23 factors and how they apply to this case, please see Plaintiffs' Memorandum of Law in Support of Class Certification, Dkt. No. 313.

"adequate if it may be understood by the average class member."  4 Newberg on Class Actions §

11.53 at 167 (4th ed. 2002).

The Notice Plan.  Class Counsel propose to send copies of the Notice (attached hereto as

Ex. 4) by first class mail to all persons and entities identified from Defendants' transactional data

as direct purchasers during the Settlement Class Period.[8]  In addition, Class Counsel propose that

a Summary Notice (attached hereto as Ex. 5) be published in the national edition of *The Wall*

*Street Journal* and several trade journals believed to be read by members of the Settlement

Class.[9]  *See, e.g., In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, Dkt. No. 1036

(N.D. Ill Nov. 8, 2012)  (Order granting preliminary approval and authorizing notice by First

Class Mail and publication in *The Wall Street Journal*); *In re Sulfuric Acid Antitrust Litig.*, No.

03-C-4576 (N.D. Ill. June 13, 2007) (same).   Finally, Class Counsel propose to provide

information regarding the Settlement on a website containing information and documents of

interest to members of the Class.

The Notice and Summary Notice.  The contents of the proposed Notice (Ex. 4 hereto)

and Summary Notice (Ex. 5 hereto) also satisfy the applicable requirements.  Both the Notice

and Summary Notice apprise Class members of the notice of the litigation, the material terms of

the Settlements, and the available procedures and related deadlines.  These include how a Class

member may exclude itself from the Settlement Class or object to the Settlements' terms.  The

Summary Notice informs Settlement Class members how to obtain the longer-form Notice; and

---

[8] Class Counsel and the Class Administrator believe that they will be able to notify the
vast majority of class members directly by first class mail.  Seven of the eight defendants already
have provided customer address lists.

[9] The particular trade journals will be selected based on readership, target audience, dates
of publication, and lead time requirements relative to the final approval hearing.

18

both notices tell class members how to access the settlement website and Court files. The Notice also informs Class members of the date, time and place of the hearing at which the Court will consider final approval of the Settlements and the application for reimbursement of expenses. Further, the Notice advises Settlement Class members of the ways in which Class Counsel propose to use the Settlement Fund: (a) to pay for reasonable expenses associated with the costs of giving notice and administration of the Settlement Fund; (b) subject to Court approval, to pay for reimbursement of expenses previously incurred by Class Counsel in the conduct of this litigation; and (c) at a later time, and upon further notice and opportunity to be heard, for allocation and distribution to the Settlement Class, and possibly for an award of attorneys' fees and/or reimbursement of additional expenses.

The contents of the proposed Notice, and the proposed method of its dissemination, which is calculated to reach all members of the Class who can be identified through reasonable efforts, therefore comport with Federal Rules of Civil Procedure 23(c)(2) and 23(e), as well as due process. *See generally Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified); *Hanlon*, 150 F.3d at 1025-26 (finding that form and distribution of notice was adequate where it complied with criteria described above); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429 (S.D. Tex. 1999) (mailed notice to all class members whose address was known, and publication notice, satisfied due process and Rule 23).

## VI.   THE REQUESTED PROCEDURES AND TIMELINE.

Plaintiffs propose the following schedule for the rest of the approval process:

a.      As soon as practicable after entry of the preliminary approval order(s), the Notice will be sent by first class mail to all potential Settlement Class members for whom Class Counsel and the Class Administrator are able to obtain addresses.[10]

b.      The Summary Notice will be published once in the national edition of *The Wall Street Journal*, and once in the trade journals selected by the Class Administrator (see n.9 above) at the time the Notice is mailed or as soon thereafter as is feasible.

c.      The Settlement website will be placed into service at the time the Notice is mailed.

d.      Any requests for exclusion from the Settlement Class must be received by the Class Administrator no later than forty-five (45) days after the date of the mailing of the Notice.

e.      Any objections to the Settlement(s), requests to be heard at the final approval hearing, or entry of a separate appearance for a member of the Settlement Class must be filed with the Court and served on Class Counsel and counsel for Settling Defendants no later than forty-five (45) days after the mailing of the Notice.

f.      The final approval hearing will be held on a date and time to be chosen by the Court.  Plaintiffs suggest that the hearing be scheduled approximately three months after entry of the preliminary approval order.

**CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the CMC, AK Steel and Gerdau Settlements, conditionally

---

[10] The Class Administrator estimates that it will take three weeks after approval of the Notice and Notice Plan to effectuate the mailing.

certify the settlement class, and authorize dissemination of notice, in the form and manner described above, to the Class Members.

Dated: April 3, 2014

Respectfully submitted,

_____
Roberta D. Liebenberg

Michael K. Kellogg                        Donald L. Perelman
Mark C. Hansen                            Jeffrey S. Istvan
Michael J. Guzman                         Matthew Duncan
Steven F. Benz                            Adam J. Pessin
Christopher J. Walker                     **FINE, KAPLAN AND BLACK, R.P.C.**
**KELLOGG, HUBER, HANSEN, TODD,**          One South Broad Street, 23rd Floor
**EVANS & FIGEL, P.L.L.C.**                Philadelphia, PA 19107
Sumner Square                             Tel.: (215) 567-6565
1615 M Street, NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Michael J. Freed
Steven A. Kanner
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel.: (224) 632-4500

*Liaison Counsel for Plaintiffs and the Proposed Class*

21

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on this 3rd day of April, 2014, I electronically filed **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH COMMERCIAL METALS CORPORATION, AK STEEL HOLDING CORPORATION AND GERDAU AMERISTEEL CORPORATION, CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS, AND APPROVAL OF NOTICE, SUMMARY NOTICE AND NOTICE PLAN** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:  All Parties Who Are Currently On The Court's Electronic Mail Notice List and on the Attached Service List.


                               */s/  Jeffrey S. Istvan*
                               Jeffrey S. Istvan