**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: STEEL ANTITRUST LITIGATION** | Case No. 08-cv-5214 |
| _____ | Honorable James B. Zagel |
| **THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER ACTIONS:** | |
| *Standard Iron Works v. ArcelorMittal, et al.,* **Case No. 08-cv-5214** | |
| *Wilmington Steel Processing Co., Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-5371** | |
| *Capow, Inc. d/b/a Eastern States Steel v. ArcelorMittal, et al.,* **Case No. 08-cv-5633** | |
| *Alco Industries, Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-6197** | |
| *Gulf Stream Builders Supply, Inc. v. ArcelorMital, et al.,* **Case No. 10-cv-4236** | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION
EXPENSES**

**<u>INTRODUCTION</u>**

Since this case began in 2008, Plaintiffs' counsel have represented the proposed Class vigorously, effectively, and without compensation through years of hard-fought litigation. With the recent all-cash settlements totaling $163.9 million, and the case continuing against three remaining Defendants, counsel have achieved an outstanding result for the Class, supporting a reasonable fee award from the settlement funds. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("this Court has recognized consistently that a [lawyer] who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Class Counsel respectfully move for attorneys' fees of one-third (33.33%) of the common settlement funds as fair and reasonable compensation for their work—a percentage well within the range accepted by this Court, others in the Seventh Circuit, and courts around the country. *See* page 10, *infra*. Indeed, a one-third fee is particularly warranted here. This case was not the product of a government investigation or prosecution, but was developed solely by Plaintiffs' counsel and litigated effectively at every stage against eight sophisticated Defendants and dozens of well-compensated lawyers from prestigious defense firms. Prosecuting the matter has required more than $33 million dollars of attorney time and litigation expenses, all of which was advanced by Class Counsel on a fully contingent basis with no guarantee of recovery. If the claims had failed for any reason, Class Counsel would have gotten nothing. Having incurred these substantial risks, and having secured a very large settlement fund for the benefit of the Class, Class Counsel have earned their requested fee.

## BACKGROUND

**I.    CLASS COUNSEL'S WORK**

**A.    Pre-Complaint Investigation and Motion to Dismiss**

This action began in September 2008 with the filing of a detailed complaint alleging that Defendants, the nation's largest steelmakers, conspired to restrict raw steel output on an industry-wide basis, causing injury to a class of direct purchasers.  Dkt. No. 1.  Unlike most other large antitrust class actions, Class Counsel built the case from the ground up.  Class Counsel developed the theory in the first instance, interviewed witnesses and steel buyers, studied industry documents, retained experts, and performed extensive legal research to evaluate the claims—all of which informed the complaint.

The next stage was opposing Defendants' motion to dismiss.  In the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Defendants introduced a lengthy factual record in support of their arguments for dismissal, requiring considerable time and effort to respond.  *See* Dkt. Nos. 111-115; Dkt. No. 132 (Plaintiffs' memorandum).  Class Counsel then prepared for and argued the motion on February 26, 2009.

The detailed factual record developed by Class Counsel ultimately informed the Court's June 12, 2009, order and opinion denying Defendants' motion.  *See* Dkt. No. 170; *see also* Ex. 1, Joint Declaration of Co-Lead Counsel Jeffrey Istvan and Michael Guzman ("Joint Decl."), ¶ 45 (approximately 9,488 hours and $5.4 million of time required to investigate, draft complaint, organize the related cases, and prevail on motion to dismiss).[1]

---

[1] The Joint Declaration includes, *inter alia*, an overview of the case, a summary of Class Counsel's work, detail on time and expenses, information on fees in similar cases, and an assessment of the risks of continued litigation and the benefits of settlement.

**B.** **Discovery, Class Certification, and Settlements**

Discovery and document review often requires substantial time and expense in complex

litigation, and this case was no exception. Class Counsel's discovery-related work included,

*inter alia*:

- Drafting and negotiating proposed case management, discovery, and protective orders (*see*, *e.g.*, Dkt. Nos. 19, 31, 40, 78, 181, 221, 226-235);

- Drafting and serving discovery requests on all eight Defendants;

- Filing motions and briefs on various case management and discovery issues (*see, e.g.*, Dkt. Nos. 211, 261-63, 276 and 343);

- Resolving dozens of discovery issues and disputes through meet and confers with Defendants, without the need for Court involvement;

- Reviewing and synthesizing over 3.5 million pages of documents produced by Defendants;

- Collecting, reviewing, and producing requested document discovery from the named Plaintiffs, and preparing for and defending their depositions;

- Coordinating discovery and analysis of Defendants' transactional, financial and operational data, including sales data for nearly 30 million steel transactions as well as monthly price, cost, production, margin and other data from all eight Defendants;

- Serving, negotiating, and reviewing discovery from various trade associations and other non-parties.

Class Counsel also managed the work relating to class certification, which required years

of legal, factual, and strategic development. Specific tasks included drafting hundreds of pages

of class certification and *Daubert* briefs; identifying and organizing thousands of pages of

exhibits; working with three experts on a total of five expert reports; researching, preparing for

and deposing Defendants' experts and witnesses; preparing for and defending Plaintiffs' expert

depositions; preparing and presenting Plaintiffs' argument during a three-day class certification

and *Daubert* hearing; and drafting proposed post-hearing findings of fact and conclusions of law.

*See* Ex. 1, Joint Decl. ¶ 45 (approximately 38,400 hours and $19.6 million in time devoted to class certification and *Daubert* discovery, briefing and case management).[2]

All of this work was necessary to advance Plaintiffs' claims and lay the groundwork for the recent settlements: a total of $163.9 million from Commercial Metals ($3.99 million), AK Steel ($5.8 million), Gerdau ($6.1 million), ArcelorMittal ($90 million), and U.S. Steel ($58 million). Furthermore, each of the settlements required protracted negotiation and drafting on monetary and other terms, as well as extensive work with the class administrator and bank on class notice, administration and escrow issues, representing another key aspect of the case handled effectively by Class Counsel.

### C. <u>Outstanding Result for the Class</u>

The Settlements provide for a guaranteed cash recovery payable promptly to Class members upon final approval, with no funds reverting to the Defendants at any time or for any reason. In other words, all of the settlement money will go directly to the Class in cash after deducting Court-approved attorneys' fees and expenses.

The reaction of Class members has been overwhelmingly favorable. Direct notice was mailed to the vast majority of the approximately 5,300 direct purchaser Class members, and (to date) <u>no Class member has objected</u> to the Settlements or the proposed one-third fee award. The number of opt outs (between 3 and 6, depending on the settlement) is miniscule. And given that Class members include many large and sophisticated businesses, this response underscores the value of the Settlements and the reasonableness of the requested fee award.

---

[2] Additional time and expense detail is provided in the attached Joint Declaration of Co-Lead Counsel, Ex. 1 hereto, which underscores that all of Class Counsel's efforts were reasonable and necessary given the complexity of the issues, the number of Defendants, the volume of discovery, and the length of the case.

### D.    Total Time and Expense

In total, Class Counsel devoted more than 53,000 hours and $27.7 million in time to prosecuting the claims on behalf of the Class while advancing $5.5 million in litigation expenses, all of which was advanced on a fully contingent basis with no guarantee of recovery.  *See* Ex. 1, Joint Decl., at ¶¶ 18, 44, 53.

The requested one-third fee award of $54.63 million thus represents a "multiplier" of 1.97 on Class Counsel's total hourly fees (or "lodestar"), which is well within the range of multipliers awarded in similar common fund antitrust litigation, particularly in light of the success achieved on behalf of the Class.  *See* page 16-19, *infra* (collecting cases).

### ARGUMENT

## I.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.    Legal Standards

It is well-established that attorneys whose work creates a common class action settlement fund are "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. at 478; *see also Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("this payment scheme is based on the equitable notion that those who have benefited from litigation should share in its costs.") (internal quotation marks and citations omitted); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("Having employed their professional skills to create a cornucopia for the class, the lawyers for the class were entitled under the principles of restitution to suitable compensation for their efforts.");  Fed. R. Civ. P. 23(h) (authorizing reasonable fee awards to class counsel).

It is equally well-established that attorneys' fees are properly awarded where, as here, common fund settlements are achieved with certain defendants while the litigation continues

against others. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666, Dkt. No. 693 (N.D. Ill. 2014) (awarding one-third interim fee from initial settlement in multi-defendant case) (copy attached as Ex. 2); *In re Southeastern Milk Antitrust Litig.*, 2:08-MD-1000, 2013 WL 2155387, at *1 (E.D. Tenn. May 17, 2013) (noting initial one-third fee award from early settlements and approving additional fee from later settlements); *In re Urethane Antitrust Litig.*, MDL No. 1616, Dkt. No. 2210 (D. Kan. Dec. 13, 2011) (awarding one-third fee from initial settlements with litigation continuing) (copy attached as Ex. 3); *In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2008 WL 63269, *1 (E.D. Pa. Jan. 3, 2008) (noting prior 32% fee award from initial settlements and approving additional fee from later settlements).

Courts in the Seventh Circuit take a market-based approach in evaluating class action fee requests. *See, e.g., Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014) ("because we always seek to replicate the market value of an attorney's services—and because the market would assign value up front—a district court that leaves the matter of fees until the end of the litigation process must set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred.") (internal quotation marks and citations omitted); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011) (same); *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 635-36 (7th Cir. 2011) (same).

Relevant considerations include, *inter alia*, the ordinary market rate for class counsel's services, fee awards in similar matters, the nature of the particular case (including the risks of non-recovery), and the amount and quality of class counsel's work. *See, e.g., In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("courts must do their best to award counsel

the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *id.* at 721 ("The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case."); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (affirming fee award based on "awards made by courts in other class actions"; "the quality of legal services rendered"; and "the contingent nature of the case"); *Williams*, 658 F.3d at 636 (7th Cir. 2011) (affirming award based on "available market evidence"; "the amount of work involved, the risks of nonpayment, and the quality of representation").

Balancing these and any case-specific factors is a matter committed to the sound discretion of the trial court. *See, e.g., Americana Art*, 743 F.3d at 246 (court of appeals reviews attorney fee methodology *de novo* and reviews trial court's application of an accepted methodology for abuse of discretion).

**B.**      **The Requested Fees Are Fair and Reasonable as a Percentage of the Fund**

Two approaches are commonly used in awarding class action attorneys' fees: (i) the "percentage of recovery" method, under which the Court awards a percentage of the total common settlement fund; and (ii) the "lodestar" method, under which the fee award is a function of class counsel's lodestar (*i.e.*, reasonable hourly rates multiplied by the hours devoted to the case) times a "multiplier" adjustment to account for risk, quality, and outcome. *See generally Pearson v. NBTY, Inc.*, No. 11 CV 7972, 2014 WL 30676, *5-6 (N.D. Ill. Jan. 3, 2014). The Court has discretion to apply either method, *see Americana Art*, 743 F.3d at 247, but because the requested fee here falls squarely within the customary range of outcomes in similar cases, the Court should reach the same conclusion regardless of the methodology used.

The "percentage of recovery" method is a framework accepted by the private market and often used by courts in antitrust class actions, particularly where, as here, class counsel secures an all-cash settlement fund for the benefit of the class. *See* Ex. 4, Declaration of Professor Geoffrey P. Miller in Support of Class Counsel's Motion for Attorneys' Fees and Expenses ("Miller Decl."), at ¶ 26 (percentage method is overwhelmingly favored by the market in contingent cases); *In re ShagrinGas Co. v. BP Products*, No. 1:06-cv-03621, Dkt. No. 209 (N.D. Ill. June 24, 2010) (Zagel, J.) (applying percentage methodology) (copy attached as Ex. 5); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, Dkt. Nos. 693 and 701 (N.D. Ill. 2014) (awarding one-third percentage fee in similar antitrust class action involving $128 million in total settlements) (Ex. 2); *see generally Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund[.]").

The percentage of recovery method has many advantages, including ease of administration, consistency with traditional "common fund" principles, and alignment of class/lawyer interests. *See, e.g.,* Miller Decl. ¶ 26; *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ("there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration"); *Blum v. Stenson*, 465 U.S. 886, 890 n.16 (1984) ("under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *Kirchoff v. Flynn,* 786 F.2d 320, 326 (7th Cir. 1986) (contingent percentage fee "automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure").[3]

---

[3] *See also* Federal Judicial Center, *Manual For Complex Litigation* § 14.121 (4th ed. 2004) ("the vast majority of courts of appeals now permit or direct district courts to use the

8

As explained in more detail below, Class Counsel's one-third fee request is consistent with the market rate for comparable legal services as demonstrated by Co-Lead Counsel's representation of sophisticated paying clients in other contingent matters, as well as fee awards in similar class actions. Furthermore, a one-third fee is appropriate to compensate Class Counsel for the risks of the case, the amount and quality of their work, and the success achieved on behalf of the Class.

1. **A One-Third Contingent Fee Is Consistent with Class Counsel's Market Rate in Similar Cases.**

The attached Joint Declaration of Co-Lead Class Counsel details the extent to which a one-third contingent fee comports with the *ex ante* market rate for Class Counsel's services. *See* Ex. 1 ¶¶ 54-61. Class Counsel, including Co-Lead Counsel, are recognized nationally as effective high-stakes litigators; are retained often by sophisticated clients in antitrust and other complex matters; and commonly negotiate retainer agreements providing for a one-third (or sometimes greater) contingent fee from any successful recovery. *Id.*

Where, as here, a proposed contingent case involves large claims against sophisticated parties, Class Counsel typically negotiate for (i) full reimbursement of all litigation expenses, either concurrently or from any settlement or judgment and (ii) a percentage of recovery fee in the range of 25-50%. *Id.* A one-third fee falls well within that range and is both standard and accepted by the market, including in cases with large potential recoveries. *Id.* This data

_____

percentage-fee method in common-fund cases" in part because "[i]n practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) ("The percentage-of-the-fund method is the proper method to compensate Class Counsel" in antitrust litigation because "the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases.") (citations omitted).

provides direct evidence of Counsel's standard market rate. *See, e.g., Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (one "measure of what is reasonable is what an attorney would receive from a paying client in a similar case.").

The same contingent rate typically applies when Co-Lead Counsel represents a class. *See* Ex. 1, Joint Decl. ¶¶ 56-58 (collecting cases). In the recent *Urethane Antitrust Litigation*, for example, Co-Lead Counsel handled complex claims for nearly a decade on behalf of direct purchasers. As in *Steel*, *Urethane* settled with some (but not all) defendants before trial and, consistent with the common fund principles described above, the court awarded one-third of the settlement amounts as an interim fee award to compensate class counsel for years of hard-fought litigation. *See In re Urethane Antitrust Litig.*, MDL No. 1616, Dkt No. 2210 (D. Kan. Dec. 13, 2011) (Ex. 3). After the settlements, Co-Lead Counsel successfully tried the case to verdict against the last remaining defendant. *In re Urethane Antitrust Litig.*, No. 13-3215 (10th Cir. Sept. 29, 2014) (affirming judgment on behalf of class).

## 2. A One-Third Contingent Fee Is Consistent with the Market Rate Approved by Courts in Similar Cases.

"[A]ttorneys' fees from analogous class action settlements" can be used to evaluate the market rate for legal services, *Taubenfeld*, 415 F.3d at 600, and further demonstrate the reasonableness of Class Counsel's requested fee.

In fact, "[c]ourts throughout the Seventh Circuit routinely . . . conclude that a one-third contingency fee is standard" in class actions. *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) (collecting cases and awarding one-third fee from $105 million settlement fund). *Accord In re ShagrinGas Co.*, No. 1:06-cv-03621, Dkt. No. 209 (N.D. Ill. June 24, 2010) (Zagel, J.) (crediting plaintiffs' evidence "that the market range for legal service in a contingency matter such as this . . . is 30-33%") (Ex. 5); *In re Plasma-Derivative*

*Protein Therapies Antitrust Litig.*, 1:09-cv-07666, Dkt. Nos. 693, 697, 697-1 and 701 (N.D. Ill. 2014) (awarding one-third fee from settlements totaling $128 million) (Ex. 2); *Gaskill*, 160 F.3d at 364 (7th Cir. 1998) (affirming 38% fee award); *cf. Pearson*, 2014 WL 30676, at *6 (Zagel, J.) (noting that 25% is the benchmark but special risks and circumstances can justify a higher award). *See also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range."); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (in a complex class action, "[a] customary contingency fee would range from 33 1/3% to 40%"); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 WL 765086, *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of attorneys['] fees in class-action antitrust lawsuits"); *Goldsmith v. Tech. Solutions Co.*, 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (reviewing Seventh Circuit authority and awarding one-third fee from $90 million settlement fund); *In re Ready-Mixed Concrete Antitrust Litig.*, 1:05-CV-00979-SEB-TAB, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (approving one-third fee).

The recent *Plasma-Derivative Protein Therapies* case is illustrative. As here, *Plasma* involved complex antitrust claims including alleged supply restriction. As here, *Plasma* class counsel devoted tens of millions of dollars in time and expenses to litigating the case on a purely contingent basis. As here, *Plasma* settled favorably before class certification, for a total recovery of $128 million. And the *Plasma* court awarded a one-third fee as a fair and reasonable

percentage from the settlement fund. *See* Ex. 2.

Many recent complex antitrust cases are in accord, including many with comparable class recoveries. *See, e.g. In re Southeastern Milk Antitrust Litig.*, No. 2:08–MD–1000, 2013 WL 2155387, *8 (E.D. Tenn. May 17, 2013) (one-third fee from settlements totaling $158.6 million); *In re Titanium Dioxide Antitrust Litig.*, 10–CV–00318(RDB), 2013 WL 6577029, *1 (D. Md. Dec. 13, 2013) (one-third fee from $163.5 million fund); *Skelaxin*, 2014 WL 2946459 at *1 ("one third fee is fair and reasonable and fully justified" and "within the range of fees ordinarily awarded" in case involving $73 million settlement fund) (collecting cases); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees" and awarding one-third fee from $150 million fund); *In re Fasteners Antitrust Litig.*, CIV.A. 08-md-1912, 2014 WL 296954, *7 (E.D. Pa. Jan. 27, 2014) ("Co–Lead Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions."); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, Dkt. No. 543 (D. Del. 2009) (copy attached as Ex. 6) (one-third fee from $250 million settlement fund);  Miller Decl. at ¶¶ 34-40 (empirical data supports one-third fee award).[4]

This authority confirms that a one-third fee award is within the range of reasonableness in comparable antitrust litigation, particularly given the case-specific risks described below.

---

[4] *See also Automotive Refinishing Paint*, 2008 WL 63269, *1 ($34.5 million attorneys' fee from settlements totaling $105.75 million); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, *19 (E.D. Pa. June 2, 2004) (30% fee from $202.6 million settlement fund); *In re Relafen Antitrust Litig.*, No. 1:01-cv-12239-WGY, Dkt. No. 297, at 8 (D. Mass. 2004) (copy attached as Ex. 7) (one-third fee from $175 million settlement fund); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197(TFH), 2001 WL 34312839, *10, 14 (D.D.C. July 16, 2001) (34% fee from $359 million settlement fund); William B. Rubenstein, *Newberg on Class Actions* § 14:6 (4th ed.) ("Empirical studies show that … fee awards in class actions average around one-third of the recovery.")

### 3. A One-Third Contingent Fee Is Justified by the Risks of the Litigation.

The Seventh Circuit has emphasized that fee awards must be evaluated "in light of the risk of nonpayment," *Synthroid*, 264 F.3d at 718, and that "a higher risk of loss does argue for a higher fee." *In re Trans Union*, 629 F.3d at 746. *See also Florin*, 34 F.3d at 565 ("a court must assess the riskiness of the litigation by measuring the probability of success of this type of case *at the outset* of the litigation.") (emphasis in original).

The risk here was significant. From an *ex ante* perspective, Class Counsel bore the risks of (i) motions to dismiss under the Supreme Court's then relatively new *Twombly* standard; (ii) potential discovery limitations and delays; (iii) dozens of defense arguments and *Daubert* challenges relating to class certification; (iv) the possibility of Rule 23(f) review and attendant delays; and, of course, (v) all the post-certification risks of litigation on the merits, including summary judgment, renewed *Daubert* motions, other evidentiary challenges, trial risks on liability and damages, post-trial motions, appeals, and much more. *See* Ex. 1 (Joint declaration detailing case-specific risks); *Linerboard,* 2004 WL 1221350, at *10 ("an antitrust class action is arguably the most complex action to prosecute" because the "legal and factual issues are always numerous and uncertain in outcome") (citations omitted).

Given these potential pitfalls, the *ex ante* risk of the case justifies a substantial fee award to compensate Class Counsel for pursuing the claims in the first instance, litigating effectively for years without compensation, financing millions of dollars of case costs with no guarantee of reimbursement, and ultimately achieving outstanding results. *See, e.g., Syngenta*, 904 F. Supp. 2d at 909 ("Given the extreme difficulty presented by this matter and the attendant risk in investing years of attorney time carrying millions of dollars in litigation expenses with no guarantee of recovery, a substantial risk multiplier is warranted" and a "fee award of one-third of

13

the fund is thus appropriate[.]"); *Southeastern Milk Antitrust Litig.,* 2013 WL 2155387, at *5

("counsel undertook this case on a contingency-fee basis and accepted a substantial risk of non-

payment for legal work and reimbursement of out-of-pocket expenses advanced.  The Court

finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very

substantial factor in this case that weighs in favor of the requested [one-third] fee."); Miller Decl.

at ¶¶ 36-40 (risks of the litigation support one-third fee award).

      The risks are further underscored by the fact that Class Counsel investigated and

developed this case on their own.  There were no government investigations or indictments

available to use as foundation for the claims.  Counsel handled the case alone, with their own

resources, and courts have long recognized that class counsel should be awarded a larger

percentage fee in this situation to account for the greater risk of loss and the fact that, absent

class counsel's independent work, class members would not have recovered anything at all.[5]

      As Professor Miller has explained, it is important to reward class counsel in this situation

to incentivize "capable attorneys to act as 'private attorneys-general' in policing against illegal

anticompetitive behavior" and to enforce the "antitrust laws [which are] essential to a market

economy."  Miller Decl. at ¶ 23.  *See also Southeastern Milk Antitrust Litig.*, 2013 WL 2155387

at *5 ("failing to fully compensate class counsel for the excellent work done and the various

---

[5] *See, e.g., Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 ("The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action" and thus "warrants approval" of class counsel's one-third fee request.); *Linerboard Antitrust Litig.*, 2004 WL 1221350, at *11 (same); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 2000 WL 204112, at *1 (N.D. Ill. Feb. 10, 2000) ("This case was not marked by any governmental investigations or prosecutions, leaving the development of the facts in the hands of private litigants . . . Because of the uncertainty of the outcome of the case and the enormous amount of work necessary to the prosecution of the charges, counsel for the Class Plaintiffs had to invest a great deal of time and money even while faced with the risk of non-recovery.").

substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635 (1985) ( "[w]ithout doubt, the private cause of action plays a central role in enforcing this [antitrust] regime."); *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002) (same).

### 4. A One-Third Fee Is Supported by the Amount and Quality of Class Counsel's Work and the Results Achieved for the Class.

The Court should further consider the amount and quality of Class Counsel's work in its fee analysis, *Synthroid*, 264 F.3d at 721, as well as "the litigation's ultimate degree of success." *Americana Art*, 743 F.3d at 247 (court is permitted to consider success of the case as another factor supporting fee award). *Accord In re Brand Name Prescription Drugs*, 2000 WL 204112, at *2 ("There is no question that the results achieved by class counsel were extraordinary and that they are entitled to a substantial award."). Both factors fully support a one-third fee.

A large volume of work supports the requested fee. Reaching this point has required six years and more than 53,000 hours of Class Counsel's time, and the very nature of the case—a nationwide antitrust class action against eight large Defendants represented by dozens of lawyers from the country's preeminent defense firms—underscores the scope of the undertaking. *See Linerboard Antitrust Litig.*, 2004 WL 1221350, at *8 ("the quality and vigor of opposing counsel is relevant in evaluating the quality of plaintiffs' counsel."). The Court is well aware of the

hundreds of docket entries that comprise only the most public aspects of the litigation.[6]

The quality of counsel's work and the outcome achieved also supports a one-third fee. On each and every issue raised by Defendants and their capable lawyers—from the motion to dismiss stage, to major discovery disputes, to dozens of contested class certification and *Daubert* issues—Class Counsel have argued their case professionally, and kept the litigation moving forward. Class Counsel also have attempted to minimize the number of disputes requiring Court involvement by meeting and conferring exhaustively (and often productively) with defense counsel. Class Counsel believe the case has been relatively unusual in that regard, allowing the Court to focus the bulk of its attention on the central substantive issues rather than skirmishes among the parties. *Id.* at *10 (similar case management efforts demonstrate "skill and efficiency" and support requested fee).

Class Counsel respectfully submit that their representation has been vigorous, efficient and effective, and that the facts, arguments and credibility they developed over the past six years played the central role in achieving the recent settlements for the Class. As such, the quality of Class Counsel's representation supports the requested fee.

Finally, Class Counsel believe the results speak for themselves. *Id.* at *5 ("The result achieved is the clearest reflection of petitioners' skill and expertise."). A class action settlement fund of $163.9 million (in cash) with no possibility of reversion to a defendant and no reduction

---

[6] Class Counsel have made every effort to work the case efficiently and, in Co-Lead Counsel's experience, the total reported lodestar is reasonable for a multi-defendant case of this nature. *See, e.g., Plasma Antitrust Litig.*, MDL No. 2109, Dkt. No. 697-1, at 9 (N.D. Ill. 2014) (lodestar of $39 million at class certification stage); *Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *5, 7 (lodestar over $53 million after five years of litigation); *Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, at *3 (lodestar of $84 million after approximately six years of litigation).

for opt outs represents an outstanding outcome.[7]  And because the proposed claims process is straightforward, Class members will be in a position to receive their *pro rata* share of the settlement fund with a minimum of effort and delay after this Court rules on the motion for final settlement approval and attorneys' fees.  *See* Plaintiffs' Plan of Allocation and Distribution (attached as Exhibit 5 to contemporaneously-filed motion for final settlement approval). Furthermore, the Class will enjoy these Settlement benefits now while the case proceeds against three remaining Defendants under principles of joint and several liability.  *See* Dkt. No. 494-1, at 8 (explaining that non-settling Defendants remain jointly and severally liable for the full damages caused by the alleged conspiracy).

Accordingly, for all the reasons stated in Plaintiffs' final approval papers, see Dkt. No. 517 (incorporated herein by reference), the settlements deliver a significant common fund benefit for class members, and support the requested one-third fee award.

### C.    Lodestar/Multiplier Analysis Supports the Requested Fee Award

The Court may in its discretion "cross-check a percentage of recovery fee award with the lodestar method" to confirm its reasonableness.  *Pearson*, 2014 WL 30676, at *6 (citing *Synthroid*, 264 F.3d at 718).  As explained at page 7, *supra*, the lodestar method involves multiplying the hours devoted to the case by the relevant professional's hourly rate, then applying a case-specific "multiplier" to compensate class counsel for risk, outcome, and quality

---

[7] As the Court is aware, class action settlements sometimes raise challenging issues of valuation and claims administration, *e.g.*, in cases involving coupon settlements, reversion of unclaimed funds to defendants after the claims process, or reduction of the settlement to account for opt outs.  Here, in contrast, the Class will benefit substantially from the straightforward nature of the deals:  large all-cash settlement funds with no possibility of reversion, no opt out reductions, and a simple claims process.

of work.  *Id.*[8]

When using the lodestar method, a multiplier is generally "mandated" in successful

contingent cases in which counsel bore the risk of loss.  *See, e.g., Florin*, 34 F.3d at 565;

*Continental*, 962 F.2d at 659 ("the need for such an adjustment is particularly acute in class

action suits"); *Florin II*, 60 F.3d 1245, 1247 (7th Cir. 1995) ("court[s] must also be careful to

sustain the incentive for attorneys to continue to represent such clients on an 'inescapably

contingent' basis"); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988) ("the higher

the risk . . . the greater the multiplier necessary to compensate plaintiff's attorney for bringing

the action").

Typical multipliers range from 1-4 depending on the facts.  *See, e.g., Harman v.

Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (multipliers from 1-4 have been approved);

*Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at * 4 (awarding one-third fee and

"multiplier of 1.9, clearly within, but in the bottom half of, the range of typical lodestar

multipliers"); *Skelaxin Antitrust Litig.,* 2014 WL 2946459, at *2 (collecting cases and awarding

"multiplier between 2.1 and 2.5," which is "reasonable in light of what has been routinely

accepted as fair and reasonable in complex matters such as this one"); *Flonase Antitrust Litig.*,

951 F. Supp. 2d at 750-51 ([m]ultipliers of 1-4 are common in antitrust cases, and awarding one-

third fee and 2.99 multiplier); Miller Decl. at ¶¶ 53-61 (empirical data on multipliers supports

requested fee in this case); *Newberg on Class Actions* §14.6 (4th ed. 2009) ("multiples ranging

---

[8] The hourly rates on which this calculation is based are the same rates charged to paying clients for similar work.  *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 489-90 (7th Cir. 2009) (recognizing "presumption that an hourly rate is reasonable where the attorney demonstrates that the hourly rate she has requested is in line with what she charges other clients for similar work."); Joint Decl., Ex. 1, at ¶ 48 (lodestar submissions here are based on the same rates charged to paying clients for similar work); Miller Decl. at ¶¶ 47-52 (Class Counsel rates are reasonable and consistent with the market).

from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

Here, the lodestar method shows that the requested fee award falls squarely within the range of reasonableness. Depending on whether Class Counsel's current or historical rates are used for the analysis, the total lodestar from the inception of the case to the present is $27.7 million (using current rates) or $23.6 million (using historical rates, *i.e.*, the rates that were in effect at the time each hour was billed), which translates to a requested multiplier of 1.97 based on current rates, or 2.31 based on historical rates.[9]

Whether based on current or historical rates, Class Counsel's requested multiplier falls well within the range of reasonableness and properly compensates Class Counsel for bearing the significant litigation risks described above. Success did not come easy in this matter. After six years, millions of dollars in expenses, tens of millions of dollars in professional time, material risk of loss at every step, and outstanding results for the Class, Class Counsel believe a one-third fee and multiplier of 1.97 on current rates (or 2.31 on historical rates) is fair and reasonable. *See* Miller Decl. at ¶¶ 37, 53-61 (requested multiplier is appropriate given risks and results achieved); *Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at*4-5 (one-third fee and 1.9 multiplier from settlements totaling $158.6 million); *Skelaxin Antitrust Litig.*, 2014 WL

---

[9] Use of current billing rates is permitted under Seventh Circuit authority to account for the delay of payment in a protracted case (as distinct from the risk of loss, which is compensated by the "multiplier"). *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994). The Court has discretion to rely on either current or historical rates in its lodestar analysis, *Mather v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 744-45 (7th Cir. 2003), but Class Counsel respectfully submit that, after six years of litigation, the use of current rates is appropriate to account for the passage of time without payment. *See, e.g., In re Southwest Airlines Voucher Litig.*, 11-cv-8176, 2014 WL 2809016, at *5 n.2 (N.D. Ill. June 20, 2014) (using current rates to account for payment delay and awarding multiplier on current rates to compensate for risk); *Smith*, 17 F.3d at 221 (reversing fee award for failure to compensate for delay in payment). Regardless, the requested multiplier is reasonable under either approach.

2946459, at *2 (one-third fee and multiplier of 2.1-2.5 from $73 million settlement fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (average multiplier of 2.4-2.6 from $1.08 billion settlement fund); *Flonase Antitrust Litig.*, 951 F. Supp. 2d at 750-51 (one-third fee and 2.99 multiplier from $150 million fund); *Tricor Antitrust Litig.*, Ex. 6 attached (one-third fee and 3.93 multiplier from $250 million fund); *Linerboard Antitrust Litig.*, 2004 WL 1221350, at *16 (2.66 multiplier to "reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation" and "as a reward to counsel for an extraordinary result"); *Brand Name Prescription Drugs Antitrust Litig.,* 2000 WL 204112, at *3 ($175 million fee and 2.06 multiplier from $696.7 million settlement fund); *see generally Gaskill*, 160 F.3d at 363 ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would.").

## D. The Absence of Objections Supports the Requested Fee Award.

As of the date of this filing, not one of the more than 5,300 class members has objected to Class Counsel's fee request. Two Class Notices expressly informed class members of Class Counsel's intention to seek attorneys' fees of up to one-third of the common settlement funds, *see* Dkt. No. 488-4 at 6 and Dkt. No. 496-3 at 6, and the Notices were disseminated by direct mail to over 5,300 entities identified as direct purchasers, including many large and sophisticated businesses.

In these circumstances, the absence of objections supports Class Counsel's requested one-third fee award. *See, e.g., Flonase*, 951 F. Supp. 2d at 747 (lack of objections "strongly supports approval of the requested fee"); *Automotive Refinishing Paint,* 2008 WL 63269, at *4 ("A lack of objections demonstrates that the Class views the settlement as a success and finds the request for counsel fees to be reasonable."); *Linerboard*, 2004 WL 1221350, at *5 ("The absence

20

of objections supports approval of the Fee Petition," particularly given that class members "include many of the largest corporations in America—entities that are hardly unfamiliar with civil litigation.").[10]

## II. THE REQUESTED EXPENSE REIMBURSEMENT IS FAIR AND REASONABLE

Beyond attorneys' fees, Class Counsel are entitled to reimbursement of litigation costs of the type ordinarily charged to paying clients. *See Synthroid*, 264 F.3d at 722; *Pearson*, 2014 WL 30676, at *8 (awarding costs and expenses incurred by class counsel).

Here, Class Counsel previously moved for reimbursement of several major categories of litigation expenses from the "icebreaker" (CMC, Gerdau and AK Steel) settlement funds. *See* Dkt. No. 494-1 at 15 (seeking reimbursement of $5,064,098.97 in litigation expenses, including expert fees, e-discovery and deposition costs, courtroom technology, etc.); *see also* 7/10/2014 Final Approval Hearing Tr. at 13-14 (Class Counsel submitting backup for all requested expenses).

Class Counsel now respectfully move for reimbursement of the balance of their litigation expenses in the amount of $406,850.08 which represents "out of pocket" costs incurred by Class Counsel for, *inter alia*, inside and outside copying, travel, computer research (*e.g.*, Westlaw, LEXIS and PACER costs), filing fees, phone charges, courier and postage costs, and the like, all of which was necessary to the prosecution of the case. *See* Ex. 1, Joint Decl. ¶ 52 (detailed

---

[10] To assure compliance with the Seventh Circuit's recent decision in *Redman v. RadioShack Corp.*, No. 11-cv-6741, 2014 WL 4654477 (7th Cir. Sept. 19, 2014) (expressing preference for objection deadline closing after fee petition is submitted), a third notice was mailed to all Class members on September 30, 2014, advising that Plaintiffs' final settlement approval and attorneys' fee submissions are now available on the *Steel* website at www.steelantitrustsettlement.com, and that the objection deadline has been extended to October 15, 2014. *See* Dkt. No. 514 (Plaintiffs' motion to extend objection deadline); Dkt. No. 516 (granting motion).

itemization).  Such costs are billed routinely to paying clients in similar matters, *id.*, and are well

accepted as recoverable in the class action context.  *See, e.g., In re ShagrinGas*, Dkt. No. 209

("under the common fund doctrine attorneys may collect their related expenses") (copy attached

as Ex. 5); *Syngenta*, 904 F. Supp. 2d at 910 (approving similar cost reimbursement); *Brown v.

Pro Football, Inc.*, 839 F. Supp. 905, 916 (D.D.C. 1993) ("Plaintiffs' out-of-pocket costs for

telephone, telecopier, air and local couriers, postage, photocopying, WESTLAW research,

secretarial overtime, and counsel's travel expenses are routinely billed to fee-paying clients, and

thus are all compensable") (citations omitted), *rev'd on other grounds*, 50 F.3d 1041 (D.C. Cir.

1995).

## CONCLUSION

Based on the foregoing, Class Counsel respectfully request that their Motion for

Attorneys' Fees and Reimbursement of Litigation Expenses be granted.[11]

---

[11] Having managed the litigation from the outset, Co-Lead Counsel are familiar with the contributions of the various law firms and, consistent with standard practice in similar cases, propose to handle the allocation of any fee award among co-counsel without the need for further Court involvement.  *See, e.g., Plasma*, Dkt. No. 693 at 3 (recent case in this district awarding one-third fee and authorizing co-lead counsel to allocate fee based on each law firm's respective contributions to the litigation) (copy attached as Ex. 2); *Urethane*, Dkt. No. 2210 (same) (Ex. 3); *Auto Refinishing Paint*, 2008 WL 63269, at *7 ("Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co-Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation."); *Linerboard*, 2004 WL 1221350, at *17 (same); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees among themselves").

Dated:   October 1, 2014                    Respectfully submitted,

                                            /s/ Jeffrey S. Istvan

Michael K. Kellogg                          Roberta D. Liebenberg
Mark C. Hansen                              Donald L. Perelman
Michael J. Guzman                           Jeffrey S. Istvan
Steven F. Benz                              Matthew Duncan
**KELLOGG, HUBER, HANSEN,**                 Adam J. Pessin
**TODD, EVANS & FIGEL, P.L.L.C.**           **FINE, KAPLAN AND BLACK, R.P.C.**
Sumner Square                               One South Broad Street, 23rd Floor
1615 M Street, NW, Suite 400                Philadelphia, PA 19107
Washington, DC 20036                        Tel.:  (215) 567-6565
Tel.:  (202) 326-7900

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*


Michael J. Freed
Steven A. Kanner
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel.:    (224) 632-4500

*Liaison Counsel for Plaintiffs and the Proposed Class*

23

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of October, 2014, I caused a true and correct copy of the foregoing **Class Counsel's Memorandum in Support of Motion for Attorneys' Fees and Reimbursement of Litigation Expenses** to be filed with the Court via the Court's ECF system, and served via e-mail to all counsel.


        /s/  *Jeffrey S. Istvan*          
              Jeffrey S. Istvan