# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | Case No. 09 C 7666 MDL No. 2109 Judge Joan B. Gottschall Magistrate Judge Arlander Keys |
| This Document Relates To All Actions | |

## [PROPOSED] ORDER GRANTING CLASS PLAINTIFFS' MOTION FOR INTERIM AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

The Court, having considered Class Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses (the "Motion"), and the memorandum and declarations in support thereof, and after a duly noticed hearing, hereby finds that:

1.      The Motion seeks an award of attorneys' fees of 33 1/3% of the $64,000,000 Settlement Fund created by the settlement payments from CSL Limited, CSL Behring LLC, CSL Plasma Inc. (collectively, "CSL") and the Plasma Protein Therapeutics Association ("PPTA") (collectively with CSL, "Settling Defendants"). Class Counsel Richard A. Koffman and Charles E. Tompkins, of Cohen Milstein Sellers & Toll PLLC and Williams Montgomery & John Ltd., respectively, also seek an order awarding reimbursement of $4,095,879.19 in expenses incurred in connection with the prosecution of this action.

2.      The amount of attorneys' fees requested is fair and reasonable under the "percentage-of-the-fund" method. This is confirmed by a lodestar "cross-check," which reveals a negative multiplier, based upon 92,281.66 hours of work and a collective lodestar of $37,033,138.22.

3.      The attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort, and advanced significant costs and expenses with no ultimate

1833058.1

guarantee of compensation. The award of 33 1/3% is warranted for reasons set out in Class Counsel's moving papers.

4.     Given the risks involved in this case, the effort put forth by Plaintiffs' Counsel, the level of sophistication of the work done, and the extraordinary results achieved for the Class, an award of 33 1/3% is justified.

5.     The expenses sought, as detailed in the Joint Declaration attached to Plaintiffs' brief, were incurred in connection with the prosecution of the litigation for the benefit of the Class, and were reasonable and necessary.

6.     Therefore, upon consideration of the Motion and accompanying declarations, and based upon all matters of record including the pleadings and papers filed in this action and oral argument given at the hearing on this matter, the Court hereby finds the following: (1) the attorneys' fees requested are reasonable and proper; and (2) the expenses requested were necessary, reasonable and proper.

7.     IT IS HEREBY ORDERED AND DECREED:

(a)     Class Counsel are awarded attorneys' fees for distribution to Plaintiffs' Counsel in the amount of $21,333,333 equal to 33 1/3% of the $64,000,000 added to the Settlement Fund. Class Counsel may be paid 33 1/3% of $64,000,000 immediately upon entry of this Order.

(b)     Plaintiffs' Counsel are awarded $4,095,879.19 in reimbursement of expenses incurred in connection with the prosecution of this action.

(c)     The attorneys' fees and reimbursement of expenses shall be paid from the Settlement Fund.

(d)    The attorneys' fees and expenses shall be allocated amongst Plaintiffs' Counsel by Class Counsel Richard A. Koffman and Charles E. Tompkins in a manner which, in Class Counsel's good-faith judgment, accurately reflects each of such Plaintiffs' Counsel's contributions to the establishment, prosecution, and resolution of this litigation.


IT IS SO ORDERED this _____ day of _____, 2014

_____
Honorable Joan B. Gottschall
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | Case No. 09 C 7666 MDL No. 2109 Judge Joan B. Gottschall Magistrate Judge Arlander Keys |
| This Document Relates To All Actions | |

**<u>PLAINTIFFS' MOTION FOR A FINAL AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES</u>**

Plaintiffs respectfully move this Court for entry of an Order approving the requested award of attorney's fees in the amount of one-third the Settlement Fund ($21.33 million), reimbursement of litigation expenses ($280,971.12), and the approval of incentive awards of $50,0000 for each of the three Class Representatives from the settlement with Defendants Baxter International, Inc. and Baxter Healthcare Corporation (collectively "Baxter"). In support of this motion, Plaintiffs provide the attached Memorandum of Law, the Joint Declaration of Richard A. Koffman and Charles E. Tompkins, and the accompanying exhibits.

Dated: March 10, 2014

Respectfully submitted,

*s/Charles E. Tompkins*
**WILLIAMS MONTGOMERY & JOHN LTD.**
Charles E. Tompkins
Anthony J. O'Neill
Bethany C. Teska
233 S. Wacker Dr., Suite 6100
Chicago, IL 60606
***Plaintiffs' Steering Committee***

*s/Richard A. Koffman*
**COHEN MILSTEIN SELLERS & TOLL**
Richard A. Koffman
Benjamin D. Brown
Christopher J. Cormier

Emmy L. Levens
1100 New York Ave, NW, Suite 500 West
Washington, D.C. 20005
***Plaintiffs' Steering Committee***

*s/Deborah H. Bornstein*
**FREEBORN & PETERS LLP**
Deborah H. Bornstein
David C. Gustman
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon All Counsel of Record by e-mail on this 10th day of March, 2014.

*s/Emmy L. Levens*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | Case No. 09 C 7666 |
|  | MDL No. 2109 |
|  | Judge Joan B. Gottschall |
| This Document Relates To All Actions | Magistrate Judge Arlander Keys |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A FINAL AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Richard A. Koffman
Benjamin D. Brown
Christopher J. Cormier
Emmy L. Levens
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

*Plaintiffs' Steering Committee*

**WILLIAMS MONTGOMERY & JOHN LTD.**
Charles E. Tompkins
Anthony J. O'Neill
Bethany C. Teska
233 S. Wacker Drive
Suite 6100
Chicago, Il 60606

*Plaintiffs' Steering Committee*

**FREEBORN & PETERS LLP**
David Gustman
Deborah H. Bornstein
311 S. Wacker Drive
Suite 3000
Chicago, IL 60606

*Plaintiffs' Liaison Counsel*

# TABLE OF CONTENTS

**Page**

I. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE................. 4

    A. The Requested Fees are Fair and Reasonable as a Percentage of the Fund........... 5

    B. The Lodestar/Multiplier Method Confirms the Requested Attorneys' Fees are Fair and Reasonable ........................................................................ 7

    C. The Quality of Legal Services Rendered Supports the Fee Request ................... 13

    D. To Date, No Class Member Has Objected to the Fee and Expense Request........ 14

II. THE REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES IS FAIR AND REASONABLE. ............................................................................. 15

III. INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES ARE WARRANTED AND THE AMOUNT REQUESTED IS REASONABLE.................... 17

IV. CONCLUSION................................................................................................. 20

1858796.1

# TABLE OF AUTHORITIES

Page(s)

CASES

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ........................................................................................................4

*Hawaii v. Standard Oil Co. of California*, 405 U.S. 251 (1972) ..................................................4

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ...................................................... *passim*

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .......................................................................... *passim*

*Florin v. Nationsbank of Ga., N.A. ("Florin I"),*
    34 F.3d 560 (7th Cir. 1994) .................................................................................4, 5, 8

*Florin v. Nationsbank of Ga., N.A. ("Florin II"),*
    60 F.3d 1245 (7th Cir. 1995) ..................................................................................8, 9

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998) .................................................................................5, 8, 9

*Halverson v. Convenient Food Mart, Inc.*,
    458 F.2d 927 (7th Cir. 1972) ..........................................................................................4

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ........................................................................................13

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997).........................................................................................13

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250 (7th Cir. 1988) ..........................................................................................9

*Smith v. Vill. of Maywood*,
    17 F.3d 219 (7th Cir. 1994) ..........................................................................................10

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................................ *passim*

i

*Taubenfeld v. Aon Corp.*
  415 F.3d 597 (7th Cir. 2005) .......................................................................................4, 5, 6

*United States Football League v. Nat'l Football League*,
  887 F.2d 408 (2d Cir. 1989)..............................................................................................9

*Aspacher v. Rosenthal Collins Group*,
  No. 00 C 7520, 2001 U.S. Dist. LEXIS 19464 (N.D. Ill. Nov. 6, 2001) ................................13

*Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151, at *33-
  36 (E.D. Okla. Aug. 16, 2011) ....................................................................................19, 20

*In re Buspirone Antitrust Litig.*,
  No. 01-CV-7951 (JGK) (S.D.N.Y. April 1, 2003) ...................................................................7

*Campbell v. Advantage Sales & Mktg. LLC*,
  No. 09–01430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ..................................................6

*In re Clark Oil & Refining Corp. Antitrust Litig.*,
  422 F.Supp. 503 (E.D. Wis. 1976)......................................................................................4

*Cooper v. IBM Pers. Pension Plan*,
  No. 99 -829-GPM, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) ...........................5

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D.
  Ohio 1990) .....................................................................................................................20

*Edmonds v. United States*,
  658 F. Supp. 1126 (D.S.C. 1987)..................................................................................13, 14

*Goldsmith v. Tech. Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) .............................6, 7

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*,
  212 F.R.D. 400 (E.D. Wis. 2002).....................................................................................6, 7, 8

*Heder v. City of Two Rivers*,
  255 F. Supp. 2d 947 (E.D. Wis. 2003)...............................................................................10

*Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803, at
  *43 (D. Kan. Oct. 26, 2012)...............................................................................................20

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)........................................................................................16

ii

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) .........................................20

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) .......................................................................7

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 448 (N.D. Ill.
    2009) ...............................................................................................................19

*In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, 733 F. Supp.
    2d 997, 1016 (E.D. Wis. 2010) ........................................................................18, 19

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) ......................................9

*Long v. Trans World Airlines, Inc.*,
    No. 86 C 7521, 1993 U.S. Dist. LEXIS 5063 (N.D. Ill. Apr. 15, 1993)..................................7

*Lucken Family Ltd. P'ship, LLLP, v. Ultra Res., Inc.*, 09-cv-01543-REB-KMT, 2010 U.S.
    Dist. LEXIS 144366, at *16-*17 (D. Colo. Dec. 22, 2010) ....................................................19

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F.Supp.2d 806 (E.D. Wis. 2009)......................................................................6

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)...........................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................13

*North Shore Hematology-Oncology Associates, P.C. v. Bristol Myers Squibb Co.*,
    No. 1:04cv248 (EGS) (D.D.C. Nov. 30, 2004).........................................................7

*In re Prudential Sec. Ltd. P'ship Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997).............................................................................7

*In re Ready–Mixed Concrete Antitrust Litig.*,
    No. 05–00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) .................................6

*In re Relafen Antitrust Litig.*,
    No. 01-12239-WGY (D. Mass. April 9, 2004) .......................................................7

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 WL 3008808, at *12 - *14 (D. N.J. Nov. 9, 2005) .....................................7, 15

iii

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) ..............................6, 7

*Ryskamp v. Looney*, No. 10-cv-00842-WJM-KLM, 2012 U.S. Dist. LEXIS 114190, at
  *18-19 (D. Colo. Aug. 14, 2012) ...........................................................................20

*Schulte v. Fifth Third Bank*, 805 F.Supp. 2d 560, 600-601 (N.D. Ill. 2011) .................................17

*Spicer v. Chicago Bd. Options Exch., Inc.*,
  844 F. Supp. 1226 (N.D. Ill. 1993) ....................................................................16, 17

*In re Terazosin Hydrocholride Antitrust Litig.*,
  No. 99-MDL-1317 (S.D.Fla. Apr. 19, 2005) ..............................................................7

*In re Trans Union Corp. Privacy Litig.*,
  *No. 00 C 4729,* 2009 U.S. Dist. LEXIS 116934 (N.D. Ill. October 1, 2009),
  *modified and remanded by,* 629 F.3d 741 (7th Cir. 2011) .........................................5, 7

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS
  152275, at *35-36 (E.D.N.Y. Oct. 22, 2012) ...........................................................20

## OTHER AUTHORITIES

Rule 23(h) of the Federal Rules of Civil Procedure ...................................................1

William B. Rubenstein, Newberg on Class Actions § 14:6 (4th ed.) ..............................7

iv

This case involves allegations that the two largest manufacturers of life-sustaining biologic therapies conspired to restrict the supply and increase the prices of those therapies in violation of the antitrust laws. Following a lengthy pre-filing investigation, Class Counsel and their legal team have engaged in nearly five years of intensive litigation, during which they have: successfully filed a detailed Consolidated Amended Complaint; defeated two motions to dismiss; engaged in extensive discovery-related motion practice; reviewed more than 11 million pages of documents; taken and defended more than sixty depositions on three separate continents; retained and consulted two preeminent economists (and defended their depositions); submitted several hundred pages of briefing and other materials in support of Plaintiff's motion for class certification; and engaged in protracted, arm's length settlement negotiations with all three Defendants. All of these efforts have now come to fruition, as Class Counsel have reached a Settlement with the final remaining defendant, Baxter, for $64 million. This brings the total relief to the Class to $128 million. As explained more fully in the simultaneously filed Motion for Final Approval of the Baxter Settlement, this is a truly excellent result for the Class.

Class Counsel – Richard A. Koffman and Charles E. Tompkins, and their respective law firms[1] – hereby submit this memorandum in support of their Motion for a Final Award of Attorneys' Fees and Reimbursement of Litigation Expenses pursuant to Rule 23(h) of the Federal Rules of Civil Procedure. As compensation for their considerable work on behalf of the

---

[1] Class Counsel have been ably assisted throughout by a team of experienced attorneys from many of the nation's top plaintiffs' firms, including Liaison Counsel from Freeborn & Peters LLP.

1858796.1

Class, Class Counsel seek an award of one-third of the Settlement fund, $21,333,333.33.[2]

Counsel respectfully submit that this fee is eminently fair and reasonable given that Plaintiffs'

counsel have invested over 94,000 professional hours, valued at more than $37.75 million, and

invested $5 million in out-of-pocket expenses, all without any guarantee of payment or

reimbursement. This extraordinary investment apparently mirrors Defendants': Baxter stated in

open Court that it had engaged one hundred contract attorneys to work on this matter[3] and CSL

publicly acknowledged that it had spent more than $20 million in legal fees related to this suit,

and expected to spend $20 million more if the case were litigated to conclusion. Applying

simple mathematics and logic to these facts, the three Defendants' total legal fees to date are

likely in excess of $50 million.

Counsel also asks that the Court approve an incentive award of $50,000 for each of the

Class Representatives in this matter. The Class Representatives have collectively spent

thousands of hours prosecuting this matter on behalf of the Class, and their efforts have been

critical to the successful result achieved for the Class. The Class Representatives devoted

significant resources to the case despite the fact that each of the Class Representatives'

---

[2] Attached as Exhibit 1 is the Joint Declaration of Richard A. Koffman and Charles E. Tompkins in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Approval of Incentive Awards for Class Representatives (the "Joint Declaration" or "Joint Decl."), which contains a description of the history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties presented by and overcome in this litigation.

Class Counsel will submit shortly the detailed declarations and time entries for each Firm requesting attorneys' fees in this case for the Court's review *in camera*.

[3] Tr. of Hearing held on Feb. 15, 2012 at 6, ECF No. 456.

respective recoveries from the Settlement is comparatively small. The Class Representatives took seriously their responsibilities as "private attorneys general" enforcing the antitrust laws, and each took significant risks and made enormous sacrifices to that end. As the requested incentive awards collectively amount to only .1% of the total recovery to the Class and individually are de minimus in relation to the recovery obtained by other members of the Class, the requested payments are both justified and reasonable.

To date, no Class Member has objected to either the proposed Settlement, to Class Counsel's request for fees and expenses, or to the award of $50,000 to each of the Class Representatives.[4] Additionally, not a single class member opted out of the settlement before the March 3, 2014 opt-out deadline. Given the sophisticated nature of most members of the Settlement Class, which include hospitals and national drug distributors with legal counsel of their own, the fact that *none* of them has opted out speaks volumes about the quality of the settlement and underscores the excellent result achieved by Class Counsel and the Class Representatives.

Both Class Counsel and the Class Representatives devoted tremendous time and effort to the prosecution of the Class's claims, and their efforts paid off. The requested attorneys' fees and incentive awards are both conservative and amply justified in light of the investment, risks, and excellent results obtained for the Class.

---

[4] The deadline for objections is March 31, 2014. If any objections are received, they will be addressed in Class Counsel's reply submission, which will be filed on April 14, 2014.

3

**ARGUMENT**

## I.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE.

It is well-settled that attorneys who, by their efforts, create a common fund for the benefit

of a class are entitled to reasonable compensation for their services.  *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of

persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as

a whole"); *Florin v. Nationsbank of Ga., N.A. ("Florin I")*, 34 F.3d 560, 563 (7th Cir. 1994)

("When a case results in the creation of a common fund for the benefit of the plaintiff class, the

common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of

the fund.").  Courts have recognized that, in addition to providing just compensation, substantial

counsel fees encourage forceful prosecution of cases.  *See Halverson v. Convenient Food Mart,

Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972).  Moreover, providing reasonable attorneys' fees in

successful private antitrust actions promotes "[p]rivate antitrust litigation [which] is widely

recognized as an effective supplement to government enforcement of the antitrust laws and

contributes to the maintenance of a competitive economy." *In re Clark Oil & Refining Corp.

Antitrust Litig.*, 422 F. Supp. 503, 510 (E.D. Wis. 1976), citing *Hawaii v. Standard Oil Co. of

Cal.*, 405 U.S. 251, 262 (1972).

In making the determination regarding the appropriate amount of attorneys' fees to be

awarded to counsel who have successfully prosecuted litigation on behalf of a class, the Seventh

Circuit has instructed:  "[W]hen deciding on appropriate fee levels in common-fund cases, courts

must do their best to award counsel the market price for legal services, in light of the risk of

nonpayment and the normal rate of compensation in the market at the time." *Taubenfeld v. Aon*

4

*Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (same).  In affirming an award of fees equal to nearly one-third of the settlement fund plus expenses, the Seventh Circuit considered, among others, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld*, 415 F.3d at 600.  An examination of these three factors demonstrates that an award of attorneys' fees equal to one-third the settlement amount is both fair and reasonable.

### A.     The Requested Fees are Fair and Reasonable as a Percentage of the Fund.

The Seventh Circuit has strongly endorsed the percentage of the fund method, pursuant to which fees are awarded as a percentage of the total recovery, because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent fee work.  *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis").[5]  The Seventh Circuit has also recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."  *Florin I*, 34 F.3d at 566; *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 U.S. Dist. LEXIS 116934, at *13 (N.D. Ill. Oct. 1, 2009), *modified and*

---

[5] *Cooper v. IBM Pers. Pension Plan*, No. 99 -829-GPM, 2005 U.S. Dist. LEXIS 17071, at *13 (S.D. Ill. Aug. 16, 2005) ("'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market").

5

*remanded by*, 629 F.3d 741 (7th Cir. 2011) (same); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d

566, 573 (7th Cir. 1992) (noting it is easier to award a percentage "than it would be to hassle

over every item or category of hours and expense and what multiple to fix and so forth").[6]

The fee award requested here, amounting to one-third of the recovery, is reasonable and

well justified in light of the significant risks faced in the litigation, the obstacles overcome, and

the quality of Class Counsel's work.  Moreover, the requested fee is also plainly consistent with

fee awards made by courts in other, similar cases.  In complex class action cases like this one,

percentages in the range of 33% to 40% of the recovery have been held appropriate within the

Seventh Circuit.  *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001

U.S. Dist. LEXIS 20397, at *10 (N.D. Ill. Dec. 6, 2001) ("A customary contingency fee would

range from 33 1/3% to 40% of the amount recovered."); *Goldsmith v. Tech. Solutions Co.*, No.

92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *27 (N.D. Ill. Oct. 10, 1995) ("Thus, where the

percentage method is utilized, courts in this District commonly award attorneys' fees equal to

approximately one-third or more of the recovery.").[7]  Moreover, an award of one-third the

---

[6] Although the Seventh Circuit has strongly endorsed the percentage method, district courts retain discretion to choose either the percentage or lodestar method of calculating fees. *In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *13.

[7] *See also, e.g., Campbell v. Advantage Sales & Mktg. LLC*, No. 09–01430-LJM-MJD, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (awarding one-third of recovery as attorneys' fees); *In re Ready–Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979-SEB-TAB, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (awarding 33.3% of the common fund as fees in direct-purchaser antitrust action ); *Taubenfeld*, 415 F.3d at 598 (affirming award of 30%); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (awarding 30% of common fund); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 417 (E.D. Wis. 2002) (approving 30% fee award); *Retsky*, 2001 U.S. Dist. LEXIS 20397, at *10 - *11 (awarding 33 1/3% of fund); *Goldsmith*, 1995 U.S. Dist. LEXIS

6

Settlement is consistent with other complex antitrust actions involving the pharmaceutical industry.  *See*, *e.g.*, *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *12 - *14 (D. N.J. Nov. 9, 2005) (33.3% in direct-purchaser antitrust suit in pharmaceutical industry).[8]  Finally, "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."  William B. Rubenstein, Newberg on Class Actions § 14:6 (4th ed.). Accordingly, Class Counsel request that the court adopt the percentage of the fund approach – as it did with respect to the prior Settlement with CSL and PPTA – and award one-third of the Settlement fund as attorneys' fees.

**B.      The Lodestar/Multiplier Method Confirms the Requested Attorneys' Fees are Fair and Reasonable**

Using the lodestar/multiplier method as a cross-check confirms the appropriateness of the requested fees.  *See, e.g., In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *6.  The lodestar/multiplier method entails multiplying the number of hours each attorney or other

---

15093, at *27 - *28 (awarding fee of 33 1/3%); *Long v. Trans World Airlines, Inc.*, No. 86 C 7521, 1993 U.S. Dist. LEXIS 5063, at *6 (N.D. Ill. Apr. 15, 1993) (32% of settlement or $1.3 million); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (33.3% of $586 million settlement).

[8] *See also* Order and Final Judgment at §12, *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, No. 01-12239-WGY (D. Mass. Apr. 9, 2004), ECF No. 297 (awarding 33.3% fee of a $175 million settlement); Minute Order and Final Judgment, *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, No. 01-CV-07951 (JGK) (S.D.N.Y. Apr. 17, 2003) (awarding a 33.3% fee of a $220 million settlement); Final Order and Judgment Approving Settlement Between Class Plaintiff and Defendant Bristol-Myers Squibb Company at §14, *North Shore Hematology-Oncology Assoc., P.C. v. Bristol Myers Squibb Co.*, No. 1:04-cv-248 (EGS) (D.D.C. Nov. 30, 2004), ECF No. 30 (awarding a 33.3% fee of a $50 million settlement); Order and Final Judgment at §24, *In re Terazosin Hydrocholride Antitrust Litig.*, 352 F. Supp. 2d 1279, No. 99-MD-1317 (S.D. Fla. Apr. 19, 2005), ECF No. 1557; (awarding a 33.3% fee of a $72.5 million settlement).

professional expended on the case by his or her hourly rate to derive the lodestar figure. *See, e.g.*, *Great Neck*, 212 F.R.D. at 411. The court then typically adjusts the lodestar, by applying a multiplier, to reflect factors such as the contingent nature of the case, the consequent risk of non-payment (or under-payment), and the quality of work performed.

"[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for the services.'" *Florin I*, 34 F.3d at 565 (quoting *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 569 (7th Cir. 1992)) ("the need for such an adjustment is particularly acute in class action suits").[9] There are numerous class actions in which plaintiffs' counsel expended thousands of hours and advanced significant litigation expenses and yet received no remuneration whatsoever, despite their hard work and expertise. At the outset of this litigation, there was no guarantee this would not be one of those class actions.

As the Seventh Circuit has emphasized, "court[s] must also be careful to sustain the incentive for attorneys to continue to represent such clients on an 'inescapably contingent' basis." *Florin v. Nationsbank of Ga., N.A. ("Florin II")*, 60 F.3d 1245, 1247 (7th Cir. 1995) (quoting *In re Continental Ill. Sec. Litig.*, 962 F.2d at 569). *See also Gaskill*, 160 F.3d at 363 (recognizing contingent-fee contracts "shift part of the risk of loss from client to lawyer"). This

---

[9] *See also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997) ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").

is particularly true in complex antitrust matters, which are notoriously complex and risky, and frequently involve unpredictable "battles of experts." *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (using a multiplier to "reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation, or as a reward to counsel for an extraordinary result" in a complex antitrust matter); *see also Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988) ("The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier necessary to compensate plaintiff's attorney for bringing the action.").

From the very outset, no matter how strong Class Counsel believed the case to be, there existed the significant possibility Defendants might prevail on motion, at trial, or on appeal – and hence Class Counsel would receive no compensation for their work on behalf of the Class. Plainly, Class Counsel here were not "assured of a paycheck." *See Florin II*, 60 F.3d at 1247. Nonetheless, they collectively risked significant amounts of time and money to achieve a recovery for the Class.

Here, Plaintiffs' counsel collectively expended approximately 94,000 hours of professional time[10] prosecuting the Class's claims. Joint Decl. ¶ 24. Counsel's total lodestar, derived by multiplying the number of hours by each firm's historical hourly rates, amounts to approximately $39 million. *Id*. The requested fee of $21,333,333.33 reflects only a .56%

---

[10] Since it is customary to bill paralegals at hourly rates, it is appropriate to include their time in the lodestar. *In re Cont'l*, 962 F.2d at 569. Courts have recognized the economic value of using paralegals to do work that otherwise would have to be performed by attorneys. *See id.*; *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).

9

multiplier. *Id.* ¶ 26. However, this Court approved an identical award from the CSL/PPTA

Settlement. *See* Dkt. No. 693. Taking that award, along with the award requested here, into

consideration, Class Counsel have requested a total fee only slightly larger than their total

lodestar in the case – a multiplier of approximately 1.13. This is particularly conservative given

that Class Counsel's lodestar was calculated using historical rates and includes only time

invested since this Court's appointment of Plaintiffs' Steering Committee. [11] Courts have held

use of *current* rates is appropriate to compensate counsel for the loss of use of funds. *See Smith

v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use . . . current

rates . . . as acceptable compensation for the delay in payment of fees."); *Heder v. City of Two

Rivers*, 255 F. Supp. 2d 947, 958 (E.D. Wis. 2003) ("awarding fees at the current rate . . . . is an

accepted method"). Using current rates rather than historical rates, and including time spent on

pre-filing investigations, the total fees sought from both settlements would likely be less than

Class Counsel's lodestar.

Given the risks Class Counsel embraced in bringing this case, and the overwhelming case

law supporting the use of risk multipliers, the fees requested are plainly conservative and

reasonable. As discussed in greater detail in the Joint Declaration, during the course of this

litigation Class Counsel have, among other things:

- Researched the law pertinent to the claims against Defendants and the potential

---

[11] Class Counsel, in an effort to be conservative in their billing, have included in their fee applications only time spent since this Court's appointment of Plaintiffs' Steering Committee, thereby excluding significant time spent on counsel's pre-filing investigations and briefing of leadership issues. Additionally, Class Counsel have not sought compensation for time spent preparing this and their previous application for attorneys' fees and reimbursement of expenses.

defenses thereto;

- Prepared a detailed and comprehensive amended complaint based on the extensive factual and expert information Class Counsel collected;

- Researched and drafted comprehensive briefs (and assembled supporting materials) in opposition to Defendants' motion to dismiss;

- Prepared and served numerous discovery requests on Defendants;

- Briefed and argued numerous discovery disputes before Magistrate Judge Keys (and resolved numerous other discovery disputes amicably without involving the Court);

- Prepared and served subpoenas for the production of documents on seventeen third parties;

- Filed FOIA requests with the United Stated Department of Health and Human Services and the Food and Drug Administration Center for Biologics Evaluation and Research for documents relevant to a shortage of Ig or albumin, and reviewed those documents.

- Engaged in protracted negotiation of discovery issues with Defendants and third parties including the negotiation of an ESI protocol and protective order as well as extensive briefing regarding the adequacy of Defendant PPTA's document production;

- Reviewed and analyzed over 11 million pages of documents produced in this litigation;

- Reviewed tens of thousands of pages of other information concerning the Plasma industry, including: (a) Market Research Bureau Reports; (b) transcripts from the Advisory Committee on Blood Safety and Availability; (c) the Defendants' press releases; (d) transcripts of CSL's and Baxter's quarterly analyst conference calls; (e) news articles regarding consolidation in the plasma industry and alleged shortages of products; and (f) materials from the Federal Trade Commission's investigation and complaint challenging CSL's proposed acquisition of Talecris;

- Defended the Class Representatives' depositions;

- Deposed more than sixty witnesses on three continents;

- Located and interviewed former employees of Defendants and leaders from relevant patient populations;

- Retained and consulted two preeminent economists – Dr. Richard Frank and Dr. Raymond Hartman – to analyze the Class's claims, to examine whether the economics of the industry support the Class's theory of conspiracy, to estimate damages, and to assess various issues relating to proving damages;

- Prepared and filed the motions, briefs, and Declarations – totaling several hundred pages – in support of Class Certification;

- Conducted arm's-length settlement negotiations with Defendants' counsel;

- Prepared and negotiated the Settlement Agreements and relevant exhibits;

- Prepared the motions and briefs in support of Preliminary Approval and Final Approval of the proposed Settlements;

- Coordinated issuance of Notice and various settlement administration-related matters with the Claims Administrator and with the escrow agent that is presently holding the Settlement Fund assets in an interest-bearing account for the benefit of the Class; and

- Communicated with the Class Representatives with updates on litigation status throughout.

*See* Joint Decl. ¶ 7.

Class Counsel have made every effort to be efficient in litigating this Action. As much as possible, Class Counsel managed the assignment of work in this case to avoid unnecessarily duplicative or overlapping work. Where appropriate, work was assigned to junior lawyers, paralegals, and others with lower hourly rates, and hourly rates for first-level document review were capped at $400/hr., even for senior attorneys who typically bill at higher hourly rates.

Courts have held the hourly rates to be applied in calculating the lodestar are those normally charged for similar work by attorneys of comparable skill and experience in the community where the attorney practices. *See In re Synthroid*, 264 F.3d at 718 ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of

compensation in the market at the time").[12]  "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."  *Aspacher v. Rosenthal Collins Grp.*, No. 00 C 7520, 2001 U.S. Dist. LEXIS 19464, at *5 (N.D. Ill. Nov. 6, 2001) (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)).  *See also In re Cont'l*, 962 F.2d at 569 ("lawyers . . . are entitled to be compensated at market rates").

The hourly fee rates claimed by Plaintiffs' Counsel are the same as the regular rates historically charged for their services and which have been approved in other complex class action litigation.  Joint Decl. ¶ 26.  In short, the hours expended by Plaintiffs' Counsel, which produced the Settlement now before the Court, were reasonable in view of the work performed, the stage of the proceedings reached, and the complexity of the claims and defenses asserted.

### C.     The Quality of Legal Services Rendered Supports the Fee Request

Class Counsel respectfully submit that they rendered superior representation to the Class through their efforts and persistence in litigating the Action.  The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  Class Counsel practice extensively in the highly

---

[12] *See also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'") (internal citations not included*); Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (appropriate rate in performing lodestar analysis is "the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed") (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977)) .

challenging field of antitrust litigation and have skillfully litigated these types of actions in courts across the country.  *See* Joint Decl. ¶ 28.  This expertise proved essential in litigating the Class's claims.

Throughout the course of this case, Class Counsel were confronted with a number of legal and factual obstacles to establishing, among other things, an illegal conspiracy among Defendants, class-wide antitrust impact, and damages.  Defendants have consistently argued that Plaintiffs would not be able to prove Defendants *agreed* to reduce the supply of plasma-derivative protein therapies, as opposed to merely acting interdependently in an oligopolistic market.  Had the case not settled, Defendants undoubtedly would have contested class-wide impact and damages, as well.

However, despite the complexity of the issues and the substantial difficulties of establishing liability and damages, Class Counsel helped the Class achieve an excellent recovery. Only the skillful and persistent efforts of Class Counsel enabled the Class to secure $64 million in this final settlement and $128 million in total.

### D.     To Date, No Class Member Has Objected to the Fee and Expense Request

In accordance with the Court's Order for Notice and Hearing, dated January 8, 2014, more than 2000 copies of the Notice of (i) Pendency and Proposed Settlement of Class Action; (ii) Settlement Fairness Hearing; and (iii) Motion for Attorneys' Fees, Reimbursement of Litigation Expenses and Approval of Incentive Awards for the Class Representatives (the "Notice"), and the Proof of Claim and Release form were distributed to potential Class Members. *See* Declaration of Lauren Edwardson of Epiq, the Settlement Administrator in the Action, Regarding Mailing of the Notice and Proof of Claim; Publication of the Internet Ads; and Report

14

on Requests for Exclusion, attached to Plaintiffs' Motion for Final Approval of the Baxter

Settlement as Exhibit 2, at ¶¶ 5-6.  In addition, information regarding the settlement was posted

on several websites[13] identified as regularly visited by class members.  *See id* ¶¶ 12-15.

The Notice advised Class Members that Class Counsel would be seeking fees of up to 33

1/3% of the Settlement Fund and reimbursement of expenses, along with $50,000 incentive

awards for each Class Representatives.  *See* Long-Form Notice at 7, attached as Exhibit A to

Garcia Declaration.  The Notice further apprised Class Members of their right to object to the

motion for fees and expenses.  The Court-established deadline for filing objections is March 31,

2014, and if any objections are received, they will be addressed in Class Counsel's reply

submission to be filed on April 14, 2014.  To date, no Class Member has objected.  That not a

single Class Member has objected to the motion for fees and expenses to date underscores the

reasonableness of the fee and expense award sought, especially where, as here, the Class is

comprised of many sophisticated hospitals and national distributors more than capable of

objecting should they believe the requested fees to be unreasonable.[14]  *See In re Remeron*, 2005

WL 3008808, at *13 ("The lack of objections from the Class supports the reasonableness of the

fee request.").

## II.     THE REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES IS FAIR AND REASONABLE.

Class Counsel seek reimbursement from the Settlement Fund of $280,971.12 in litigation

---

[13] These websites included Hospital and Health Networks, HEM/ONC Today, Medical
Economics, and Modern Healthcare.

[14] As noted above, the fact that no class members opted out of the settlement by the March 3
deadline (or since) is a testament to the quality of the settlement achieved.

15

expenses reasonably and actually incurred by Class Counsel in connection with commencing and prosecuting the claims against the Defendants. Courts regularly award reimbursement of the expenses counsel incurred in prosecuting the litigation. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (detailing and awarding expenses incurred during litigation); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).[15] The vast majority of Class Counsel's expenses (more than $4.5 million) were reimbursed out of the prior CSL/PPTA Settlement. The remaining expenses, detailed more fully in the Joint Declaration and declarations attached to the compendium, reflect primarily: (1) the maintenance of Plaintiffs' document database, (2) conferences with Plaintiffs' experts to resolve Settlement notice and administration matters, and (3) travel for Court-ordered hearings, and (4) copying and mailing expenses related to court filings. Joint Decl. ¶¶ 36-39. As these expenses were critical to achieving the excellent result obtained for the Class, and fully reasonable in light of the demands of complex antitrust litigation and the market for these types of litigation support services, Class Counsel ask that their remaining unreimbursed expenses be reimbursed from the Settlement fund.

---

[15] *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("Counsel for each firm has submitted an affidavit attesting to the unreimbursed expenses paid out, and the court sees no reason to disallow any particular category or claim.").

## III. INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES ARE WARRANTED AND THE AMOUNT REQUESTED IS REASONABLE.

"Incentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid* , 264 F.3d at 722–23. In determining whether incentive awards are appropriate, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill.1993).

Here, incentive payments of $50,000 to each of the Class Representatives are reasonable and appropriate. To begin, simply by agreeing to serve as a named plaintiff the Class Representatives opened themselves up to scrutiny and attention which, in and of itself, has been found worthy of some type of remuneration. *See Schulte v. Fifth Third Bank*, 805 F.Supp. 2d 560, 600-01 (N.D. Ill. 2011). But the efforts of the Class Representatives in this matter went much further than this. All three Class Representatives provided essential assistance in the litigation by locating and producing responsive documents and information, participating in teleconferences and meetings with counsel, making employees available to counsel, preparing for and sitting for depositions, maintaining expensive legacy document systems, and participating in a quarterly review of their document retention policies to ensure compliance with the Court-ordered litigation hold. Decl. of Linda S. Tyler in Support of Petition for Incentive Award to Named Plaintiff University of Utah (attached hereto as Exhibit 3); Decl. of Giteshchandra Patel in Support of Petition for Incentive Award to Named Plaintiff Ravi Patel,

M.D., Inc. d/b/a Comprehensive Blood and Cancer Center (attached hereto as Exhibit 4); Decl.

of LCDA. Moraima Torres Toro in Support of Petition for Incentive Award to Named Plaintiff

Hospital Damas, Inc. (attached hereto as Exhibit 5). This substantial effort was time-consuming:

each of the three named plaintiffs spent hundreds of hours in the prosecution of this case.  *Id*.

Not only did the Class Representatives exert this tremendous effort despite the

understanding that their individual recovery was likely to be small, they did so knowing that such

an effort would require them to invest significant time and resources to benefit the Class as a

whole.   It additionally bears mention that the Class Representatives undertook this effort despite

a risk that the Defendants, who the Class Representatives remained dependent upon for the

purchase of medication and therapies throughout the litigation, would retaliate against them in

some manner.[16]  Given the substantial efforts involved in serving as a Class Representative in

this litigation and the risks of retaliation, it is not surprising that there is no evidence that any

member of the Class was willing to serve as a named plaintiff absent the possibility of an

incentive award.  Joint Decl. ¶¶ 40-41.  As such, this is precisely the type of case in which the

Seventh Circuit has found incentive payments to be appropriate.  *See Synthroid* , 264 F.3d at

722–23

Notably, the incentive awards requested here collectively amount to only .1% of the total

recovery to the Class – an almost negligible percentage.  Reducing each class member's recovery

by 0.1% to compensate the Class Representatives for the risks and efforts they undertook to

---

[16] To Defendants' credit, there is no evidence of such retaliation in this matter, but each Class
Representative ran the risk of retaliation by stepping forward to prosecute these claims on behalf
of the Class.

18

benefit the Class as a whole is more than reasonable under the circumstances of this case. *See Cook*, 142 F.3d at 1016 (7th Cir. 1998) (approving settlement that amounted to .19% of Settlement Fund); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1016 (E.D. Wis. 2010) (approving incentive payments to class representatives where the total award "is only a tiny percentage (0.12%) of the class's overall recovery"). Moreover, it bears mention that the requested incentive awards amount to a small fraction of the recoveries obtained by many of the larger Class members. Here, the recovery for some members of the Class is measured in the millions of dollars. Thus, there is no concern that the Class Representatives will be disproportionately compensated. *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 448 (N.D. Ill. 2009) (refusing to award incentive payments 125 times greater than the maximum recovery of any similar Class member). Indeed, as discussed previously, were the requested incentive award unfair or unreasonable in any way, it is highly likely that absent class members would have objected. That they did not serves only to reinforce the appropriateness of the requested award.

Finally, $50,000 incentive awards are reasonable in light of the efforts required and the recovery obtained for the Class. *See Cook*, 142 F.3d at 1016 (affirming incentive award of $25,000 of $13 million Settlement fund); *Lucken Family Ltd. P'ship, LLLP, v. Ultra Res., Inc.*, 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366, at *16-*17 (D. Colo. Dec. 22, 2010) (noting *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving incentive awards of $50,000 for each of 6 class representatives, for a total of $300,000 out of a settlement fund of $56.6 million, which was 0.56% of the common fund) and *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving

19

$5,000 incentive award to each plaintiff where settlement was valued at $1.75 million)).[17]

The efforts of the Class Representatives were absolutely essential to the Class's recovery, *see* Joint Decl. ¶¶ 40-41, and the Class Representatives should be rewarded accordingly. *See Cook*, 142 F.3d at 1016 (7th Cir. 1998).

## CONCLUSION

Class Counsel respectfully request that the Court approve their motion for an award of attorneys' fees equal to one third of the Settlement Fund (approximately $21.33 million). In addition, Class Counsel requests an award of $280,971.12 from the Settlement Fund for reimbursement of their actual costs and expenses incurred in connection with their representation of the Class in this Action and not previously reimbursed. Finally, Counsel asks that the Court grant their request to award each of the three Class Representatives $50,000 in recognition of their significant efforts on behalf the Settlement Classes.

---

[17] *See also Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151, at *33-36 (E.D. Okla. Aug. 16, 2011) (approving incentive awards of $100,000 for each of five class representatives for a total of $500,000); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803, at *43 (D. Kan. Oct. 26, 2012) (approving an incentive award of $60,500 plus accrued interest); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving awards of $300,000 to each of four class representatives); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS 152275, at *35-36 (E.D.N.Y. Oct. 22, 2012) (approving incentive awards of $50,000 to each of two class representatives); *cf. Ryskamp v. Looney*, No. 10-cv-00842-WJM-KLM, 2012 U.S. Dist. LEXIS 114190, at *18-19 (D. Colo. Aug. 14, 2012) (approving a $50,000 incentive award to the lead plaintiff in a derivative action, not a class action, and citing *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards of either $55,000 or $35,000 to each of 5 representative plaintiffs)).

Dated: March 10, 2014

Respectfully submitted,


/s/ Richard A. Koffman                        /s/ Charles E. Tompkins

**COHEN MILSTEIN SELLERS & TOLL**        **WILLIAMS MONTGOMERY & JOHN**
**PLLC**                                   **LTD.**
Richard A. Koffman                         Charles E. Tompkins
Benjamin D. Brown                          Anthony J. O'Neill
Christopher J. Cormier                     Bethany C. Teska
Emmy L. Levens                             233 S. Wacker Dr., Suite 6100
1100 New York Ave, NW, Suite 500 West      Chicago, Il 60606
Washington DC 20005                        *Plaintiffs' Steering Committee*
*Plaintiffs' Steering Committee*

**FREEBORN & PETERS LLP**
David C. Gustman
Deborah H. Bornstein
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
*Plaintiffs' Liaison Counsel*

1858796.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon All Counsel of Record by e-mail on this 10th day of March, 2014.

*Emmy L. Levens*

22

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6,1
### Eastern Division

In Re: Plasma–Derivative Protein Therapies
Antitrust Litigation, et al.

|  | Plaintiff, |  |
|---|---|---|
| v. |  | Case No.: |
|  |  | 1:09–cv–07666 |
|  |  | Honorable Joan B. Gottschall |
| CSL Limited, et al. |  |  |
|  | Defendant. |  |

---

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, April 16, 2014:

      MINUTE entry before the Honorable Joan B. Gottschall: Motion hearing held. Plaintiff's Unopposed Motion for Final Approval of Class Settlement with Baxter [696] and Motion for Final Award of Attorneys' Fees, Reimbursement of Expenses, and Approval of Incentive Awards for Class Representatives [697] are granted. Judgment is entered dismissing with prejudice from this action Defendants Baxter International, Inc. and Baxter Healthcare Corporation. Enter Order and Judgment. Civil case terminated. This order relates to all member cases associated with MDL 2109. MDL 2109 terminated. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at **_www.ilnd.uscourts.gov_**.