UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: STEEL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER ACTIONS:<br><br>*Standard Iron Works v. ArcelorMittal, et al.*, **Case No. 08-cv-5214**<br><br>*Wilmington Steel Processing Co., Inc. v. ArcelorMittal, et al.*, **Case No. 08-cv-5371**<br><br>*Capow, Inc. d/b/a Eastern States Steel v. ArcelorMittal, et al.*, **Case No. 08-cv-5633**<br><br>*Alco Industries, Inc. v. ArcelorMittal, et al.*, **Case No. 08-cv-6197**<br><br>*Gulf Stream Builders Supply, Inc. v. ArcelorMittal, et al.*, **Case No. 10-cv-4236** | Case No. 08-cv-5214<br><br>Honorable James B. Zagel |

**PLAINTIFFS' MOTION FOR DISTRIBUTION OF SETTLEMENT FUNDS**

**I.  INTRODUCTION**

1. Class Plaintiffs ("Plaintiffs"), by their undersigned counsel, hereby respectfully move this Court to approve: (a) the procedures used, the actions taken, and the determinations made by the Claims Administrator, Garden City Group ("GCG"), and by the undersigned Class Counsel relating to the administration of, and proposed distributions from, five settlement funds established in accordance with Settlement Agreements approved by this Court, including the administrative determinations of the Claims Administrator and Class Counsel in accepting,

revising, and rejecting Claims in connection therewith; (b) payment of certain invoices associated with claims administration; and (c) distribution of settlement funds to approved Claimants.

## II. BACKGROUND

2. The Court granted final approval to the Settlements with Defendants CMC, Gerdau, AK Steel, ArcelorMittal and U.S. Steel, by Orders dated October 21 and 23, 2014 (Dkt. Nos. 536 and 540).

3. On October 22, 2014, the District Court approved Plaintiffs' proposed Plan of Allocation and Class Counsel's request for payment of attorneys' fees and reimbursement of litigation expenses (Dkt. No. 539).

4. The Notice and Claims process, described in detail below, is now complete, and the Claims Administrator is prepared to distribute the net Settlement Funds to the Class, on approval by the Court.

5. The current, total available balance of the Settlement Funds is $103,930,547.36. Declaration of Stephen J. Cirami In Support of Motion For Distribution of Settlement Funds attached hereto as Exhibit 1 ("Cirami Decl."), ¶ 51.

6. For the reasons set forth below, Plaintiffs recommend retaining $250,000 in the Settlement Funds to cover estimated future expenses, and transferring $103,680,547.36 into a new Distribution Account, for distribution to Class Members. If the Court approves the proposed Distribution outlined herein, the monies in the Distribution Account will be distributed

to Claimants on a *pro rata* basis in accordance with the Plan of Allocation and the schedules attached as Exhibits E-1 and E-2 to the Cirami Declaration.[1]

## III.  CLAIMS ADMINISTRATION PROCESS

7.  With the Court's approval, Class Counsel engaged GCG to act as the Claims Administrator, under the supervision of Class Counsel. GCG is experienced in handling class action settlement notice programs and claims administration.

8.  In its capacity as Claims Administrator, GCG was authorized to prepare and mail Proof of Claim Forms to Class Members; receive, review and enter data regarding the Claim Forms that were filed; audit Claims when appropriate and necessary; recommend the dollar volume of eligible purchases as to each claim filed; and otherwise assist Class Counsel in the claims administration process. GCG's efforts are summarized below and in the Cirami Declaration.

9.  The Plan of Allocation called for sending Class Members individualized Proof of Claim Forms that showed their net purchases of eligible products directly from Defendants in the United States during the Class Period. In preparing those forms, GCG used a database prepared under the supervision of Plaintiffs' damages expert, Dr. James T. McClave, the President and CEO of InfoTech, Inc.

10. During the course of this litigation, Class Counsel requested that InfoTech analyze the Defendants' sales data to calculate purchase amounts for each Class Member based on the class definition proposed by Plaintiffs and as now certified by the Court.

11. InfoTech devoted a significant amount of work to organizing the various Defendants' transaction data by customer. This involved synthesizing multiple data sets from

---

[1] If the Court orders a different distribution or adjusts any individual Claims, the funds will, of course, be distributed as ordered by the Court.

different Defendants that frequently identified customers and products using different names and addresses, and identifying which transactions were in the case and associated with which customer.

12. InfoTech prepared a database consisting of, *inter alia,* Class Member names and addresses as derived from Defendants' sales data, and purchases of eligible products from each Defendant during the Class Period. In connection with the mailing of the initial Notices in the spring of 2014, InfoTech provided GCG with the Class Member names and addresses. GCG worked with that information to remove duplicates and confirm addresses, and then mailed the Notices, as described in the Cirami Declaration, ¶¶ 2-11.

13. After the Court approved the Settlements, InfoTech provided the purchase data to GCG. Using that data, in December 2014, GCG created and sent more than 11,000 personalized, pre-printed Proof of Claim Forms to more than 5,000 distinct members of the Class. Cirami Decl. ¶¶ 12-16.

14. Each personalized Proof of Claim Form specified the dollar value of that Class Member's purchases of eligible products from each Defendant during the Class Period, as derived from Defendants' Purchase Data. The Proof of Claim Forms instructed Claimants that they had two options: (a) they could accept the pre-printed Defendants' Purchase Data appearing on their Claim Form, in which case Claimants merely had to sign and return the Claim Form, or (b) they could claim different amounts, in which case Claimants were instructed to submit adequate proof that they had purchased the claimed amount of eligible products directly from the Defendants in the United States during the Class Period. Cirami Decl. ¶ 23. A sample proof of claim form is attached as Exhibit A to the Cirami Declaration.

15. GCG also sent blank Claim Forms to any potential Claimant who requested one. Cirami Decl. ¶ 16.

16. The proof of claim form instructed all Claimants to return their Claim Forms and supporting documents by February 3, 2015.[2] Cirami Decl. ¶ 13.

17. The Cirami Declaration, to which Plaintiffs respectfully refer the Court, provides a detailed description of the claims administration process. Specifically, Mr. Cirami describes the procedures and criteria by which GCG reviewed and evaluated Claim Forms; GCG's communications with Claimants and Class Counsel to evaluate and audit Claims; GCG's procedures for, and efforts in, identifying deficiencies in submitted Claim Forms, notifying Claimants of the deficiencies, and allowing Claimants to correct and cure the identified deficiencies; the process by which GCG and Class Counsel determined whether to recommend accepting, rejecting, or modifying each claim; GCG's written notifications to Claimants whose Claims are being recommended for rejection or reduction; and how GCG calculated the Approved Payment Amounts and Proposed Payment Amount for each Claim. *See* Cirami Decl. ¶¶ 20-52.

18. 2,281 Claims Forms were submitted by 2,060 Claimants. Cirami Decl. ¶ 26. Of the 2,060 Claimants, 1,615 accepted the Defendants' Purchase Data as listed on the preprinted Claim Forms ("Undisputed Claims"), 181 disputed those numbers, and others were Claimants for whom the data showed no eligible purchases (collectively "Disputed Claims"). Cirami Decl. ¶ 27.

---

[2] In accordance with the Plan of Allocation (Dkt. No. 517-7), Class Counsel instructed GCG to accept late Claims if doing so would not delay the claims administration process. Class Counsel is not recommending that any Claims be denied on the basis that they were submitted late.

5

19. The Undisputed Claims were approved for payment, subject to change only if new information came to GCG's or Class Counsel's attention during the claims process. Cirami Decl. ¶ 28.

20. The Disputed Claims were first reviewed for completeness. Disputed Claims that, *e.g.*, did not include purchase amounts in Part 3 of the Claim Form, and/or did not provide documents to support claimed purchase amounts, received a Notice of Claim Deficiency ("Deficiency Notice"). If Defendants' Purchase Data showed qualifying purchases for such a deficient Disputed Claim, Claimants were informed that if they failed to correct the deficiency, the claim would be paid based on the purchase amounts pre-printed on their Claim Forms (*i.e.,* from Defendants' Purchase Data). For such deficient Disputed Claims where Defendants' Purchase Data showed no qualifying purchases, Claimants were informed that if they failed to submit numbers and supporting documentation, their Claims would be rejected. Examp0les of the Deficiency Notices are attached as Exhibit B to the Cirami Declaration. Cirami Decl. ¶ 30.

21. 26 Claims were affirmatively withdrawn by the Claimants after they received Deficiency Notices. Another 134 failed to supplement their Claims, and so their Claims were rejected as inadequately documented.[3] Cirami Decl. ¶ 31.

22. Once the duplicate, withdrawn and unsupplemented "placeholder" claims were removed, there remained 1,900 Claims. Of these, 1,615 were Undisputed and 285 were Disputed. Cirami Decl. ¶ 33.

23. Each of the Disputed Claims was then reviewed and evaluated individually to determine whether the Claimant had sufficiently proved qualifying purchases in the amounts

---

[3] As Mr. Cirami notes, "[i]n our experience, we find that third-party settlement filers often file such 'placeholder' claims without knowing whether their clients are Class Members, and later (presumably after finding out that their clients are not Class Members) withdraw or abandon the claims. These 160 withdrawn and abandoned Claims appear to be such claims."

claimed. In making this determination, GCG and Class Counsel considered, *inter alia*, the following factors:

    a. Whether the Claimant had demonstrated that it purchased products within the Class Period;

    b. Whether the Claimant had demonstrated that the products purchased were made in Defendants' U.S. mills and delivered in the U.S;

    c. Whether the Claimant had demonstrated that the products were purchased directly from the Defendants;

    d. Whether the Claimant had demonstrated that the products purchased were qualifying products within the Class definition;

    e. The extent to which the Claimant had demonstrated the amounts of purchases; and

    f. Whether the Claimant was a current or former parent, subsidiary, affiliate or joint venture of a Defendant.

Cirami Decl. ¶ 33.

    24. After review of all the Disputed Claims in light of the above factors, GCG and Class Counsel placed each Disputed Claim into one of the following categories: (i) approved in full; (ii) approved but for a reduced amount; (iii) rejected in full; and (iv) potentially approvable but lacking in proof. Cirami Decl. ¶ 34.

    25. GCG sent a personalized letter to each Disputed Claimant whose claimed purchase amounts were reduced, rejected, or approvable but lacking in proof, explaining the basis for denial, reduction, or lack of proof, and providing the Claimant with another opportunity to submit supplemental proof or argument. These letters also informed Claimants that "Examples of acceptable documentation are invoices and purchase orders. Summary spreadsheets may be submitted along with representative invoices and purchase orders, but summary spreadsheets are not by themselves sufficient to prove that you made qualifying purchases. Purchase amounts based on extrapolation are not acceptable." An example of the

7

second round of Notices of Claim Deficiency is attached as Exhibit C to the Cirami Declaration. Cirami Decl. ¶ 36.

26. Many Disputed Claimants responded to this second round of Notices of Claim Deficiency with more information. All responding Claimants' files, including the new information, were re-reviewed. Where Claimants were able to produce sufficient proof of the amounts claimed, their Claims were approved. Where Claimants could not submit sufficient records, Class Counsel searched Defendants' Purchase Data, often asked InfoTech to perform additional research, and often conducted independent research into the reasons for discrepancies between the amounts in Defendants' Purchase Data and the amounts claimed by Claimants. Where Claimants indicated that they did not have invoices or purchase orders to support their Claims, GCG assisted them in suggesting other documents that could be sufficient. Following this detailed review process, each Claimant whose Claims were still rejected or reduced received another personalized letter advising them of the final determination. Examples of Notices of Claim Determination are attached as Exhibit D to the Cirami Declaration. Cirami Decl. ¶ 37.

27. During this review and audit process, GCG, in close consultation with Co-Lead Counsel, addressed numerous questions about product eligibility, Claimants' possible status as affiliates of Defendants, the adequacy of proof submitted by Claimants who did not accept the pre-printed purchase amounts on the Claim Form, and other issues. This process included extensive email, postal mail, and telephone contact with Claimants to audit and verify the accuracy and integrity of the Claims that were submitted and to ensure that only eligible Claims were approved. Cirami Decl. ¶ 38.

28. GCG and Class Counsel undertook these communications with Claimants to ensure that valid Claimants received the benefit of all qualifying purchases and that all Claimants

8

were given every reasonable opportunity to support their Claims and to cure, explain and be heard with respect to any deficiencies that were identified. Cirami Decl. ¶ 39.

29. Ultimately, of the 285 Disputed Claims that were submitted, 167 were approved for the full amount requested by the Claimant, 37 were approved for an amount greater than that contained in Defendants' Purchase Data but less than the full amount requested by the Claimant, 38 were approved for the amount contained in Defendants' Purchase Data (*i.e.*, the disputed amount was rejected but the claim was still approved); and 43 were rejected in full. Cirami Decl. ¶ 40.

30. Thus, including the 1,615 Undisputed Claims, GCG and Class Counsel recommend that a total of 1,782 Claims be approved in full, that 75 be approved but for a reduced amount, and that 43 be rejected. Cirami Decl. ¶ 41.

31. Attached as Exhibit E to the Cirami Declaration is a list of all the Claims filed. Exhibit E-1 lists the 1,782 Claims that GCG and Class Counsel recommend be approved in full, with their Purchase Amount, Percentage of the Total Approved Purchase Amount, and Proposed Payment Amount. Exhibit E-2 lists the 75 Disputed Claims that GCG and Class Counsel recommend be approved in part, with their approved Purchase Amount, Percentage of the Total Approved Purchase Amount, Proposed Payment Amount, and principal reason(s) why additional requested amounts were not approved. Exhibit E-3 lists the 43 Claims that GCG and Class Counsel recommend be rejected on the merits, with the principal reason(s) for rejection. Exhibit E-4 lists the 381 duplicative, withdrawn and unsupplemented "placeholder" claims, categorized accordingly. For privacy reasons, these lists identify Claimants only by Claim Number. No names, addresses or Taxpayer I.D. numbers are disclosed. Cirami Decl. ¶ 49.

32. All told, GCG and Class Counsel recommend approval of 1,857 Claims representing a total Purchase Amount of $73,053,830,548.69.[4] The most recent statements for the Settlement escrow accounts show a total available balance of $103,930,547.36. According to the Plan of Allocation, each Approved Claimant shall be allocated a *pro rata* share of the Settlement Funds based on his, her, or its Percentage of the Total Approved Purchase Amount, after deduction of reasonable, anticipated further expenses. GCG and Class Counsel request a reserve of $250,000.00 for reasonable, anticipated further expenses, including GCG's fees and expenses to prepare its report, conduct the Distribution, provide notice of the recent certification of the litigation class, and address contingencies such as paying any taxes due on interest earned by the Settlement Funds, and funding any unanticipated costs.[5] Cirami Decl. ¶ 50.

33. GCG calculated the proposed Approved Payment amount for each Approved Claimant listed on Exhibits E-1 and E-2 in accordance with the Court-approved Plan of Allocation, and using a total Distribution amount of $103,680,547.36, which reflects the $250,000 holdback requested.[6] Cirami Decl. ¶ 51.

34. GCG and Class Counsel recommend that the Court approve GCG's determinations as set forth above and in Exhibit E. Upon approval by the Court, GCG will prepare and mail checks to all Approved Claimants for their *pro rata* shares of the Settlement

---

[4] The total claims rate, *i.e.* the total dollar value of purchases claimed compared to the total dollar value of qualifying purchases in Defendants' Purchase Data, was approximately 73%, a high rate in GCG's experience.

[5] Attached as Exhibit G to the Cirami Declaration is GCG's estimate of fees and expenses incurred since August 15, 2015, to conduct the Initial Distribution of the Settlement Funds and to disseminate Notice of the Court's recent certification of the litigation class.

[6] The recommended Approved Payment Amounts for Claimants for whom GCG's initial calculations returned a *pro rata* share of less than $100 have been adjusted upward to $100. Class Counsel and GCG recommend that the Court approve $100 as the minimum payment.

Funds as set forth in Exhibits E-1 and E-2 to the Cirami Declaration. For details of the mechanics of the Distribution, see Cirami Decl., ¶¶ 53-59.

35. In order to encourage Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, GCG and Class Counsel recommend that the distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS AFTER ISSUE DATE." Cirami Decl. ¶ 58.

36. In order to allow the full and final distribution of the Settlement Funds, GCG and Class Counsel request that the Court bar any further Claims or requested adjustments to Claims received after September 24, 2015, from eligibility in the distribution of the Settlement Funds beyond the amounts allocated to Approved Claimants. Cirami Decl. ¶ 59.

37. GCG agreed to be the Settlement Administrator in exchange for payment of its fees and expenses. Class Counsel have been billed and received reports of all of the work GCG performed with respect to the administration of the Settlements, and authorized all of the claims administration work performed herein. Since settlement approval, GCG has been paid a total $332,969.11 out of the Settlement Funds for the work it reasonably performed through August 15, 2015. For a summary of that work, *see* Cirami Decl., *passim* & Exh. F. Plaintiffs request that the Court find that those expenses were reasonable.

## IV. CONCLUSION

38. For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order submitted with this Motion.

Dated: September 24, 2015

Respectfully submitted,

/s/ *Jeffrey S. Istvan*

| | |
|---|---|
| Michael K. Kellogg | Roberta D. Liebenberg |
| Mark C. Hansen | Donald L. Perelman |
| Michael J. Guzman | Jeffrey S. Istvan |
| Steven F. Benz | Matthew Duncan |
| **KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.** | Adam J. Pessin |
| | **FINE, KAPLAN AND BLACK, R.P.C.** |
| Sumner Square | One South Broad Street, 23rd Floor |
| 1615 M Street, NW, Suite 400 | Philadelphia, PA 19107 |
| Washington, DC 20036 | Tel.: (215) 567-6565 |
| Tel.: (202) 326-7900 | |

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Michael J. Freed
Steven A. Kanner
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel.: (224) 632-4500

*Liaison Counsel for Plaintiffs and the Proposed Class*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September 2015, I caused a true and correct copy of the foregoing **Motion for Distribution of the Settlement Funds** to be filed and served electronically via the Court's CM/ECF system upon all registered users.

                                              /s/ *Jeffrey S. Istvan*
                                                  Jeffrey S. Istvan