**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANDARD IRON WORKS, on behalf of itself and all others similarly situated, | |
| Plaintiffs, | |
| v. | No. 08 C 5214 |
| | Judge James B. Zagel |
| ARCELORMITTAL; ARCELORMITTAL USA, INC.; UNITED STATES STEEL CORPORATION; NUCOR CORPORATION; GERDAU AMERISTEEL CORPORATION; STEEL DYNAMICS, INC.; AK STEEL HOLDING CORPORATION; SSAB SWEDISH STEEL CORPORATION; COMMERCIAL METALS, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Almost one year ago, in October 2014, I granted final approval to the Settlements with

Defendants CMC, Gerdau, AK Steel, ArcelorMittal and U.S. Steel. I also approved Plaintiffs'

proposed Plan of Allocation and Class Counsel's request for payment of attorneys' fees and

reimbursement of litigation expenses. The Notice and Claims process is now complete, and the

Claims Administrator is prepared to distribute the net Settlement Funds to the Class, on approval

by the Court. The current, total available balance of the Settlement Funds is $103,930,547.36.

Presently before me is Plaintiffs' motion for distribution of these settlement funds. In this

motion, Plaintiffs outline the Notice and Claims process and request that I approve: (a) the

procedures used, the actions taken, and the determinations made by the Claims Administrator,

Garden City Group ("GCG"), and by the undersigned Class Counsel relating to the

administration of, and proposed distributions from, five settlement funds established in accordance with Settlement Agreements approved by this Court, including the administrative determinations of the Claims Administrator and Class Counsel in accepting, revising, and rejecting Claims in connection therewith; (b) payment of certain invoices associated with claims administration; and (c) distribution of settlement funds to approved Claimants.

Four claimants, however, do not accept the determinations of the claims administrator and have filed objections to Plaintiffs' motion. After carefully considering these objections, I am overruling them and granting Plaintiffs' motion in its entirety.

## DISCUSSION

The distribution of a settlement fund must be "fair, reasonable, and adequate." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011). As I consider the four objections that have been filed in this case, I must also keep in mind the interests of the numerous (here, nearly 2,000) absent class members who have an interest in the fair allocation of the settlement fund. *See Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) ("a court supervising the distribution of a [settlement] fund has the inherent power and duty to protect unnamed, but interested persons").

The first two objections -- made by IPSCO Tubular, Inc. and Newport Steel (the "IPSCO Entities") -- present nearly identical issues that are largely resolved by the plain terms of the class definition. It has been very clear since the outset of this case that the class does not include Defendants' affiliates (present or former). Both of the IPSCO Entities, however, were subsidiaries of co-conspirator IPSCO during the conspiracy period until July 2007, when IPSCO was acquired by Defendant SSAB. In fact, Plaintiffs' allegations against SSAB stem in large part from conspiratorial conduct by its predecessor IPSCO. The IPSCO Entities, therefore, are not

members of the class and, as such, they are expressly excluded from the class defined by this Court. An "individual who is not a class member lacks standing to object to a settlement agreement to which he is not a party." *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 941 (E.D. La. 2012) ("Plaintiffs falling outside the settlement class are entirely unaffected by the Settlement, and thus lack standing to challenge it."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

Unlike the objections made by the IPSCO Entities, the other two objections originate from class members. Both General Motors ("GM") and Electrolux argue that their own data supports greater purchase amounts than those contained in Defendants' records. Although they have been given many opportunities over many months to substantiate their claims, both have failed to do so. As a result, the class administrator has approved GM's and Electrolux's claims for the amounts contained in Defendants' records, and rejected their disputes. I find that the claims administrator's decisions here were reasonable, and indeed the only reasonable ones that could have been reached on the record before it. I am therefore overruling the objections made by GM and Electrolux.

Specifically, I am granting Plaintiffs' motion because I find that the procedures used, actions taken, and determinations made by GCG and Plaintiffs' Class Counsel for the administration of the CMC, Gerdau, AK Steel, ArcelorMittal and U.S. Steel Settlements were proper and complete, and I approve the administrative determinations of GCG and Class Counsel accepting, modifying, and rejecting Claims filed in this matter.

I have carefully reviewed Plaintiffs' motion and the Declaration of Stephen J. Cirami in support thereof, including the exhibits thereto, as well as all of the objections discussed above.

After doing so, I approve the distribution recommendations set forth in the Cirami Declaration and Exhibit E thereto, as well as the proposed methodology for determining payment amounts for Claimants. Accordingly, the Claims listed in Exhibits E-1 and E-2 to the Cirami Declaration are approved, as are the Approved Purchase Amounts and Proposed Payment Amounts for each Claim. I find that the Proposed Payment Amount, calculated to pay each approved Claim on a *pro rata* basis, based on Approved Purchase Amounts, complies with the Plan of Allocation previously approved by the Court. I also approve GCG's and Class Counsel's recommendation of a $100 minimum payment to all eligible Class Members, calculated as described in the Cirami Declaration. The Claims listed in Exhibits E-3 and E-4 to the Cirami Declaration are rejected for the reasons set forth therein and shall not receive a distribution from the Settlement Funds.

I also find that the fees and expenses in the amount of $332,969.11 invoiced by GCG were reasonable and necessary in connection with the administration of the Settlements.

GCG reports that as of August 31, 2015, the available balances of the Settlement Funds total $103,930,547.36. GCG and Class Counsel request a reserve of $250,000.00 for reasonable, anticipated further expenses, including GCG's fees and expenses to prepare its report, conduct the Distribution, provide notice of the recent certification of the litigation class, and address contingencies such as paying any taxes due on interest earned by the Settlement Funds, and funding any unanticipated costs. I am approving this request because it is reasonable and advisable.

The current balances of the Settlement Funds, minus $250,000.00 reserved for the purposes described above, shall be transferred into a single Distribution Fund forthwith. GCG is directed to distribute the monies in the Distribution Fund to the approved Claimants, in the

approved amounts, listed in Exhibits E-1 and E-2 of the Cirami Declaration and approved by this Court, as soon as practicable.

Checks for distribution to the approved Claimants shall bear the notation "Void and Subject to Re-Distribution if Not Cashed within 90 Days After Issue Date," and no check shall be negotiated in the Distribution Fund more than 120 days after the date of the check. Any Claims, or requests for adjustments to Claims, filed after September 24, 2015, shall not be considered and shall not be eligible for payment from the Settlement Funds beyond the amounts approved herein.

## CONCLUSION

The claims process in this case has been thorough, straightforward and fair. It seems clear to me that every class member's claim has been evaluated pursuant to the same process and under the same standards. Accordingly, I am granting Plaintiffs' motion.

Plaintiffs may retain $250,000 in the Settlement Funds to cover their estimated future expenses described above and transfer $103,680,547.36 into a new Distribution Account, for distribution to Class Members. GCG may prepare and mail checks to all Approved Claimants for their *pro rata* shares of the Settlement Funds as set forth in Plaintiffs' motion.

ENTER:

James B. Zagel
United States District Judge

DATE: October 19, 2015