**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE:  STEEL ANTITRUST LITIGATION** _____ **THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER ACTIONS:** *Standard Iron Works v. ArcelorMittal, et al.,* **Case No. 08-cv-5214** *Wilmington Steel Processing Co., Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-5371** *Capow, Inc. d/b/a Eastern States Steel v. ArcelorMittal, et al.,* **Case No. 08-cv-5633** *Alco Industries, Inc. v. ArcelorMittal, et al.,* **Case No. 08-cv-6197** *Gulf Stream Builders Supply, Inc. v. ArcelorMittal, et al.,* **Case No. 10-cv-4236** | **Case No. 08-cv-5214** **Honorable Manish S. Shah** |

**PLAINTIFFS' MOTION FOR DISTRIBUTION OF SETTLEMENT FUNDS**

**I.     INTRODUCTION**

1.      Class Plaintiffs ("Plaintiffs") respectfully move this Court to approve:  (a) the

procedures used, actions taken, and determinations made by the Claims Administrator, Garden

City Group, LLC ("GCG") and Class Counsel relating to the administration of, and proposed

distributions from, three settlement funds established in accordance with Settlement Agreements

approved by this Court, including the administrative determinations of the Claims Administrator

and Class Counsel in accepting, revising, and rejecting Claims; (b) payment of certain invoices

associated with claims administration; and (c) distribution of settlement funds to approved

Claimants in accordance with the Court-approved Plan of Allocation.  Class Plaintiffs know of no objections or opposition to this motion.

## II.    BACKGROUND

2.      The Court granted final approval to the Settlements with Defendants Nucor Corporation, Steel Dynamics, Inc. and SSAB Swedish Steel Corporation, by Order dated February 16, 2017 (Dkt. No. 679).

3.      Also on February 16, 2017, the Court approved Plaintiffs' proposed Plan of Allocation and Class Counsel's request for payment of attorneys' fees and reimbursement of litigation expenses (Dkt. Nos. 679, 680).

4.      The Notice and Claims process, described in detail below, is now complete, and the Claims Administrator is prepared to distribute the net Settlement Funds to the Class, upon approval by the Court.

5.      The Escrow Agent estimates that, as of April 1, 2018, the total available balance of the Settlement Funds will be $19,200,433.62.  *See* Declaration of Angela Ferrante in Support of Motion for Distribution of the Settlement Funds, attached hereto as Exhibit 1 ("Ferrante Decl."), ¶ 46.

6.      For the reasons set forth below, Plaintiffs recommend transferring the entire balances of the Settlement Funds into a new Distribution Account for distribution to Class Members forthwith.  If the Court approves the proposed Distribution outlined herein, the monies in the Distribution Account will be distributed to Claimants *pro rata*, based on their purchases of

class products, in accordance with the Plan of Allocation and the schedules attached as Exhibits E-1 and E-2 to the Ferrante Declaration.[1]

### III.     CLAIMS ADMINISTRATION PROCESS

7.      With the Court's approval, Class Counsel engaged GCG to act as the Claims Administrator, under the supervision of Class Counsel.  GCG is experienced in handling class action settlement notice programs and claims administration.

8.      In its capacity as Claims Administrator, GCG was authorized to prepare and mail Proof of Claim Forms to Class Members; receive, review and enter data regarding the Claim Forms that were submitted; audit Claims when appropriate and necessary; recommend the dollar volume of eligible purchases as to each claim submitted; and otherwise assist Class Counsel in the claims administration process.  GCG's efforts are summarized below and in the Ferrante Declaration.

9.      The Plan of Allocation called for sending Class Members individualized Proof of Claim Forms that showed their net purchases of eligible products directly from Defendants in the United States during the Class Period.

10.      In preparing those forms, GCG used a database prepared under the supervision of Plaintiffs' damages expert, Dr. James T. McClave, the President and CEO of InfoTech, Inc. During the course of this litigation, Class Counsel had requested that InfoTech analyze the Defendants' sales data to calculate purchase amounts for each Class Member based on the class definition proposed by Plaintiffs and as now certified by the Court.

11.      InfoTech devoted a significant amount of work to organizing the various Defendants' transaction data by customer.  This involved synthesizing multiple data sets from

---

[1] If the Court orders a different distribution or adjusts any individual Claims, the funds will, of course, be distributed as ordered by the Court.

different Defendants that frequently identified customers and products using different names and addresses, and identifying which transactions were in the case and associated with which customer.

12.     InfoTech prepared a database consisting of, *inter alia,* Class Member names and addresses as derived from Defendants' sales data, and purchases of eligible products from each Defendant during the Class Period.  In connection with the mailing of the initial Notices in the spring of 2014, InfoTech provided GCG with the Class Member names and addresses.  GCG worked with that information to remove duplicates and confirm addresses, and then mailed the Notices of the first five settlements in the case ("Prior Settlements"), as described in the Declaration of Stephen J. Cirami in Support of Motion for Distribution of Settlement Funds (Exhibit 1 to Dkt. No. 589), ¶¶ 2-11.

13.     After the Court approved the Prior Settlements, InfoTech provided the purchase data to GCG.  Using that data, in December 2014, GCG created and sent personalized, pre-printed Proof of Claim Forms to the Class.  Cirami Decl. ¶¶ 12-16.

14.     As part of its administration of the Prior Settlements, GCG received address updates, as well as information from Class Members and independent research that allowed GCG to update purchase amounts.  GCG used this updated information to create and mail the Proof of Claim Forms for the present Settlements.  Ferrante Decl. ¶¶ 2, 6.  Thus, any Claimant who submitted information that resulted in its claim amount being adjusted in the Prior Settlements received the benefit of that submission in the present Settlements without having to re-submit the information.

15.     Each personalized Proof of Claim Form in the present settlements specified the dollar value of that Class Member's purchases of eligible products from each Defendant during

4

the Class Period, as derived from Defendants' Purchase Data and updated during the

administration of the Prior Settlements.  The Proof of Claim Forms instructed Claimants that

they had two options:  (a) they could accept the pre-printed Defendants' Purchase Data appearing

on their Claim Form, in which case Claimants merely had to sign and return the Claim Form, or

(b) they could claim different amounts, in which case Claimants were instructed to submit

adequate proof that they had purchased the claimed amount of eligible products directly from the

Defendants in the United States during the Class Period.  Ferrante Decl. ¶ 17.  A sample proof of

claim form is attached as Exhibit A to the Ferrante Declaration.

16.     GCG also sent blank Claim Forms to any potential Claimant who requested one.

Ferrante Decl. ¶ 10.

17.     The proof of claim form instructed all Claimants to return their Claim Forms and

supporting documents by May 31, 2017.[2]  Ferrante Decl. ¶ 6.

18.     The Ferrante Declaration, to which Plaintiffs respectfully refer the Court, provides

a detailed description of the claims administration process.  Specifically, Ms. Ferrante describes

the procedures and criteria by which GCG reviewed and evaluated Claim Forms; GCG's

communications with Claimants and Class Counsel to evaluate and audit Claims; GCG's

procedures for, and efforts in, identifying deficiencies in submitted Claim Forms, notifying

Claimants of the deficiencies, and allowing Claimants to correct and cure the deficiencies; the

process by which GCG and Class Counsel determined whether to recommend accepting,

rejecting, or modifying each claim; GCG's written notifications to Claimants whose Claims are

---

[2] In accordance with the Plan of Allocation (Dkt. No. 674-7), Class Counsel instructed GCG to
accept late Claims if doing so would not delay the claims administration process.  Class Counsel
is not recommending that any Claims be denied on the basis that they were submitted late.

being recommended for rejection or reduction; and how GCG calculated the Approved Purchase Amounts and Proposed Payment Amounts for each Claim. *See* Ferrante Decl. ¶¶ 14-46.

19.     2,313 Claims Forms were submitted by 1,949 unique Claimants. Ferrante Decl. ¶ 18.[3] Of the 1,949 Claimants, 1,800 accepted the Defendants' Purchase Data as listed on the preprinted Claim Forms ("Undisputed Claims"), 67 provided their own numbers, and 5 were Claimants for whom the data showed no eligible purchases (the latter two categories collectively "Disputed Claims"). In addition, GCG received 65 "placeholder" claims (described below) and 12 claims that were later withdrawn. Ferrante Decl. ¶ 21.

20.     The Undisputed Claims were approved for payment, subject to change only if new information came to GCG's or Class Counsel's attention during the claims process. Ferrante Decl. ¶ 22.

21.     The Disputed Claims were first reviewed for completeness. Disputed Claims that, *e.g.*, did not include purchase amounts in Part 3 of the Claim Form, and/or did not provide documents to support claimed purchase amounts, received a Notice of Claim Deficiency ("Deficiency Notice"). If Defendants' Purchase Data showed qualifying purchases for such a deficient Disputed Claim, Claimants were informed that if they failed to correct the deficiency, the claim would be paid based on the purchase amounts pre-printed on their Claim Forms (*i.e.*, from Defendants' Purchase Data). For such deficient Disputed Claims where Defendants' Purchase Data showed no qualifying purchases, Claimants were informed that if they failed to submit numbers and supporting documentation, their Claims would be rejected. An example of

---

[3] Although Class Members who received more than one claim form (*e.g.*, at multiple addresses) were advised to file only one Claim Form, some filed multiple claim forms. GCG identified and rejected 364 duplicate claims. Ferrante Decl. ¶ 20.

the Deficiency Notice is attached as Exhibit B to the Ferrante Declaration.  Ferrante Decl. ¶ 24-26.

22.     12 Claims were affirmatively withdrawn by Claimants after they received Deficiency Notices.  Another 65 Claimants for whom defendants' data showed no purchases failed to supplement their Claims, and so their Claims were rejected as inadequately documented.[4]  Ferrante Decl. ¶ 26.

23.     Once the duplicate, withdrawn and unsupplemented "placeholder" claims were removed, there remained 1,872 Claims.  Of these, 1,800 were Undisputed and 72 were Disputed. Ferrante Decl. ¶ 28.

24.     Each of the Disputed Claims was then reviewed and evaluated individually to determine whether the Claimant had sufficiently proved qualifying purchases in the amounts claimed.  In making this determination, GCG and Class Counsel considered, *inter alia*,  the following factors:

      a.  Whether the Claimant had demonstrated that it purchased products within the Class Period;

      b.  Whether the Claimant had demonstrated that the products purchased were made in Defendants' U.S. mills and delivered in the U.S.;

      c.  Whether the Claimant had demonstrated that the products were purchased directly from the Defendants;

      d.  Whether the Claimant had demonstrated that the products purchased were qualifying products within the Class definition;

---

[4] As Ms. Ferrante notes, "[i]n our experience, we find that third-party settlement filers often file such 'placeholder' claims without knowing whether their clients are Class Members, and later (presumably after finding out that their clients are not Class Members) withdraw or abandon the claims.  The majority of these 77 withdrawn and abandoned Claims appear to be such claims." *Id*.

      e.   The extent to which the Claimant had demonstrated the amounts of purchases; and

      f.   Whether the Claimant was a current or former parent, subsidiary, affiliate or joint venture of a Defendant.

Ferrante Decl. ¶ 28.

      25.    After review of all the Disputed Claims in light of the above factors, GCG and Class Counsel placed each Disputed Claim into one of the following categories: (i) approved in full; (ii) approved but for a reduced amount; (iii) rejected in full; and (iv) potentially approvable but lacking in proof. Ferrante Decl. ¶ 29.

      26.    GCG sent a personalized letter to each Disputed Claimant whose claimed purchase amounts were reduced, rejected, or approvable but lacking in proof, explaining the basis for denial, reduction, or lack of proof, and providing the Claimant with another opportunity to submit supplemental proof or argument. These letters also informed Claimants that "Examples of acceptable documentation are invoices and purchase orders. Summary spreadsheets may be submitted along with representative invoices and purchase orders, but summary spreadsheets are not by themselves sufficient to prove that you made qualifying purchases. Purchase amounts based on extrapolation are not acceptable." An example of the second round of Notices of Claim Deficiency is attached as Exhibit C to the Ferrante Declaration. Ferrante Decl. ¶ 31.

      27.    Some Disputed Claimants responded to this second round of Notices of Claim Deficiency with more information. All responding Claimants' files, including the new information, were re-reviewed. Where Claimants were able to produce sufficient proof of the amounts claimed, their Claims were approved. Where Claimants could not submit sufficient records, Class Counsel searched Defendants' Purchase Data and often conducted independent research into the reasons for discrepancies between the amounts in Defendants' Purchase Data

and the amounts claimed by Claimants. Where Claimants indicated that they did not have invoices or purchase orders to support their Claims, GCG assisted them in suggesting other documents that could be sufficient. Following this detailed review process, each Claimant whose Claim was still rejected or reduced received another personalized letter advising them of the final determination. Examples of Notices of Claim Determination are attached as Exhibit D to the Ferrante Declaration. Ferrante Decl. ¶ 32.

28. During this review and audit process, GCG, in close consultation with Co-Lead Counsel, addressed numerous questions about product eligibility, the adequacy of proof submitted by Claimants who did not accept the pre-printed purchase amounts on the Claim Form, and other issues. This process included extensive email, postal mail, and telephone contact with Claimants to audit and verify the accuracy and integrity of the Claims that were submitted and to ensure that only eligible Claims were approved. Ferrante Decl. ¶ 33.

29. GCG and Class Counsel undertook these communications with Claimants to ensure that valid Claimants received the benefit of all qualifying purchases and that all Claimants were given every reasonable opportunity to support their Claims and to cure, explain and be heard with respect to any deficiencies that were identified. Ferrante Decl. ¶ 34.

30. Ultimately, of the 72 Disputed Claims that were submitted, 49 were approved for the full amount requested by the Claimant, 5 were approved for an amount greater than that contained in Defendants' Purchase Data but less than the full amount requested by the Claimant, 13 were approved for the amount contained in Defendants' Purchase Data (*i.e.*, the disputed amount was rejected but the claim was still approved based on the original data); and 5 were rejected in full. Ferrante Decl. ¶ 35.

31.     Thus, including the 1,800 Undisputed Claims, GCG and Class Counsel recommend that a total of 1,849 Claims be approved in full, that 18 be approved but for a reduced amount, and that 5 be rejected.  Ferrante Decl. ¶ 36.

32.     Attached as Exhibit E to the Ferrante Declaration is a list of all the Claims filed. Exhibit E-1 lists the 1,849 Claims that GCG and Class Counsel recommend be approved in full, with their Purchase Amount, Percentage of the Total Approved Purchase Amount, and Proposed Payment Amount.  Exhibit E-2 lists the 18 Disputed Claims that GCG and Class Counsel recommend be approved in part, with their approved Purchase Amount, Percentage of the Total Approved Purchase Amount, Proposed Payment Amount, and principal reason(s) why additional requested amounts were not approved.  Exhibit E-3 lists the 5 Claims that GCG and Class Counsel recommend be rejected on the merits, with the principal reason(s) for rejection.  Exhibit E-4 lists the 441 duplicative, withdrawn and unsupplemented "placeholder" claims, categorized accordingly.  For privacy reasons, these lists identify Claimants only by Claim Number.  No names, addresses or Taxpayer I.D. numbers are disclosed.  Ferrante Decl. ¶ 44.

33.     All told, GCG and Class Counsel recommend approval of 1,867 Claims representing a total Purchase Amount of $75,867,896,998.46.[5]

34.     The Escrow Agent advises that the Settlement escrow accounts will show a total available balance of $19,200,433.62 as of April 1, 2018.  According to the Plan of Allocation, each Approved Claimant shall be allocated a *pro rata* share of the Settlement Funds based on his, her, or its Percentage of the Total Approved Purchase Amount, after deduction of reasonable, anticipated further expenses.

---

[5] The total claims rate, *i.e.,* the total dollar value of purchases claimed compared to the total dollar value of qualifying purchases in Defendants' Purchase Data, was approximately 74%, a high rate in GCG's experience.  Ferrante Decl. ¶45 n.6.

35.    GCG and Class Counsel request no reserve from the Settlement Funds to cover future administrative expenses.  Instead, GCG and Class Counsel believe that the approximately $101,000.00 remaining in the expense reserve from the Prior Settlements will cover all reasonable, anticipated further expenses, including GCG's fees and expenses to prepare its report, conduct the Distribution, and address contingencies such as paying any taxes due on interest earned by the Settlement Funds, and funding any unanticipated costs.[6]  Ferrante Decl. ¶ 45-46.  Class Counsel request the Court's permission to use the funds left over from the Prior Settlements to pay the administrative expenses of distributing the current Settlement Funds.

36.    GCG calculated the proposed Approved Payment Amount for each Approved Claimant listed on Exhibits E-1 and E-2 to the Ferrante Declaration in accordance with the Court-approved Plan of Allocation, and using a total Distribution amount of $19,200,433.62.[7] Ferrante Decl. ¶46.

37.    GCG and Class Counsel recommend that the Court approve GCG's determinations as set forth above and in Exhibit E to the Ferrante Declaration.  Upon approval by the Court, GCG will prepare and mail checks to all Approved Claimants for their *pro rata* shares of the Settlement Funds as set forth in Exhibits E-1 and E-2 to the Ferrante Declaration.  For details of the mechanics of the Distribution, *see* Ferrante Decl. ¶¶ 47-53.

38.    In order to encourage Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, GCG and Class Counsel recommend that the distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO

---

[6] Attached as Exhibit F to the Ferrante Declaration is GCG's estimate of fees and expenses incurred since December 31, 2017, and to conduct the Distribution of the Settlement Funds.

[7] In accordance with the approved Plan of Allocation, the recommended Approved Payment Amounts for Claimants for whom GCG's initial calculations returned a *pro rata* share of less than $20 have been adjusted upward to $20.

11

RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS AFTER ISSUE DATE." Ferrante Decl. ¶ 52.

39.     In order to allow the full and final distribution of the Settlement Funds, GCG and Class Counsel request that the Court bar any further Claims or requested adjustments to Claims received after January 25, 2018, from eligibility in the distribution of the Settlement Funds beyond the amounts allocated to Approved Claimants. Ferrante Decl. ¶ 53.

40.     GCG agreed to be the Settlement Administrator in exchange for payment of its fees and expenses. Class Counsel have been billed and received reports of all of the work GCG performed with respect to the administration of the Settlements, and authorized all of the claims administration work performed herein. Since settlement approval, GCG has been paid a total of $180,434.33 out of the Settlement Funds for the work it reasonably performed through December 31, 2017. For a summary of that work, *see* Ferrante Decl., *passim* & Exh. F. Plaintiffs request that the Court find that those expenses were reasonable.

41.     Plaintiffs are aware of no objections or opposition to this motion. Nonetheless, this motion and all supporting papers, including the distribution schedules, will be posted to www.steelantitrustsettlement.com approximately three weeks before the motion's presentment date, so that Claimants will have ample time to review and comment if they wish to do so.

## IV. CONCLUSION

42.     For the foregoing reasons, Plaintiffs respectfully request that the Court enter the

proposed Order submitted with this Motion.


Dated:  February 21, 2018                              Respectfully submitted,

Michael K. Kellogg                                     */s/  Jeffrey S. Istvan*
Mark C. Hansen                                         Jeffrey S. Istvan
Michael J. Guzman                                      Adam J. Pessin
Steven F. Benz                                         **FINE, KAPLAN AND BLACK, R.P.C.**
**KELLOGG, HANSEN, TODD, EVANS &**                     One South Broad Street, 23rd Floor
**FREDERICK, P.L.L.C.**                                Philadelphia, PA 19107
Sumner Square                                          Tel.: (215) 567-6565
1615 M Street, NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February 2018, I caused a true and correct copy of the foregoing **Plaintiffs' Motion for Distribution of Settlement Funds** to be filed and served electronically via the Court's CM/ECF system upon all registered users.

  /s/ *Jeffrey S. Istvan*  
Jeffrey S. Istvan